*B*

**REGIONAL CENTRE FOR INTERNATIONAL
COMMERCIAL ARBITRATION - LAGOS**



# FINAL AWARD

*2A OZUMBA MBADIWE ROAD, VICTORIA ISLAND, LAGOS. NIGERIA
TEL: +234 0923581002, 9091150853
E-mail:info@rcical.org, Website www.rcical.org*



CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3|7|19

IN THE MATTER OF AN ARBITRATION

UNDER THE RULES OF THE REGIONAL CENTRE FOR INTERNATIONAL COMMERCIAL ARBITRATION - LAGOS

HOLDEN IN LAGOS

BETWEEN

1. PICCOL NIGERIA LIMITED          —          CLAIMANT
2. ENGR. P. A. CHIEJINA

AND

THE FEDERAL REPUBLIC OF NIGERIA          —          RESPONDENT

---

# **FINAL AWARD**

---



CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3/7/19

THE REGIONAL CENTRE FOR INTERNATIONAL
COMMERCIAL ARBITRATION LAGOS (RCICAL)
RCICAL RULES 2008

IN THE MATTER OF AN ARBITRATION

**BETWEEN**

1. PICCOL NIGERIA LIMITED
2. ENGR. P. A. CHIEJINA
(Claimants)

**AND**

THE FEDERAL REPUBLIC OF NIGERIA
(Respondent)

---

# FINAL AWARD

---

**BEFORE:**

**MRS. DOROTHY UDEME UFOT, SAN, FCIArb (U.K), Chartered Arbitrator.**
**SOLE ARBITRATOR**



CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3/7/19

## THE REGIONAL CENTRE FOR INTERNATIONAL COMMERCIAL ARBITRATION LAGOS (RCICAL)

RCICAL RULES 2008

IN THE MATTER OF AN ARBITRATION

**BETWEEN**

1.  PICCOL NIGERIA LIMITED
2.  ENGR. P. A. CHIEJINA
    (Claimants)

**AND**

THE FEDERAL REPUBLIC OF NIGERIA
(Respondent)

---

## TABLE OF CONTENTS

---

PAGE

1.  INTRODUCTION AND STATEMENT OF FACTS---------------------------------5-8

2.  GOVERNING LAW-------------------------------------------------------- 8

3.  ARBITRATION AGREEMENT------------------------------------------------8

4.  PLACE OF ARBITRATION------------------------------------------------8

5.  VENUE OF THE ARBITRATION--------------------------------------------8

6.  LANGUAGE OF THE ARBITRATION-----------------------------------------8

7.  ARBITRAL TRIBUNAL---------------------------------------------------8

8.  PARTICULARS OF THE SOLE ARBITRATOR ---------------------------------9

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3/7/19

9.   REGISTRAR AND THE REGISTRY OF THE TRIBUNAL-------------------------9

10.  RECORDING AND TRANSCRIPTION OF THE PROCEEDING-------------------9

11.  THE PARTIES, THEIR REPRESENTATIVES,
     COUNSEL AND THEIR WITNESSES ------------------------------------------ 9-10

12.  THE PARTIES' COUNSEL-----------------------------------------------------10-11

13.  THE PARTIES' WITNESSES---------------------------------------------------11

14.  CONSULTANT TO THE PROJECT---------------------------------------------11

15.  THE EXECUTING AGENCY FOR THE PROJECT---------------------------------12

16.  PROCEDURAL HISTORY-----------------------------------------------------12-15

17.  THE PLEADINGS OF THE PARTIES--------------------------------------------15-16

18.  PROCEDURAL ORDERS ISSUED BY THE TRIBUNAL---------------------------16

19.  THE TRIBUNAL'S JURISDICTION --------------------------------------------16-20

20.  THE CLAIMANTS' CLAIMS---------------------------------------------------20-22

21.  THE RESPONDENT'S DEFENCE----------------------------------------------- 22

22.  THE HEARING--------------------------------------------------------------22-23

23.  CLOSURE OF PROCEEDINGS------------------------------------------------- 24

24.  ISSUES FOR DETERMINATION------------------------------------------------24-25

25.  SUMMARY OF THE CLAIMANTS' CONTENTION------------------------------25-30

26.  SUMMARY OF THE RESPONDENT'S CONTENTION---------------------------30-36

27.  SUMMARY OF THE CLAIMANTS' REPLY
     TO THE RESPONDENT'S CONTENTION----------------------------------------37-42

28.  ARGUMENT ON ISSUES FOR DETERMINATION------------------------------42-98

29.  THE RESPONDENT'S RELIEF-------------------------------------------------98

30.  CONSIDERATION OF THE RELIEF SOUGHT BY THE CLAIMANTS--------98-111




**THE REGIONAL CENTRE FOR INTERNATIONAL
COMMERCIAL ARBITRATION LAGOS (RCICAL)**
RCICAL RULES 2008

IN THE MATTER OF AN ARBITRATION

**BETWEEN**

1. PICCOL NIGERIA LIMITED
2. ENGR. P. A. CHIEJINA
(Claimants)

**AND**

THE FEDERAL REPUBLIC OF NIGERIA
(Respondent)

## FINAL AWARD.

### 1.0   INTRODUCTION AND STATEMENT OF FACTS.

1.1   The 1st Claimant, PICCOL Nigeria Limited (hereinafter referred to as the **"Contractor"**) is a Limited Liability Company incorporated under the Laws of the Federal Republic of Nigeria, having its registered office at No. 13, Ekiomado Street, Off 4 S & T Road, Uselu Quarters, P. O. Box 6392, Benin City, Edo State, Nigeria.

1.2   The 2nd Claimant is an Engineer by profession and the Managing Director/CEO of the 1st Claimant.

1.3   The Respondent is the Government of the Federal Republic of Nigeria (hereinafter referred to as the **"Employer"**) represented, at the time the contract was signed by the Honourable Minister of Inter-Governmental



Affairs, Special Duties & Youth Development/Chairman, National Committee on Ecological Problems whose business office is situated at the Ecological Fund Office (EFO), The Presidency, New Federal Secretariat Complex, Phase II, Bullet Building, Abuja.

1.4   Being desirous of undertaking the construction of the Gully Erosion Control Structures at Umuako Ubirilem, Orsu Local Government Area of Imo State, (hereinafter called **"the works"**), the Employer entered into an Agreement dated 20th April, 2006, with the Contractor for the construction of the Gully Erosion Works.

1.5   The Employer appointed the Anambra – Imo River Basin Development Authority as the "Executing Agency" to provide appropriate Management and Supervision of the Project on its behalf.

1.6   The Employer also appointed Jones-Tech International Limited as Consultant to the Erosion Control Project.

1.7   The contract provides that payments to the Contractor shall be against a certificate issued under the hand of the Consultants containing a full itemised statement of the estimated value of the works executed, including materials for construction on site, up to the period covered by the statement.

1.8   The contract further provides that upon satisfactory execution of the works by the Contractor, the Employer covenants to issue the appropriate certificate and pay the Contractor the sums due to it with **"minimal delay"**.

1.9   The duration of the contract is for one year, (52 weeks) and for a fixed sum of **₦255,898,518.75 (Two Hundred and Fifty Five Million, Eight Hundred and Ninety Eight Thousand, Five Hundred and Eighteen Naira, Seventy Five Kobo).**

1.10   This dispute arises from an alleged breach of contract, pursuant to which the Claimants allege that the Respondent delayed payments duly certified by the Consultant and the Executing Agency, when the Respondent ought to have known that time is of the essence of the contract.

1.11   According to the Claimants, the Contractor mobilised to site and the work was going on well until there was a change in Government and the new President Yar'Adua directed in 2007 that payments for all Federal Projects should be stopped.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

317\19

1.12   The Claimants aver that the delays in effecting payments for duly Certified Interim Payment Certificates (IPCs) ranged from two to six months for a contract of one year duration.

1.13   The Claimants allege that the delay in payment caused stoppage of work on the site for lack of funds, causing already completed works to deteriorate and the Claimants had to use the payments received for work already done to carry out repairs of deteriorated jobs.

1.14   In a bid to complete the job within time, the 2nd Claimant mortgaged his residential home to secure a banking facility, which he has been unable to repay as a result of the Respondent's delayed payments.

1.15   The 2nd Claimant now faces the threat of the sale of his residential home by the Bank, pursuant to which he commenced legal action against the Bank, all to the knowledge of the Respondent.

1.16   The Claimants further allege that the Respondent's breach of contract has caused them loss and damage entitling them to the relief sought in this arbitration proceeding.

1.17   The Respondent on its part, denies any breach of contract and alleges that the 1st Claimant is the party that actually breached the contract and is solely responsible for whatever alleged damage it suffered.

1.18   The Respondent alleges that the 1st Claimant breached the contract by failing to complete the Project by the agreed one year period.

1.19   The Respondent further alleges that the 1st Claimant also breached the contract by failing to insure the Project as agreed, and also by suspending the work and abandoning the site. The Respondent also has issues with the quality of the job done, which is the main cause of the deterioration of the completed works.

1.20   On the Claimants' allegation that the Respondent had admitted liability and offered to pay the Claimants the sum of **₦60,000,000.00 (Sixty Million Naira)** in full and final settlement of the damages suffered. The Respondent denies that it admitted any liability whatsoever for the Claimants' alleged losses and states further that the said sum of **₦60,000,000.00 (Sixty Million Naira)** was offered to the Claimants on compassionate grounds only and not on the basis of admission of liability.



1.21    The Respondent therefore urges the Tribunal to dismiss the Claimants' claims in its entirety.

## 2.0    GOVERNING LAW.

2.1    By the Agreement of the parties at the preliminary meeting held on 13th July, 2017, at the Regional Centre for International Commercial Arbitration, No. 2, Ozumba Mbadiwe Way, Victoria Island, Lagos, the contract shall be governed by Nigerian Law.

## 3.0    ARBITRATION AGREEMENT.

3.1    Clause 18.0 of the contract provides that:

*"Any dispute, controversy or claim arising out of or relating to this contract or the breach, termination or invalidity thereof, shall be settled by arbitration at the Regional Centre for International Commercial Arbitration, Lagos, under the applicable Arbitration Rules in the schedule to the Arbitration and Conciliation Act, Cap. 19 Laws of the Federation of Nigeria, 1990."*

## 4.0    PLACE OF ARBITRATION.

4.1    By the Agreement of the parties at the preliminary meeting held on 13th July, 2017, the seat of the Arbitration shall be Nigeria.

## 5.0    VENUE OF THE ARBITRATION.

5.1    By the Agreement of the parties at the preliminary meeting held on 13th July, 2017, the venue for the hearing of the Arbitration proceeding shall be:
*The Regional Centre for International Commercial Arbitration, 2A Ozumba Mbadiwe Way, Victoria Island, Lagos, Nigeria.*

## 6.0    LANGUAGE OF THE ARBITRATION.

6.1    By the Agreement of the parties at the preliminary meeting held on 13th July, 2017, the Language of the Arbitration proceeding shall be English.

## 7.0    ARBITRAL TRIBUNAL.

7.1    Mrs. Dorothy Udeme Ufot, SAN, FCIArb (U.K.) Chartered Arbitrator was appointed Sole Arbitrator by the Director of the Regional Centre for International Commercial Arbitration, Lagos on 26th October, 2016.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos.

7.2   **PARTICULARS OF THE SOLE ARBITRATOR.**

Managing Partner
Dorothy Ufot & Co
Legal Practitioners, Investment Consultants and Arbitrators
2nd Floor, Okoi Arikpo House
5, Idowu Taylor Street
Victoria Island,
Lagos.

## 8.0(A) **REGISTRAR AND THE REGISTRY OF THE TRIBUNAL.**

i.   The Regional Centre for International Commercial Arbitration, Lagos
is the Registry for the Reference.

Telephone:   +234(1)2705516, 2703572, 2692834
Email:       info@rcicalagos.org

ii.  The Registrar of the Tribunal:
Mr. O. S. Oru
Counsel
The Regional Centre for International Commercial Arbitration,
Lagos.
2A, Ozumba Mbadiwe Way,
Victoria Island, Lagos.
Tel: +2347034904962
Email: sionioru@yahoo.com

## 8.0(B) **RECORDING AND TRANSCRIPTION OF THE PROCEEDING.**

It was agreed that the Arbitral proceedings shall be recorded and
transcribed by the Registrar.

## 9.0   **THE PARTIES, THEIR REPRESENTATIVES, COUNSEL AND THEIR WITNESSES.**

i.   **The Claimants.**

a.   **PICCOL NIGERIA LIMITED**
13, Ekiomado Street
Off 4, S & T Road
Uselu Quarters
P. O Box 6392
Benin City
Edo State.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3\7\19

9 | Page

b.   **Engr. P.A. Chiejina**
Managing Director/CEO
Piccol Nigeria Limited
13, Ekiomado Street
Off  4 S & T Road
Uselu Quarters
P. O Box 6392
Benin City
Edo State.

### ii.   **The Respondent.**

The Federal Government of Nigeria
C/o Ecological Fund Office (EFO)
Office of the Secretary to the Federal Government of Nigeria
The Presidency
New Federal Secretariat
Complex , Phase II,
Bullet Building
Abuja.

## 9.1   **THE PARTIES' COUNSEL.**

### i.   **The Claimants:**

Mr. Festus Akpoghalino, Esq.
Festus Akpoghalino & Co.
28, Blantyre Street
Near ECWA Church
Wuse II, Abuja
Nigeria
Tel: 08023342359
08069279595
Email: festusakpoghalino@yahoo.com

### ii.   **The Respondent:**

a.   Mr. Abiodun Arijesuyo
The Legal Director's office
The Office of the Secretary
To the Federal Government of Nigeria
3, Arms Zone, Abuja.
Tel: 0803581242
Email: biodunarijesuyo@yahoo.com

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3\7\19

b.   Dayo Akpata (PS-FMOJ/SGF)
Maimuna Lami Shiru
Linda Amego
Hamza Shaibu
Civil Litigation Department
Federal Ministry of Justice
Shehu Shagari Way
Abuja.
***Tel:*** 07069078249, 08060008885

## 9.2   THE PARTIES' WITNESSES.

### 1.   The Claimant:

**Engr. P. A. Chiejina**
Managing Director/CEO
Piccol Nigeria Limited
13, Ekiomado Street
Off 4, S & T Road
Uselu Quarters
P. O Box 6392
Benin City
Edo State.

### 2.   The Respondent:

i.   **Mr. Anthony Afuye**
Soil Erosion and Flood Control Unit
Ecological Fund Office
Federal Secretariat
Phase II, Abuja.

ii.   **Mr. Cornelius Audu**
Soil Erosion and Flood Control Unit
Ecological Fund Office
Federal Secretariat
Phase II, Abuja.

## 10.0   THE CONSULTANT TO THE PROJECT.

10.1   Jones-Tech International Limited
2, Kanike Close, off Awolowo Road
South-West Ikoyi, Lagos.
***Rep:*** Engr. Bassey Ekanem
***Tel:*** +234-1-2692819
***Email:*** info@jonestech.biz



## 11.0  THE EXECUTING AGENCY FOR THE PROJECT.

11.1   Anambra-Imo River Basin & Rural Development Authority.

| | |
|---|---|
| *Head Office:* | Kilometre 10 |
| | Owerri-Aba Road |
| | P.M.B. Owerri |
| | Imo State, Nigeria. |
| *Tel:* | 083300330, 087771800 |
| *Email:* | animbasin@yahoo.com |

11.2   The Executing Agency is now defunct.

## 12.0  PROCEDURAL HISTORY.

12.1   Pursuant to the Notice of termination of contract dated 8th August, 2013 served on the Claimants by the Respondent, as well as the persistent threats by Skye Bank PLC to sell off the residential property of the 2nd Claimant, which he had mortgaged to secure the banking facility granted to the 1st Claimant for the execution of the contract, the Claimants served the Respondent with a Notice of Arbitration dated 26th March, 2014, pursuant to *Clause 18.0* of the contract.

12.2   On 1st July, 2014, the Claimants filed a claim at the Abuja Multi Door Court House (AMDCH).

12.3   The proceeding at the AMDCH could not go on as a result of the Respondent's objection to the filing of the claim at the AMDCH, which had no jurisdiction, pursuant to the parties' agreement in *Clause 18.0* of the contract to resolve any dispute that arises between them at the Regional Centre for International Commercial Arbitration, Lagos.

12.4   By letter dated 3rd August, 2016, the Claimants approached the Regional Centre for International Commercial Arbitration with a request for Arbitration following which the Centre by letter dated 20th September, 2016, received by the Respondent on 29th September, 2016, intimated the Respondent of the instant Arbitration proceeding.

12.5   The record of the Tribunal shows that the Claimants served the Respondent with other Notices of Arbitration which are not relevant to this proceeding.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3|7|19

12.6   On 26th October, 2016, the Sole Arbitrator was appointed by the Director of the Regional Centre for International Commercial Arbitration, Lagos.

12.7   On 27th October, 2016, the Sole Arbitrator accepted her appointment.

12.8   On 13th July, 2017, the Sole Arbitrator held a preliminary meeting with the Parties, their Representatives and their Counsel at the Regional Centre for International Commercial Arbitration, Lagos.

12.9   By Notice of Preliminary Objection dated 20th September, 2017 together with a Written Address also dated 20th September, 2017, the Respondent prayed the Tribunal to dismiss the Claimants' claims for lack of jurisdiction, for being incompetent and also for being statute barred.

12.10  On 26th October, 2017, the Claimants filed a Counter Affidavit and Written Address in opposition to the Preliminary Objection.

12.11  The Tribunal dismissed the Respondent's Preliminary Objection, ruling that the Claimants' claims are not statute barred and the Tribunal has jurisdiction to hear and determine the said claims.

12.12  On 20th February, 2018, the Tribunal held a Pre-Hearing Review Session with the parties and their Counsel. In attendance at the Pre-Hearing Review were the following persons:

1. **The Claimants.**

    i.  **Theophilus Orumor**
        Holding the brief of
        Festus Akpoghalino Esq.

    ii. 2nd Claimant
        **Engineer P. A. Chiejina**
        for himself and for the 1st Claimant.

2. **The Respondent.**

    i.  **Hamza Shuaibu**
        Senior State Counsel from the
        Ministry of Justice, Abuja,
        Appearing with Mrs. Linda Amego,
        Assistant Director, Ministry of Justice
        Abuja.

CERTIFIED TRUE COPY
Region: Centre For Int'l
Commercial Arbitration-Lagos

3/7/19

12.13 On 20th February, 2018, the Tribunal ordered the parties to file their amended pleadings in order to correct the errors and inaccuracies in the Claimants' Points of Claim. The Pre-Hearing Review and the hearing were accordingly adjourned to 9th, 10th and 11th April, 2018.

12.14 The Claimants filed their Amended Points of Claim dated 1st March, 2018 together with the Witness Statement of the 2nd Claimant, Engr. P. A. Chiejina sworn before Pius I. Oiwoh Esq., Notary Public on 5th March, 2018, together with documents numbered as **Annexures 1 - 40** to be relied upon as exhibits at the Trial.

12.15 The Respondent filed its Amended Points of Defence dated 26th March, 2018 together with the Witness Statements of Mr. Anthony Afuye and Mr. Audu Cornelius sworn before Ifeanyi Oma Ntima Esq., Notary Public on 6th September, 2017, together with documents numbered as **Annexures 1A - 49** at *pages 23 – 143* of the Respondent's bundle to be relied upon as exhibits at the Trial. The Respondent did not file any Counterclaim.

12.16 The Claimants filed their Amended Reply to the Amended Points of Defence dated 3rd April, 2018 with a further Witness Statement of the 2nd Claimant, Engr. P. A. Chiejina sworn before Pius I. Oiwoh Esq., Notary Public on 3rd April, 2018, together with documents attached thereto.

12.17 The Claimants filed their Opening Address dated 6th April, 2018.

12.18 The Respondent filed its Opening Submission also dated 6th April, 2018.

12.19 A second Pre-Hearing Review and the Hearing took place on 9th and 10th April, 2018.

12.20 The Respondent filed its Closing Submissions dated 6th June, 2018, and also filed its submissions on costs dated 6th June, 2018.

12.21 The Claimants filed their Closing Address dated 2nd August, 2018, on 7th August, 2018.

12.22 On 1st November, 2018, the parties' Counsel adopted their Final Written Submissions.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3\7\19



12.23 On 1st November, 2018, the Respondent's Counsel drew the attention of the Tribunal to the fact that the Claimants were supposed to file their Closing Submission on 23rd July, 2018, but they filed it on 7th August, 2018 without any extension of time granted. That being the case, the Claimants do not have any Final Written Submission before the Tribunal. The Claimants' Counsel sought leave to regularize his position by orally applying for an extension of time to file the Claimants' written submission out of time, which was granted by the Tribunal after a lengthy argument between the parties' Counsel. The Claimants' Closing Submission dated 2nd August, 2018, was deemed properly filed and served on 1st November, 2018. The Respondent's Counsel asked for costs in the sum of **₦500,000.00 (Five Hundred Thousand Naira)**. However, the Tribunal awarded costs of **₦100,000.00 (One Hundred Thousand Naira)** in favour of the Respondent.

12.24 The parties' Counsel then re-adopted their Final Written Submissions after the Tribunal granted the Claimants extension of time to file their written submission, thus bringing the hearing to a close.

## 13.0   **THE PLEADINGS OF THE PARTIES.**

### 13.1   **THE CLAIMANTS.**

The Claimants filed the following pleadings:

i.  Amended Points of Claim dated 1st March, 2018.

ii.  1st Witness Statement of 2nd Claimant, Engr. P. A. Chiejina sworn on 5th March, 2018.

iii.  2nd Witness Statement of the 2nd Claimant, Engr. P. A. Chiejina sworn on 3rd April, 2018.

iv.  Amended Reply to the Points of Defence dated 3rd April, 2018.

v.  The Claimants' Opening Submission dated 6th April, 2018.

vi.  The Claimants' Closing Address dated 2nd August, 2018.

vii.  The Claimants' Issues for Determination dated 10th November, 2017.



CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

13.2 **THE RESPONDENT.**

The Respondent filed the following pleadings:

i.   Amended Points of Defence dated 26th March, 2018.

ii.  Witness Statement of Anthony Afuye sworn on 6th September, 2017.

iii. Witness Statement of Audu Cornelius sworn on 6th September, 2017.

iv.  Respondent's Opening Submission dated 6th April, 2018.

v.   Respondent's Closing Submission on Costs dated 6th June, 2018.

vi.  Respondent's Submission on Costs dated 6th June, 2018.

vii. Respondent's Issues for Determination dated 27th September, 2017.

**14.0   PROCEDURAL ORDERS ISSUED BY THE ARBITRAL TRIBUNAL.**

14.1 The Tribunal issued the following Orders for Direction during the course of this arbitration proceeding as follows:

i.   Procedural Order No. 1 dated 31st July, 2017.

ii.  Procedural Order No. 2 dated 31st August, 2017.

iii. Procedural Order No. 3 dated 25th October, 2017.

iv.  Procedural Order No. 4 dated 19th December, 2017.

v.   Procedural Order No. 5 dated 21st February, 2018 and

vi.  Procedural Order No. 6 dated 18th April, 2018.

**15.0   THE TRIBUNAL'S JURISDICTION.**

15.1 The Respondent filed a Notice of Preliminary Objection dated 20th September, 2017, praying the Tribunal for the following:

i.   *An Order striking out the claims of the Claimants in this proceeding for lack of jurisdiction.*

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3|7|19

ii.    *An Order dismissing the claims of the Claimants in this proceeding for being incompetent.*

15.2    The Notice was supported by a 17-paragraph Affidavit.

15.3    The Respondent stated further that:

1.  The Claimants failed to serve the Respondent with a Notice of Arbitration as contemplated by **Articles 3(1) & (2)** of the **Arbitration Rules First Schedule to the Arbitration and Conciliation Act** as well as **Articles 6.1 & 6.2** of the **Rules of Arbitration of the Regional Centre for International Commercial Arbitration, Lagos** which is a condition precedent for instituting Arbitral proceeding.

2.  The purported Notice of Arbitration dated 26th March, 2014 served by the Claimants is not with respect to the instant Arbitration and is incompetent, as it does not comply with the requirements of **Article 3(3)** of the **Arbitration Rules, First Schedule to the Arbitration and Conciliation Act** as well as **Article 6.3** of the **Rules of the Regional Centre for International Commercial Arbitration, Lagos** as to the information that shall be contained in the Notice of Arbitration.

3.  The purported Notice of Arbitration dated 26th March, 2014, was not addressed to the "Employer", i.e. the Respondent as described in **Article 27.0** of the Contract.

4.  The Claimants concealed material facts from the Honourable Tribunal.

5.  The Claimants' claim is statute barred by virtue of the **Limitation Act, Chapter 522, Laws of the Federal Capital Territory (FCT).**

15.4    The Notice of Preliminary Objection was supported by a 17-paragraph Affidavit deposed to by one Adamu Baba Mohammed, a Written Address and 5 Annexures.

15.5    In opposing to the Preliminary Objection, the Claimants filed a 23-paragraph Counter Affidavit deposed to by Peter Arinze Chiejina, the 2nd Claimant, on 26th October, 2017. The Counter Affidavit was supported by a Reply to the Notice of Preliminary Objection also dated 26th October, 2017.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration.

3|7|19

15.6   In response to the Respondent's allegation that the Notice of Arbitration was not addressed to the "Employer", i.e. the Respondent as described in **Article 27.0** of the Contract Agreement, the Claimants stated that they were awarded contract for the control of erosion by letter of award signed by the Permanent Secretary, signing for the Honourable Minister of Inter-Governmental Affairs, Youth Development and Special Duties, who was then in charge as Chairman of the National Committee on Ecological Problems in Nigeria, dated **7th March, 2006**.

That the Office of the Honourable Minister for Inter-Governmental Affairs, Special Duties and Youth Development who was then in charge of the Ecological Fund Office no longer exists and had become defunct shortly after the commencement of the Project.

15.7   The Claimants stated further that after the Ministry of Inter-Governmental Affairs ceased to exist, the Ministry of Environment was saddled with Ecological responsibilities and the Ecological Fund was put under it in 2010; however, the Ministry of Environment was relieved of its responsibility for the Ecological Fund. The Ecological Fund Office became subsumed as an Agency under the Office of the Secretary to the Federation, where it has been till date and where all matters relating to the Claimants' contract, the subject matter of this arbitration are supervised till date.

15.8   According to the Claimants, the following Offices have dealt with the Claimants as agents of the Federal Government in relation to this contract:

i.      The Ministry of Inter-Governmental Affairs, Special Duties and Youth Development;

ii.     The Ministry of Environment;

iii.    The Ecological Fund Office;

iv.     The Presidency and;

v.      The Office of the Secretary of the Federation.

15.9   The Claimants allege that the preliminary objection to the Tribunal's jurisdiction is an afterthought because the Respondent participated in the

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3|7|19

proceedings after filing its Points of Defence and even paid the costs of Arbitration.

15.10 The Claimants further state that since the claim at the Regional Centre for International Commercial Arbitration did not raise a new cause of action, the Notice of Arbitration dated 26th March, 2014 is valid for the present arbitration proceeding.

15.11 The Claimants stated further that the Points of Defence was filed on 6th September, 2017 and the preliminary objection was filed on 20th September, 2017, 14 days after the Points of Defence was filed and in violation of **Article 24.4** of the **RCICAL Rules** and **Section 12 (3) of the Arbitration and Conciliation Act.** Thus, the Respondent is precluded from filing the preliminary objection because **Article 24.4** of the **Rules of the RCICAL, 2008** provides that:

> *"A plea that the Arbitral Tribunal does not have jurisdiction shall be raised not later than in the Statement of Defence......."*

15.12 The Tribunal ruled *inter alia* that:

1.  The Respondent had notice of the ongoing Arbitration at the RCICAL having been served with the Request for Deposit of costs in the Arbitration dated 20th September, 2017.

2.  The Notice of Arbitration dated 26th March, 2014 is valid for this Arbitration as:

    a.  The Claimants complied substantially with the provisions of **Article 3 (3)** of the **Arbitration Rules, First Schedule to the Arbitration and Conciliation Act**, which is *impari material* with **Article 6.3** of the **Rules of RCICAL** in respect of the contents of the Notice of Arbitration.

    b.  There is no fresh cause of action in the ongoing Arbitration at the Regional Centre for International Commercial Arbitration.

3.  The action is not statute barred as the cause of action arose on 8th August 2013, when the Respondent served the Claimants with Notice of Termination of Contract.

19 | Page

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3/7/19

Since the Notice of Arbitration was served by the Claimants on 26th March, 2014, the following year, the action cannot be said to be statute barred.

4.  The Respondent is precluded from filing a preliminary objection to the jurisdiction of the Tribunal, as the preliminary objection was filed 14 days after the Statement of Defence was filed, contrary to the Provision of **Article 24.4** of the **RCICAL Rules**.

5.  The Tribunal has jurisdiction to entertain this action.

6.  The preliminary objection accordingly fails.

15.13 The parties continued with their dealings after the part payment of IPC No.5 on 19th October, 2010, genuinely seeking ways for the Contractor to remobilise to the site to complete the works, when the NDDC intervened on the site in March, 2013, and took over the works with the equipment of the Contractor still on the site.

15.14 The Claimants instituted action against the NDDC for its trespass.

15.15 The Presidential Committee on Monitoring of Ecological Projects in the South East Zone visited the project site on 18th March, 2013 confirming in its ensuing report that it had written to the NDDC to stay off the site, to no avail.

15.16 The Respondent then served the Claimants with a Notice of Termination of Contract dated 8th August, 2013, giving rise to the present cause of action, pursuant to which the Claimants served the Respondent with a letter of demand dated 6th February, 2014. When the Respondent failed to respond positively to the Claimants' said Notice of Demand, the Claimants served the Respondent with the Notice of Arbitration dated 26th March, 2014.

## 16.0   THE CLAIMANTS' CLAIMS.

16.1   The Claimants claim the following relief in their Amended Points of Claim dated 1st March, 2018:

i.   A declaration that the Respondent is liable for breach of Contract in Law.

ii.  The sum of **₦18,341,744.65 (Eighteen Million, Three Hundred and Forty One Thousand, Seven Hundred and Forty Four Naira and Sixty Five Kobo)** being balance of payment for IPC No. 5.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3\7\19

iii. The sum of **₦12,163,067.88 (Twelve Million, One Hundred and Sixty Three Thousand, Sixty Seven Naira and Eighty Eight Kobo)** being payment in respect of work done by the Claimants from the date of Certification of IPC No. 5 to date of work stoppage at the site that is from 12th April, 2010 to 25th August, 2010, named Interim Payment Certificate (IPC) No. 6.

iv. Cost of repairs of work/extra works already done by the Claimants from June 2006 to August 2010 is **₦83,916,000.00 (Eighty Three Million, Nine Hundred and Sixteen Thousand Naira).**_(See Annexure 24) at pages 233 – 235._

v. The sum of **₦6,240,117.11(Six Million, Two Hundred and Forty Thousand, One Hundred and Seventeen Naira and Eleven Kobo)** being the total sum of interest charges at the rate of 5% (five percent) on delayed payments for each IPC i.e. IPCs Nos. 1, 2, 3, 4, 5 up till May, 2016. _(See Annexure 25) at pages 236 - 240._

vi. Interest charges on delayed payment on IPC No. 6 in the sum of **₦2,280,575.22 (Two Million, Two Hundred and Eighty Thousand, Five Hundred and Seventy Five Naira and Twenty Two Kobo)**. _(See Annexure 27) at pages 241-243 and 248 - 249._

vii. Equipment idle time or loss of use due to incessant delays till date in the sum of **₦245,980,000.00 (Two Hundred and Forty Five Million, Nine Hundred and Eighty Thousand Naira)**. _(See Annexure) 26 at pages 244 - 245._

viii. Loss of profit in the sum of **₦51,179,663.75 (Fifty One Million, One Hundred and Seventy Nine Thousand, Six Hundred and Sixty Three Naira, Seventy Five Kobo)**. _(See Annexure 28) at pages 246 - 247._

ix. Interest charges on extra work done at 5% interest rate in the sum of **₦23,426,550.00 (Twenty Three Million, Four Hundred and Twenty Six Thousand and Five Hundred and Fifty Naira)**. _(See Annexure 29) at pages 248 - 249._

x. The sum of **₦50,000,000.00 (Fifty Million Naira)** as General Damages for breach of contract.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

xi.   **10%** post Judgment Interest on the total sum of the Award till the same is finally liquidated.

xii.   Cost of the Arbitration.

## 17.0   THE RESPONDENT'S DEFENCE.

17.1   The Respondent denies any liability for breach of contract in its Amended Points of Defence dated 26th March, 2018 and urges the Tribunal to dismiss the Claimants' claims as same is brought *mala fide* and is lacking in merit, frivolous, fortune seeking and an attempt to reap where they have not sown.

17.2   The Respondent did not file any Counterclaim.

## 18.0   THE HEARING.

18.1   Following the agreement of the parties and the Sole Arbitrator, the hearing took place on 10th April, 2018 at the Regional Centre for International Commercial Arbitration, Lagos.

18.2   In addition to the Sole Arbitrator and the Registrar, Mr. O. S. Oru, the following persons were present at the hearing:

**For the Claimants:**

| | | |
|---|---|---|
| Festus Akpoghalino Esq. | – | Claimants' Counsel |
| Engr. P. A. Chiejina | – | 2nd Claimant and Claimants' Witness. |

**For the Respondent:**

Hamza Shaibu
Biodun Arijesuyo      } Respondent's Counsel
Linda Amego

Anthony Afuye      } Respondent's Witnesses
Audu Cornelius

18.3   At the commencement of the hearing, the Respondent's Counsel informed the Tribunal of the Respondent's intention to file a Counterclaim before the end of the day.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration, Lagos.
3/7/19

18.4   The Tribunal noted that the Respondent has been asked persistently if it has any Counterclaim, even up till the day before the hearing and the Respondent has persistently maintained that it has no Counterclaim.

18.5   The Claimants' Counsel objected to the application to file a Counterclaim on the day of the hearing, saying it is a ploy to delay the hearing of the case.

18.6   After some discussions, the Respondent's Counsel informed the Sole Arbitrator that it is voluntarily withdrawing its Application to file a Counterclaim as proceeding with filing the Counterclaim will stall the hearing already scheduled for the day.

18.7   There being no objection from the Claimants' Counsel, the oral application for leave to file a Counterclaim being withdrawn was ordered as prayed, paving the way for the hearing as scheduled.

18.8   The Claimants presented their case through their sole witness Engr. P.A. Chiejina, who adopted both his Witness Statements sworn on 5th March, 2018 and 3rd April, 2018 respectively. Thereafter, the Claimants' witness was cross examined by counsel for the Respondent. *(See Pages 1-28 of the Transcript of the hearing of 10th April, 2018.)*

18.9   The Claimants' witness was re-examined by Counsel to the Claimants. *(See page 28 of the Transcript of the hearing of 10th April, 2018).*

18.10  The Respondent presented its case through two (2) witnesses. The first witness was Mr. Anthony Afuye, (RW 1). He adopted his Witness Statement sworn on 6th September, 2017 and was thereafter cross examined by the Claimants' counsel. *(See pages 28-51 of the transcript of the hearing.)* The Respondent's counsel re-examined RW 1 after the cross examination. *(See pages 51 -53 of the Transcript of the hearing.)*

18.11  The Respondent's second witness, Mr. Audu Cornelius (RW 2) adopted his Witness Statement sworn on 6th September, 2017, he was asked questions by the Respondent's counsel and thereafter cross-examined by the Claimant's counsel. *(See pages 54-72 of the Transcript of the hearing.)*

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3\7\19

## 19.0   CLOSURE OF PROCEEDINGS.

19.1   The proceeding was brought to a close with the adoption by the parties' counsel of their respective Closing Submissions on 1st November, 2018.

## 20.0   ISSUES FOR DETERMINATION.

20.1   Pursuant to the direction of the Tribunal, the Claimants and the Respondent filed their respective Issues for Determination in this proceeding.

20.2   While the Claimants formulated two (2) Issues for Determination dated 10th November, 2017, the Respondent formulated ten (10) Issues for Determination dated 27th September, 2017.

20.3   The parties' Issues for Determination shall be reproduced herein as formulated by them for ease of reference. The Claimants formulated the following Issues for Determination in this case:

> *"i.      Whether the Respondent is not liable for breach of contract in this case; if the answer to Issue one (1) above is YES, then;*
>
> *ii.     Whether in the circumstances of this case, the Claimants are not entitled to all the reliefs claimed thereof."*

20.4   The Respondent formulated the following Issues for Determination in this case:

> *"i.      Whether or not there was unnecessary delay in payment of IPCs to warrant or to entitle the Claimants for a Declaration of breach of Contract?*
>
> *ii.     Whether or not the failure of the Claimants to insure the Project in the name of the employer and the contractor amounts to a breach of the Contract by the Claimants?*
>
> *iii.    Whether the Contract Agreement contemplated abandonment of site for any reason whatsoever.*
>
> *iv.     Whether abandonment of site by the Claimants does not constitute a breach of the Contract Agreement.*

CERTIFIED TRUE COPY.
Regional Centre For Int'l
Commercial Arbitration-Lagos
3|7|19

v.   *Whether the delay of the Claimants to complete the execution of the Project outside the time fifty- two week duration, and the periods of extension granted, does not amount to a breach of the Contract on the part of the Claimants.*

vi.   *Whether the raising of "IPC No. 6" followed due process to warrant claims for interest on the alleged delayed payment for same?*

vii.   *Whether or not the necessary agreement was reached for the execution of the alleged extra work to entitle the Claimants for claim for payment of same?*

viii.   *Whether or not it is lawful or proper in the eyes of the law to order the Respondent who has no control of the Claimants' equipment to pay for its idle time?*

ix.   *Whether or not the claim for loss of profit is not baseless in view of the nature of the contract?*

x.   *Whether or not the Respondent can be reasonably expected to accept liability for the payment of interest on loan facility it was not a party to and in view of the claims for technical and financial capability to execute the contract by the Claimants while bidding for the contract, the basis upon which the contract was awarded to the Claimants.*

## 21.0   SUMMARY OF THE CLAIMANTS' CONTENTION.

21.1   The parties' relationship in respect of the subject matter of this dispute started on 20th April, 2006, with the execution of the Contract Agreement for the Construction of Gully Erosion Control Structures at Umuako Ubirilem Orsu, Local Government Area of Imo State.

21.2   The Letter of Contract Award dated 7th March, 2006, preceded the formal execution of the Contract.

21.3   Pursuant to the Bill of Engineering Measurement and Evaluation (BEME), also known as Bill of Quantities, the contract sum of **₦255,898,318.75 (Two Hundred and Fifty Five Million, Eight Hundred and Ninety Eight**

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3/7/19

Thousand, Three Hundred and Eighteen Naira, Seventy Five Kobo) was awarded to the Claimants and the duration of the contract was 52 weeks (One Year).

21.4    As agreed by the parties, the Claimants provided an Advance Payment Guarantee (APG) from Skye Bank PLC, pursuant to which the Respondent paid the Claimants 25% mobilisation in the sum of ₦63,974,629.69 **(Sixty Three Million, Nine Hundred and Seventy Four Thousand, Six Hundred and Twenty Nine Naira, Sixty Nine Kobo)** on 23rd May, 2006, which signified the effective date of the Contract.

21.5    The Respondent appointed a **Consultant, Jones-Tech International Limited** to supervise the job. The Consultant was also responsible for the certification of the job done by the Contractor for payments.

21.6    The Respondent also appointed the **Anambra-Imo River Basin and Rural Development Authority** to also supervise and oversee the entire Contract as the Executing Agency along with the Consultant.

21.7    The Contractor mobilised to site and the work was going on quite well with the payment of Interim Payment Certificate (IPC) No. 1.

21.8    The Claimants state that for payment to be effected for work done, Interim Payment Certificates (IPCs) would be raised to the value of the work done and same will be assessed by the Consultant and the Anambra-Imo River Basin and Rural Development Authority (Executing Agency).

21.9    According to the Claimants, the earthworks and some concrete works section of the Project for the control of erosion can only be executed during the dry season and not during the rains to avoid destruction of the works already done and certified for payment. The parties were aware of this.

21.10   Time was of the essence of this Contract pursuant to which the Contract provided for **"minimal delay"** in the payment for jobs executed and certified for payment by the Consultant and the Executing Agency vide the IPCs.

21.11   The Claimants allege that despite being aware that time was of the very essence of this Erosion Control Project, the Respondent failed and or neglected to act in that respect, by releasing moneys for the project promptly and timeously.

CERTIFIED TRUE COPY,
Regional Centre For Int'l
Commercial Arbitration-Lagos

3/7/19

21.12 According to the Claimants, IPC No. 1 was paid within 2 months of its submission to the Respondent. However, IPC No. 2 was raised and certified for payment in April, 2007 but was delayed till August 2007, which is a delay of four (4) months in a Contract that was meant for a period of twelve (12) months.

21.13 IPC No. 3 was raised and certified for payment in July 2007, but payment was effected on 27th December, 2007, which is a period of six (6) months delay.

21.14 IPC No. 4 was raised in January 2008 and was paid after three (3) months delay.

21.15 IPC No. 5 was not paid in full after a delay of six (6) months.

21.16 IPC No. 6 remains unpaid since 2010 that it was submitted till date.

21.17 Summarising these delays at *paragraph 28* of their Amended Points of Claim, the Claimants averred that:

> *"In a contract or project meant to be completed within one year duration, the delay in the release of funds per each certificate, IPC No. 2 was delayed for 4 months, IPC No. 3 was delayed for 6 months, IPC No. 4 was delayed for 3 months, part of IPC No. 5 was delayed for 6 months, the balance of IPC No. 5 and IPC No. 6 are still pending, unpaid till date".*

These cannot be said to be **"minimal delay"** in payments as agreed under the contract.

21.18 The Second Claimant, in a bid to complete the job within the contractual period mortgaged his residential house in Benin for a Bank facility of **₦50,000,000.00 (Fifty Million Naira)** in favour of the project of the Respondent, and is now indebted to the Bank due to the Respondent's delay in effecting payment to the extent that the Bank has been threatening to sell the mortgaged property, where he resides in, forcing him to commence legal action against the Bank, which matter is still pending in Court.

21.19 After effecting repairs on the deteriorated jobs carried out using the Bank facility to continue the project, the Claimants called on the Consultant to

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lago.
3/7/19

raise IPC No. 6 for the sum of ₦12,163,067.85 (**Twelve Million, One Hundred and Sixty Three Thousand, Sixty Seven Naira, Eight Five Kobo**), but the supervisor was no where to be found, consequent upon which the 2nd Claimant prepared IPC No. 6 and sent it to the supervisor for verification, but no word came from them.

21.20   The Respondent's failure to pay for the work done has resulted in heavy indebtedness to the Bank.

21.21   According to the Claimants, monies paid by the Respondent which were meant for jobs already completed were used to **"repair"** or reconstruct or repeat jobs already done which had collapsed due to heavy erosion from the rains. The repairs/repeated works have been recorded as extra works which payment the Respondent has failed to honour.

21.22   The Claimants allege that the contract was re-scoped due to the deterioration of the work done arising from serial delays in payment. It was decided that the remaining fund available on the project should be used to solve the erosion problem while application for additional funds will be made as phase two to complete the project to its original concept.

21.23   According to the Claimants, the re-scoped works was completed up to 90.8% completion, pursuant to which IPC No. 5 was raised and payment of IPC No. 5 has not been paid in full till date.

21.24   The Claimants further allege that the experience, competence and expertise of the Consultant, Jones-Tech International Limited was questionable, and upon enquiry at the Council for the Regulation of Engineering in Nigeria (COREN), COREN replied formally that neither Engineer Bassey Ekanem nor Jones-Tech International Limited (Consultant) are registered with COREN. The Claimants have exhibited the letters written by COREN to this effect at *(pages 217-218 of the Claimants' bundle.)*

21.25   The Claimants state that after writing series of letters and several meetings towards the amicable resolution of this dispute, the Respondent offered the Claimants the sum of ₦60,000,000.00 (**Sixty Million Naira**) in full and final settlement of all its indebtedness which arose as a result of the Respondent's breach of contract. The Respondent failed to pay the said sum of ₦60,000,000.00 (**Sixty Million Naira**) for over two years, with the 2nd

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3|7|19

Claimant visiting the Ecological Fund Office repeatedly to no avail until the commencement of this Arbitration when they renewed the offer which the Claimants refused on account of the fact that the arbitration was already ongoing when the renewed offer of the Respondent was made. The Claimants replied the Respondent that the Arbitration proceedings should be allowed to run its course.

21.26  According to the Claimants, the contract had been executed up to 77.14% by 30th January, 2008 while 90.8% of the re-scoped work was completed by 12th April, 2010 before the rains came and destroyed the works.

21.27  The Claimants state that the Niger Delta Development Commission (NDDC) took over the site in March 2013 and began to execute the works whilst the Claimants' Contract was still subsisting, and all reports to the Respondent about this development was to no avail, compelling them to institute an action and obtain Court injunction restraining the NDDC from carrying on with the work, an Order which unfortunately the NDDC did not obey as they remained on site and completed the works.

21.28  The Claimants allege that all through the period of the delays, all their equipment and staff remained on site as they could not be diverted to other use leading to heavy loss· on idle time, which have been itemised and calculated in (*Annexure 26 and 26A at pages 244-245 of the Claimants' Bundle*).

21.29  The Claimants further allege that the villagers who were the beneficiaries of the project got infuriated by the delay and vandalized most of their equipment, which is also a subject of litigation.

21.30  The Claimants allege that the profit margin for the contract was 25% and if there was no delay in payment, the Claimants would have made 25% profit from the job. The Claimants therefore claim lost profit in the sum of **₦51,179,663.75 (Fifty One Million, One Hundred and Seventy Nine Thousand, Six Hundred and Sixty Three Naira, Seventy Five Kobo)** as detailed in *(Annexure 28* attached to the Amended Points of Claim at *pages 246-247* of the Claimants' Bundle.)

21.31  The delayed payments made the Claimants to incur huge losses on account of the project as follows:

CERTIFIED TRUE COPY,
Regional Centre For Int'l
Commercial Arbitration-Lagos
3|7|19

      i.     Loss of returns on equipment which were left idle.
            *(See the breakdown in Annexure 26.)*

      ii.    Interest charges on delayed payment on Interim Payment No. 6.

      iii.   Interest on Mortgage secured with Claimant's residential home at Benin City.

      iv.   Loss of good will.

      v.    Default interest charges of the Bank at 22%.

      vi.   Monies wasted on various litigations geared at saving the Contract and equipment.

21.32   Psychological trauma from delays and threats from Skye Bank to sell the 2nd Claimant's family house and the embarrassment by the Bank officials coming to inspect the property from time to time.

21.33   The Respondent served the Claimants; Notice of Termination of Contract dated 8th August, 2013. The Claimants invoked the Arbitration Clause in the Contract by serving the Respondent with Notice of Arbitration dated 26th March, 2014, in the face of continued threats from the Bank to sell off the 2nd Claimants' property.

21.34   The totality of all the above complaint is therefore that the Claimants seek a declaration, amongst other relief that the Respondent is liable for breach of contract in Law.

## 22.0   SUMMARY OF THE RESPONDENT'S CONTENTION.

22.1   The Respondent denies any liability or breach of the Contract between the parties and states that as at May/June 2007, the 1st Claimant had been paid 25% mobilisation fee in the sum of **₦63,974,629.69 (Sixty Three Million, Nine Hundred and Seventy Four Thousand, Six Hundred and Twenty Nine Naira, Sixty Nine Kobo)** and IPC No. 1 in the sum of **₦35,482,818. 05 (Thirty Five Million, Four Hundred and Eight Two Thousand, Eight Hundred and Eighteen Naira, Five Kobo)**, totaling over **₦98,000,000.00 (Ninety Eight Million Naira)** out of the total project cost of **₦255,898,318.75 (Two Hundred and Fifty Five Million, Eight Hundred and Ninety Eight Thousand, Three Hundred and Eighteen Naira,**

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3|7|19

**Seventy Five Kobo)** in less than a year of moving to site in 2006, IPC No. 1 was paid on 28th February, 2007.

22.2   The Respondent states that the process of raising IPCs and paying for jobs done and the sums raised are as follows:

a.   IPCs are raised to the extent of the value of the job done as assessed by both the Consultant and the Executing Agency.

b.   The Consultant forwards the IPC raised to the Executing Agency who in turn forwards same to the procuring entity that is, the Ecological Fund Office (EFO).

c.   On receipt of the IPC, the EFO sends a team of in-house staff to verify the claims submitted by the Consultant and the Executing Agency, following which, if the claims are verified (vide site assessment form) that the level of job recorded as done and raised in the IPC is a true representation of the state of things on the site, approval for payment is sought and obtained from the Chief Accounting Officer. The approval for payment and the sum approved is then sent to the Claimants, while the payment approval is sent to the Accounts Department for processing of payment.

22.3   The Respondent denies that payment of IPC No. 2 was delayed at all. According to the Respondent, IPC No. 2 was received by the Ecological Fund Office (EFO) on 23rd April, 2007 and paid on 23rd August, 2007.

22.4   It is the Respondent's contention that the smooth flow of the execution of the contract was not dependent on the period within which the IPCs were processed in view of the Claimants' representation at the tender stage, (which was one of the factors that won the Claimants the contract) that it had the financial and technical capacity to execute the project. *(See Annexure "2" at pages 99-115 of the Respondent's Bundle). (Instructions for Tendering).*

22.5   The Respondent admits that erosion control works are best carried out during the dry season and that time is of the essence of such work. The Respondent states however, that if the quality of the work done is good, such works can stand the test of the rains. Therefore, if the quality of the work done by the Claimants is good, the rains will not destroy it.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

22.6    The Respondent alleges that for a project that was expected to be completed by May 2007, the Claimants had only achieved 59.6% of the Project execution, and owing to the Claimants' inability to meet the completion deadline as agreed by the parties, the Claimants sought for various extensions of time for a cumulative period of 18 months which were granted.

22.7    The Respondent denies that IPC No. 4 was delayed, as it was received by the EFO on 20th February, 2008 and paid on 7th April, 2008, having been subjected to the verification process.

22.8    The Respondent states that IPC No. 5 took six (6) months to be paid, because it had several discrepancies which had to be resolved in collaboration with the Executing Agency and the Consultant, due to the fact that the IPC was based on the re-scoped Bill of Quantities.

22.9    Still stating the reasons why IPC No. 5 was particularly delayed for up to six (6) months, the Respondent states further that:

    i.      The contingency sum in the project which is usually not paid until the project is fully executed was added to the IPC and had to be deducted.

    ii.     The 2.5% of the contract being the administrative charge as stipulated in the Agreement had to be deducted.

    iii.    There is no balance of any money at all due to the Claimants on IPC No. 5.

    iv.     The IPC was subjected to the same verification process as was the case with the other IPCs before IPC No. 5.

22.10   The Respondent contends that payments were made promptly subject to the necessary verification processes and that the six (6) months delay period referred to by the Claimants was after the one year completion date set for the project, during which period, the 1st Claimant by its negligence failed to complete the project as agreed. More importantly, the Claimants abandoned the site of the project without any reasonable cause on several occasions and were even away from the site at a particular instance for over one year.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3\7\19

22.11   The Respondent was satisfied with the level of competence of the Consultant it employed to oversee the project and it was the same Consultant who prepared and signed IPCs 1-5 in respect of which the Claimants were paid the total sum of **₦198,119,169.40 (One Hundred and Ninety Eight Million, One Hundred and Nineteen Thousand, One Hundred and Sixty Nine Naira, Forty Kobo)** as of October 2010, and all correspondences from the Claimants, the Consultant and the Executing Agency concerning the Project were promptly attended to.

22.12   The Respondent contends that the Claimants did not carry out any extra works as this would have been certified as such in the various IPCs.

22.13   According to the Respondent, the proper process for identifying and executing "Extra Works" is for the Consultant and Contractor to identify and agree on the need for extra work. The Consultant then notifies the Executing Agency, who in turn notifies the Ecological Fund Office (EFO) and the EFO on consideration of the position of the Consultant and the Executing Agency will convey approval in writing.

An agreement has to be reached between the Employer and the Contractor on the scope and cost of the Extra work done and approval conveyed to the Contractor to carry on with the "Extra works".

22.14   The Respondent agrees that several meetings were held between the Claimants and the Respondent through the EFO, however, the meetings were convened to address the slow pace of work and several abandonments of the site by the Claimants and not to address the issue of delayed payments.

22.15   . The Respondent agrees that the contract stipulates that payments should be made with **"minimal delay"** which it complied with resulting in the following pace of payment for a contract of **₦255,898,518.75 (Two Hundred and Fifty Five Million, Eight   Hundred and Ninety Eight Thousand, Five Hundred and Eighteen Naira, Seventy Five Kobo)** as follows:

    a.   25% Mobilisation in the sum of **₦63,974,629.69 (Sixty Three Million, Nine Hundred and Seventy Four Thousand, Six Hundred and Twenty Nine Naira, Sixty Nine Kobo)** on 23rd May, 2006 even

CERTIFIED TRUE COPY
Region[ ] Centre For Int'l
Commercial Arbitration-Lagos

3\7\19

before the Claimants moved to site, signifying the effective date of the contract.

b.  Total payment of almost **₦100 Million (₦99,457,447.74)** by the 9th Month of the project (February 2007) by which time the Claimants had only achieved 15% of project execution.

c.  Total payment of **₦143,279,535.25 (One Hundred and Forty Three Million, Two Hundred and Seventy Nine Thousand, Five Hundred and Thirty Five Naira, Twenty Five Kobo)** by the 14th Month of the project (August 2007), 2 months after one year completion period and at which time, the Claimants had only achieved 48.1% of the project execution and as of which time no extension of time had been sought from the Respondent or any granted.

d.  Total payment of **₦159,726,726.84 (One Hundred and Fifty Nine Million, Seven Hundred and Twenty Six Thousand, Seven Hundred and Twenty Six Naira, Eighty Four Kobo)** by the 18th month of the project (December 2007), 5 months after one year completion period at which time the Claimants had only achieved 59.6% of the project execution and as of which time no extension of time had been sought from the Respondent or any granted.

e.  Total payment of **₦185,974,726.74 (One Hundred and Eighty Five Million, Nine Hundred and Seventy Four Thousand, Seven Hundred and Twenty Six Naira, Seventy Four Kobo)** by the 23rd month of the project (April 2008), 11 months after the One year completion period at which time the Claimants had only achieved 77.14% of the project execution.

f.  Total payment of **₦198,168.74 (One Hundred and Ninety Eight Thousand, One Hundred and Sixty Eight Naira, Seventy Four Kobo)** by the 53rd month of the project (October 2010), 41 months after the one year completion period, at which time the Claimants had only achieved 90.8% of the project execution.

CERTIFIED TRUE COPY,
Regional Centre For Int'l
Commercial Arbitration-Lagos
3/7/19

22.16  Still dealing with the issue of delayed IPC payments, the Respondent states that it indeed effected payments of the IPCs with minimal delays as contemplated by the contract as follows:

    a.  25% mobilisation was paid on 23rd May, 2006.

    b.  IPC No. 1 (₦35,482,818.05) was received by EFO on 15th January 2007 and paid on 28th February, 2007.

    c.  IPC No. 2 (₦43,822,087.50) was received by EFO on 23rd April, 2007 and paid on 23rd August, 2007.

    d.  IPC No. 3 (₦16,447,227.60) was received by EFO on 23rdAugust, 2007 and paid on 27th December, 2007.

    e.  IPC No. 4 (₦26,247,999.90) was received by EFO on 20th February,2008 and paid on 7thApril, 2008.

    f.  **IPC No. 5 (₦12,144,406.06) scaled down from (₦30,486,151.17) was received by EFO on 15th April, 2010 and paid on 5th October, 2010 (6 months).**

22.17  The Respondent reiterates that IPC No. 5 was contentious and had lots of discrepancies and it took a longer time to process payment owing to the length of time it took the EFO to resolve the controversies with the Executing Agency.

22.18  It is the Respondent's contention that the Claimants' decision to take banking facility for the execution of the project with its attendant risks was a business decision taken by the Claimants, a decision which the Respondent cannot be held responsible for in any way, especially in the light of the Claimants' representation of financial capacity to undertake the execution of the project.

22.19  While stating that it has no record of the Consultant absconding as stated by the Claimants, the Respondent states categorically that there was no agreement between the parties for the Claimants to execute any "Extra works" and further that the contract did not contemplate an IPC being raised by the Contractor.

CERTIFIED TRUE COPY.
Regional Centre For Int'l
Commercial Arbitration-Lagos
3/7/19

22.20  According to the Respondent, none of the IPCs raised by the Consultant, countersigned by the Claimants and forwarded by the Executing Agency had any extra work recorded on it.

22.21  While admitting that the works were re-scoped, the Respondent however denies that the deterioration of the works already executed which necessitated the re-scoping of the works was as a result of delayed payments.

22.22  The Respondent admits that it offered the Claimants the sum of **₦60,000,000.00 (Sixty Million Naira)** in full and final settlement of all the Claimants' claims. It however, denies that the offer was on the basis of its admission of liability for breach of contract. Rather, the offer of **₦60,000,000.00 (Sixty Million Naira)** was made to the Claimants purely on compassionate grounds.

22.23  It is the Respondent's contention that it is the Claimants who breached the contract by their:

   i.   Abandonment of the site;

   ii.  Failure to insure the project as agreed in the contract;

   iii. Suspension of the works; and

   iv.  Failure to complete the project within one year period as agreed in the contract.

22.24  The Respondent denies that it caused the Claimants any loss of profit in relation to the contract and states further that the Claimants were adequately paid as stipulated in the Bill of Quantities for equipment and the Respondent cannot be held responsible for any loss on returns on equipment which was left idle as the alleged idleness of the equipment was entirely a decision of the Claimants.

22.25  With regards to interest on delayed payment in respect of IPC No. 6, the Respondent states that it cannot be responsible for delayed payment of an IPC that was not raised by the Consultant and finally that it is not responsible for any trauma suffered and other risks allegedly suffered by the Claimants.

CERTIFIED TRUE COPY
Region For Int'l
Commercial Arbitration-Lagos

3/7/19

**23.0 SUMMARY OF THE CLAIMANTS' REPLY TO THE RESPONDENT'S CONTENTIONS.**

23.1    Reacting to the Respondent's contentions, the Claimants assert that Clause 2.0 of the contract gives the Consultant and the Executing Agency the authority to prepare IPCs. Furthermore, in determining the duration of the delay in effecting payment for each IPC, the relevant period to be considered is the date of the certification of the IPC by the Consultant and the date the money was received by the Claimants.

23.2    The Claimants contend that the contract does not provide for the deduction of 2.5% Administrative Charge from an IPC as alleged by the Respondent because a provision of ₦4,000,000.00 (**Four Million Naira**) had already been made for it in the Bill of Engineering Measurements and Evaluation (BEME). Also referred to as the Bill of Quantities, under the heading ***"Allowance for Project Management by Employer and Executing Agency"***, which sum has already been claimed in full in IPC No. 5, therefore the unilateral introduction of 2.5% Administrative Charge is fraudulent and unacceptable.

23.3    The Claimants state that the balance of IPC No. 5 in the sum of **₦18,341,744.65 (Eighteen Million, Three Hundred and Forty One Thousand, Seven Hundred and Forty Four Naira, Sixty Five Kobo)** remains unpaid till date.

Furthermore, the certification of the Consultant and the Executing Agency is a representation that the standard of work agreed to in the contract has been complied with and the Respondent has no power to unilaterally alter same or pay a sum lesser than that certified by the Consultant and the Executing Agency, in view of the fact that the present contract, the subject matter of this dispute is the 5th project the Claimants are undertaking with the Ecological Fund Office, the other four (4) projects having been successfully completed without any issues or problems.

23.4    With regards to the offer of **₦60,000,000.00 (Sixty Million Naira)** compensation to the Claimants allegedly on compassionate grounds to assuage the pains of the Claimants, the Claimants state that the sum of **₦60,000,000.00 (Sixty Million Naira)** was offered on the basis of an

CERTIFIED TRUE COPY
Registion for the Federal
Commercial Arbitration-Lagos
3/7/19

admission of fault for delayed payments. Therefore, the current denial is an afterthought and deliberate falsehood.

23.5     On the allegation of abandonment of site by the Claimants, the Claimants state that they did not abandon the site at any time because all the construction equipment remained on site and the Claimants' site office remained open all through the period. According to the Claimants, *"work stopped due to non-payment but the Claimants remained on site and the Claimants informed the Respondent by several letters to make some payment so that work can resume. However, the Respondent has a habit of not replying letters sent to it no matter how serious and urgent the content may be."*

23.6     On the Respondent's allegation that there was no agreement for the Claimants to carry out "extra works; the Claimants contend that Minutes of Meetings relating to the "extra works" abound in the record. Furthermore, the issue of "extra works" was considered and agreed upon by all the stakeholders, which included all the relevant agencies overseeing the project and the present denial is an afterthought. The records of the extra works carried out were kept to be paid as work done at the end of the project and the "extra-works" done and claimed being works duly executed before work stopped.

23.7     On the 25% mobilisation fee referred to by the Respondent, the Claimants state that the said mobilisation fee of 25% in the sum of **₦63,974,629.69 (Sixty Three Million, Nine Hundred and Seventy Four Thousand, Six Hundred and Twenty Nine Naira, Sixty Nine Kobo)** given to the Claimants at the commencement of the contract was a loan, which the Claimants have been paying back. The Claimants state that as at IPC No. 5, the sum of **₦58,088,963.76 (Fifty Eight Million, Eighty Eight Thousand, Nine Hundred and Sixty Three Naira, Seventy Six Kobo)** had been paid back to the Respondent as evidenced by IPC No. 5. Accordingly, the 25% mobilisation cannot be regarded as payment to the Contractor. Moreover, by the date of IPC No. 6, about 98.5% of the mobilisation sum had been paid back, with the Claimants achieving 90.8% project execution as confirmed by the Respondent.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3|7|19

23.8    The Claimants reiterate that none of the IPCs was paid within one month of receipt by the Respondent and a 6 months delay in payment cannot be said to be **"minimal delay"** by any standard and the Respondent did not inform the Claimants or the Consultant of any discrepancy in any of the certificates since all the certificates are sent to the EFO through the Consultant or the Executing Agency.

23.9    According to the Claimants, the Consultant and the Executing Agency who are agents of the Respondent admitted delay in items 21 and 22 in the Project Assessment Form specifically as follows:

   IPC No. 1 had 2 months delay;

   IPC No. 2 had 4 months delay;

   IPC No. 3 had 6 months delay;

   IPC No. 4 had 3 months delay

This means a total delay of 15 months in making payments by the Respondent for work done up to April 2008 for an erosion project of 12 months duration. This explains why the project could not be completed as scheduled.

23.10   While reiterating that IPC No. 5 took six months, making a total of 21 months delay, the Claimants state that the balance of the payment on IPC No 5 remains outstanding.

It is stated further that according to *Clause 2.0* of the agreement, the date of the preparation of the Interim Payment Certificates (IPCs) by the Consultant is the date the certificates were signed and that is the date for the calculation of the period the payment starts to run and not the date the certificate was received by the Ecological Fund Office, and the agreement envisaged the computation of time from the date the agents of the Respondent appended their signatures on the IPC.

23.11   On the competence of the Consultant, the Claimants reiterate that the Council for the Regulation of Engineering in Nigeria (COREN) had disowned the Consultant Mr. Bassey Ekanem and his company, Jones-Tech International Limited to the effect that they are not registered to practice Engineering in Nigeria. This information was sent to the Respondent who

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3|7|19

has done nothing about employing an unqualified Engineer to supervise the project.

23.12   The Claimants state that they sent several letters to the Respondent complaining of the Consultant's absence from the site to no avail.

23.13   On IPC No. 6, the Claimants state that the 2nd Claimant prepared IPC No. 6 and sent it to the Respondent through its agencies the Ecological Funds office, the Executing Agency, herein the Anambra-Imo River Basin Development Authority, when the complaint that the Consultant who ought to sign it was nowhere to be found and all letters previously addressed in that regard were not replied. The Claimants state further that IPC No. 6 represents the work done on the site from 26th March, 2010 when IPC No. 5 was certified to the date when work finally stopped on the site on 25th August, 2010, which is 5 months work in respect of which payment is still being awaited.

23.14   According to the Claimants, the bulk of the mortgage funds went into IPC No. 6, which the Consultant was not around to sign. Work stopped when payment for works certified done were not forthcoming and the mortgage became exhausted.

23.15   The Respondent delayed all payments due to the Claimants including the payment of ₦60,000,000.00 (Sixty Million Naira) offered to the Claimants as compensation for the losses suffered by the Claimants as a result of the Respondent's delayed payments.

23.16   The intrusion of NDDC on the site was reported to the Respondent to no avail.

23.17   On the allegation of abandonment of site, the Claimants state that they did not abandon the site as their equipment were still on site which is why the Respondent could not terminate the Contract. The Claimants further state that their construction equipment and building materials parked at the site included the following:

| i. | 15 ton Avelling Roller | ---------- | 1 number. |
| ii. | Reversing Drum Concrete Mixer | ---------- | 1 " |

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3 |7 |19

| | | | |
|---|---|---|---|
| iii. | Mercedes Benz Tipper Lorry 1213 type | ---------- | 1" |
| iv. | Caterpillar 966 pay loader | ---------- | 1 " |
| v. | O & K Motor grader | ---------- | 1 " |
| vi. | 1.5 ton roller | ---------- | 1" |
| vii. | Atlascopco compressor | ---------- | 1 " |
| viii. | Tilting Drum Concrete Mixer | ---------- | 1 " |
| ix. | Caterpillar D8 bulldozer | ---------- | 1 " |
| x. | 1 ton roller | ---------- | 1". |
| xi. | Pieces of metal formwork | ---------- | 200 numbers. |
| xii. | 1.5 ton Volkswagen pickup truck | ---------- | 1 number |

xiii. BRC mesh 50 rolls.

xiv. 10 tons of Iron rod.

xv. Granite clippings 30 tons.

Including 2 security men.

23.18  The Claimants state further that work had to stop when the funding from the Bank was exhausted. The Respondent was in breach of its obligations under the Contract to ensure the satisfactory execution of the Contract, as contained in *Clause 19.0* of the Contract, particularly the obligation to issue appropriate certificate and to pay the Contractor sums due to it with minimal delay.

23.19  With regard to insurance, the Claimants state that the duty to insure under the Standard Conditions of Contract was for both parties, such that where one of the parties fails to insure the project, the other had an obligation to carry out the insurance. Furthermore, the Respondent did not make financial provision for insurance in the Bill of Engineering Measurement and Evaluation (BEME), an omission that was discovered by the parties lately, which means that if the Claimants (Contractor) diverts any of the funds for

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration ....Ow

3/7/19

the project into insurance, the Contractor will not be able to reclaim the premium paid for the insurance cover.

Furthermore, the contract provides that the Respondent should insure, where the Claimants fails to do so and pay the premium as may be necessary for that purpose and from time to time deduct the amount so paid by the Employer on the insurance from any money due or which may become due to the Contractor or recover the same as a debt due from the Contractor. The Claimants submit that there is no corresponding protection on how the Claimants can recover this head of expenditure. Accordingly, the Respondent was in a better position to insure the project.

23.20 Finally, on insurance, there is no liability under the contract for failure to insure the project, and the Respondent did not insist on insurance at all. The instant allegation that the Claimants failed to insure the project is therefore an afterthought aimed at avoiding liability for breach of contract.

23.21 The Claimants state that the work had reached 90% completion, with all the Claimants' equipment and 2 security staff on site when the NDDC took over the site. Whereas, the Respondent had persistently directed the Claimants on several occasions to go back to site with promises of payment, therefore, the Claimants never abandoned the site.

It is therefore clear that the Claimants' equipment which were rented and/or hired for the job lay idle on site, while the Claimants waited for payment with rental costs mounting on a daily basis.

23.22 Finally, the Claimants contend that all the liabilities, woes and problems encountered by the Claimants in respect of this particular project was caused by the Respondent's failure to keep to its obligation to effect payments with minimal delay for work done and the Respondent's failure to call the Consultant to order, when the Consultant abandoned the site, even when several complaints were made to the Respondent about the Consultant.

## 24.0 ARGUMENT ON ISSUES FOR DETERMINATION.

24.1 The Claimants formulated two issues for determination as follows:

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3 | 7 | 19

*i.*    *Whether the Respondent is not liable for breach of contract in this case, if the answer to issue one above is YES, then;*

*ii.*    *Whether in the circumstances of this case, the Claimants are not entitled to all the reliefs claimed thereof.*

24.2   The Respondent formulated 10 issues for determination as follows:

*"i.*    *Whether or not there was unnecessary delay in payment of IPCs to warrant or to entitle the Claimants for a Declaration of breach of Contract?*

*ii.*    *Whether or not the failure of the Claimants to insure the Project in the name of the employer and the contractor amount to a breach of the Contract by the Claimants?*

*iii.*    *Whether the Contract Agreement contemplated abandonment of site for any reason whatsoever.*

*iv.*    *Whether abandonment of site by the Claimant does not constitute a breach of the Contract Agreement.*

*v.*    *Whether the delay of the Claimant to complete the execution of the Project outside the time fifty- two week duration, and the periods of extension granted, does not amount to a breach of the Contract on the part of the Claimant.*

*vi.*    *Whether the raising of "IPC No. 6" followed due process to warrant claims for interest on the alleged delayed payment for same?*

*vii.*    *Whether or not the necessary agreement was reached for the execution of the alleged extra work to entitle the Claimant for claim for payment of same?*

*viii.*    *Whether or not it is lawful or proper in the eyes of the law to order the Respondent who has no control of the Claimant's equipment to pay for its idle time?*

*ix.*    *Whether or not the claim for loss of profit is not baseless in view of the nature of the contract?*



CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3|7|19

x.  *Whether or not the Respondent can be reasonably expected to accept liability for the payment of interest on loan facility it was not a party to and in view of the claims for technical and financial capability to execute the contract by the Claimant while bidding for the contract, the basis upon which the contract was awarded to the Claimants."*

24.3  The Respondent states at *paragraph 0.3, page 2* of its Closing Submission dated 6th June, 2018 as follows that:

> *"All the issues for determination submitted by the Respondent can be summed up into one, which is: whether there has been breach of the Contract Agreement and by whom, as a basis upon which the Tribunal should determine entitlement to any of the reliefs sought".*

24.4  In the light of the above, the Respondent has narrowed down its issues for determination which largely conforms with the Claimants' issues for determination.

24.5  In view of the allegations and counter allegations of breach of contract by the Claimants and the Respondent, it is clear that the main issue to be determined in this case is whether there has been a breach of the contract between the parties. If this question is answered in the affirmative, the Tribunal shall then proceed to examine the relief sought vis-à-vis the facts and evidence placed before the Arbitral Tribunal.

24.6  **ISSUE 1.**

*Whether there has been a breach of the contract between the parties?*

24.7  **(A) THE CLAIMANTS' POSITION.**

i.  By the agreement of the parties, the Claimants were awarded contract for the construction of the gully erosion control structures at Umuako Ubirilem in Orsu Local Government Area of Imo State for a contract sum of ₦255,898,318.75 **(Two Hundred and Fifty Five Million, Eight Hundred and Ninety Eight Thousand, Three Hundred and Eighteen Naira, Seventy Five Kobo)**.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

The breakdown of which is as follows:

| | | | |
|---|---|---|---|
| 1. | Preliminaries | …………………………… | ₦27,250,000.00 |
| 2. | Road Works | …………………………… | ₦62,957,500.00 |
| 3. | Culvert and Drains | ……………………………… | ₦113,750,000.00 |
| 4. | Flood Control | …………………………… | ₦27,350,000.00 |
| 5. | Biological Stabilisation | …………………………… | ₦800,000.00 |
| 6. | Allowance for 5% Contingency | …………… | ₦11,605,375.00 |
| 7. | Sub Total | …………………………… | ₦243,712,875.00 |
| 8. | Allowance 5% Vat | ………………………… | ₦12,185,643.75 |
| 9. | Grand Total | …………………………… | **₦255,898,518.75** |

ii. As indicated above, the duration of the contract was for 52 weeks (one year) commencing from **23rd May, 2006** being the date the Claimants received an Advance Payment (Mobilisation) in the sum of **₦63,974,629.69 (Sixty Three Million, Nine Hundred and Seventy Four Thousand, Six Hundred and Twenty Nine Naira, Sixty Nine Kobo)** from the Respondent.

iii. The Respondent appointed the Consultant Jones-Tech International Limited to supervise the job. The Consultant would also certify the Interim Payment Certificates (IPCs) for payment.

iv. The Respondent also appointed the Anambra-Imo River Basin Authority to also supervise and oversee the contract as the Executing Agency.

v. For payment to be effected, Interim Payment Certificates (IPCs) would be raised to the value of the work done and same will be assessed and certified by the Consultant and Executing Agency.

vi. The contract stipulates that payment will be effected with "**minimal delay**" upon certification of the IPC by the Consultant and the Executing Agency.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3|7|19

vii.   The Respondent acting through the Ecological Fund Office (EFO) took unduly long to effect payment of the IPCs contrary to the Agreement of the parties.

viii.  In a contract for a project meant to be completed within one year, there was undue delay in effecting payment as follows:

a)   IPC No. 1 was delayed for 2 months before payment.

b)   IPC No. 2 was delayed for 4 months before payment.

c)   IPC No. 3 was delayed for 6 months before payment.

d)   IPC No. 4 was delayed for 3 months before payment.

e)   IPC No. 5 was delayed for 6 months and the payment was unilaterally reduced by the Respondent without any recourse to the Claimants or the Consultant and/or the Executing Agency.

f)   IPC No. 6 which was submitted since 2010 has not been paid till date.

ix.   The undue delay in effecting payment of IPCs certified by the Consultant and the Executing Agency created problems for the contract because of lack of funds to carry out the project works.

x.   The Respondent therefore breached the contract between the parties as follows:

a)   Failure to effect payment of certified IPCs with minimal delay as agreed by the parties.

b)   The unilateral reduction of IPC No. 5 without recourse to the Claimants.

c)   The deduction of 2.5% Administrative Charge is a breach of contract because this has already been provided for in the Bill of Quantities.

xi.   The Claimants have suffered loss as a result of the Respondent's breach and the Claimants are entitled to damages as claimed.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3|7|19

24.8   **(B)  THE RESPONDENT'S POSITION.**

   (i)   The Respondent denies the allegation of breach of contract and states that payments certified by the Consultant and the Executing Agency were effected with minimal delay as agreed in the contract, between one and half months to six months.

   (ii)  (a)  Mobilisation in the sum of ₦63,974,629.69 was paid on 23rd May, 2006.

        (b)   IPC No. 1 (₦35,482,818.05) was received by the EFO on 15th January, 2007 and paid on 28th February, 2007.

        (c)   IPC No. 2 (₦43,822,087.50) was received by the EFO on 23rd April, 2007 and paid on 23rd August, 2007.

        (d)   IPC No. 3 (₦16,447,227.60) was received by the EFO on 23rdAugust, 2007 and paid on 27th December, 2007.

        (e)   IPC No. 4 (₦26,247,999.90) was received by the EFO on 20th February, 2008 and paid on 7th April, 2008.

        (f)   IPC No. 5 (₦12,144,406.00) scaled down from ₦30,486,151.17 was received by EFO on 15th April, 2010 and paid on 5th October, 2010. (This IPC was contentious and had lots of discrepancies and it took a longer time to process the payment owing to the length of time it took the EFO to resolve the discrepancies with the Executing Agency).

   (iii)  The Claimants breached the contract as follows:

        (a)   The Claimants abandoned site. There is no provision for abandonment of site in the contract.

        (b)   The Claimants suspended work.

        (c)   The Claimants failed to insure the project and;

        (d)   The Claimants failed to complete the project within one year period as agreed in the contract.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos



24.9   **(C)   THE TRIBUNAL'S DECISION.**

(i)    From the submissions of the parties in their pleadings, Witness Statements of their witnesses and the Closing Submissions of Counsel to the parties, there is no doubt that the crux of this dispute lies on the issue whether the Respondent effected payments of certified IPCs with minimal delay as provided in the parties' contract.

(ii)   It is an elementary principle of law that parties are bound by their contract. This principle is reflected in the Latin Maxim *"Pacta Sunt Servanda"*, a principle of law honoured by all civilised nations of world. Accordingly, in resolving the issue whether there is breach of the contract entered into by the parties on 20th April, 2006, the Tribunal shall attempt to interpret the relevant clauses of the contract and where the clauses are simple, clear and unambiguous, the Tribunal shall employ the literal cannon of interpretation in construing the terms of the contract.

(iii)  In the face of allegations and counter-allegations of breach of contract by the parties, the Tribunal shall deal with the Claimants' allegations first and thereafter deal with the Respondent's allegations of breach of contract by the Claimants.

24.10  **(D)   DELAYED PAYMENT.**

(i)    **Clause 19.1** of the Contract under Employer's Obligation provides that:

> *"In consideration of the satisfactory execution of the works by the Contractor, the Employer covenants to issue the appropriate certificate and to pay the Contractor any sums due to it with **minimal delay**."*

(ii)   The Claimants aver at *paragraph 28* of their Points of Claim that:

> *"In a contract or project meant to be completed within one year duration, the delay in the release of funds per each certificate, IPC No. 2 was delayed for 4 months, IPC No. 3 was delayed for 6 months, IPC No. 4 was delayed for 3 months, part of IPC No. 5 was delayed for 6 months, the*

CERTIFIED TRUE COPY
Regional Centre For int'l
Commercial Arbitration-Lagos
3|7|19

> *balance of IPC No. 5 and IPC No. 6, is still unpaid till date. These cannot be said to be minimal delay in payment as agreed under the contract."* (*See paragraph 19.0 of the Contract Agreement*).

(iii) The Respondent denies the averments in *paragraph 28* of the Claimants' Points of Claim and avers at *paragraph 24* of its Points of Defence that it made payment with minimal delays as contemplated by the Agreement. In further reaction to *paragraph 28*, the Respondent states as follows that:

  (a)  25% Mobilisation was paid on 23rd May, 2006.

  (b)  IPC No. 1 (₦35,482,818.05) was received by EFO on 15th January, 2007 and paid on 28th February, 2007.

  (c)  IPC No. 2 (₦43,822,087.50) was received by EFO on 23rd April, 2007 and paid on 23rd August, 2007.

  (d)  IPC No. 3 (₦16,447,227.60) was received by EFO on 23rd August, 2007 and paid on 27th December, 2007.

  (e)  IPC No. 4 (₦26,247,999.90) was received by EFO on 20th February, 2008 and paid on 7th April, 2008.

  (f)  IPC No. 5 (₦12,144,406.00) scaled down from (₦30,486,151.17) was received by EFO on 15th April, 2010 and paid on 5th October, 2010 (6 months). This IPC was contentious and had lots of discrepancies and it took a longer time to process payment owing to the length of time it took the EFO to resolve the controversies with the Executing Agency.

(iv) In Reply to *paragraph 24* of the Points of Defence, the Claimants aver at *paragraph 21* of their Reply to the Points of Defence that:

> *"All the delays in payment of IPCs from No. 1 – No. 4 amounted to 15 months delay in the following breakdown as at April, 2008:*
>
> IPC No. 1 had 2 months delay;
> IPC No. 2 had 4 months delay;
> IPC No. 3 had 6 months delay;

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3|7|19

IPC No. 4 had 3 months delay.

This means that there had been a total of 15 months delay in making payments by the Respondent for work done up till April, 2008, for a project of erosion control that is supposed to last for 12 months. This is the reason why the project could not be completed on schedule.

(v)   The Claimants further aver at *paragraph 22* of their Reply to the Respondent's Points of Defence that as at October, 2010, it took the Respondent 6 months to pay part of IPC No. 5 that is making a total of 21 months delay in making payment by the Respondent. The balance of IPC No. 5 is still unpaid till date.

(vi)   The Claimants state at *paragraph 23* of their Reply to the Points of Defence that according to the Contract Agreement, the date of the preparation of the Interim Payment Certificates (IPCs) by the Consultant is the date the certificates were signed and that is the date the calculation of the period of payment starts to run and not the date the certificate was received by the Ecological Fund Office.

(vii)   The Claimants aver at *paragraph 24* of their Reply to the Points of Defence that all the periods of delay mentioned in *paragraph 24* of the Points of Defence, refer to the days they were received from the Consultant and the Executing Agency which has nothing to do with the Claimants. The Agreement envisaged the computation from the date on the Interim Payment Certificates.

(viii)   The Claimants further aver at *paragraph 44* of their Reply to the Points of Defence that the Respondent was in breach of its obligations under the contract, to ensure satisfactory execution of the works by the Contractor contained in *paragraph 19.0* of the Contract Agreement that is;

   **(1)   To issue appropriate certificate and pay to the Contractor the sums due to it with minimal delay.**

(ix)   The Claimants finally aver at *paragraph 55* of their Reply to the Points of Defence that all the liabilities, woes and problems encountered by the Claimants in the project was caused by the

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos.

3|7|19

Respondent in failing to maintain minimal delay in payments for work done.

(x) Apart from *Clause 19.0* of the Contract, other relevant Clauses which will assist the Tribunal in the determination of the issue of whether the Respondent breached the Contract vis-à-vis the duration of the time taken to effect payment of certified IPCs include: *Clauses 1.0, 1.2, 2.0(i), (ii), (iii) and (v), 11.0, 20.0* of the Contract and *Clauses 60(1) and 68* of the Standard Conditions of Contract.

(xi) The above Clauses of the Contract and Standard Conditions of Contract are reproduced below:

(a) **Clause 1.0**

> *The object of this Agreement is to provide for the terms and conditions under which the Contractor shall construct the Gully Erosion Control Structures at Umuako Ubirilem, Orsu Local Government of Imo State.*

(b) **Clause 1.2**

> *The Contractor covenants to meet all financial and other obligations due to the Consultants, as specified in Bill No. 1 in the Bill of Quantities, **without delay or default**. Payments for the design and supervision fees respectively shall be made by the Employer.*

(c) **Clause 2.0(ii)**

> ***Payments to the Contractor shall be against a certificate issued under the hand of the Consultants containing a full-itemized statement of the estimated value of the works executed.***

(d) **Clause 2.0(iii)**

> *The Employer shall advance the sum of ₦63,974,629.69 (Sixty Three Million, Nine Hundred and Seventy Four Thousand, Six Hundred and Twenty Nine Naira, Sixty Nine Kobo) only representing 25% of the contract sum to the Contractor ...*

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3|7|119

*Further payments shall be made after attainment of 25% of the project and upon certification by the Project Consultants as aforesaid of subsequent stages reached in respect of the project.*

(e) **Clause 2.0(v)**

*All subsequent payments shall be made on certification by the Consultants to the Project certifying the works done and recommending the payment for such works in accordance with the conditions provided in the Schedule attached to this Agreement.*

(f) **Clause 8.0**

*The Contract sum contained in this Agreement shall be a fixed lump sum, which may only be mutually varied as provided under this Agreement.*

(g) **Clause 11.0**

*The Contractor hereby agrees to complete the execution of the works within 52 (fifty-two) weeks with effect from the date of the receipt of the advance payment mentioned in Article 2(iii) above.*

(h) **Clause 20.0**

**CONTRACTOR'S OBLIGATION.**

*In consideration of the payments to be made by the Employer to the Contractor herein before mentioned, the Contractor covenants with the Federal Government of Nigeria to execute, complete and test the works in conformity with the industry standards and the provisions of this contract.*



## STANDARD CONDITIONS OF CONTRACT.

(a) **Clause 60(1)**

CERTIFICATES AND PAYMENT.

*The Contractor shall submit to the Engineer after the end of each month a statement showing the estimated contract value of the permanent work executed up to the end of the moth (if such value shall justify the issue of an interim certificate) and the Contractor will be paid monthly on the certificate of the Engineer the amount due to him on account of the estimated contract value of the permanent works executed up to the end of the previous month together with such amount (if any) as the Engineer may consider proper on account of materials for permanent work delivered by the Contractor on site and in addition, such amount as the Engineer may consider fair and reasonable for any temporary works or construction plant for which separate amounts are provided in the Bill of Quantities subject to a retention of the percentage named in the Tender until the amount retained shall reach the "limit of retention money" named in the Tender (thereafter called "The Retention Money") provided always that no interim certificate shall be issued for a less sum than that named in the tender at one time.*

(b) **Clause 68(1)(a)**

DEFAULT BY EMPLOYER.

*In the event of the Employer:-*

(i) *Failing to pay to the Contractor the amount due under any Certificate of the Engineer within 60 days after same shall have become due under the terms of the contract, the Contractor shall be entitled without prejudice to any other rights or remedies to determine the employment of the Contractor under the contract by giving notice in writing to the Employer.*

CERTIFIED TRUE COPY,
Regional Centre For Int'l
Commercial Arbitration-Lagos
3/7/19

(xii) A reading together of all the Clauses reproduced in the preceding paragraphs is indicative of the fact that time was clearly of the essence of the contract and given the fact that the duration of the entire contract is one year, the Respondent, acting through its agencies ought to have realized that payment was indeed to have been effected with "MINIMAL DELAY".

(xiii) It is pertinent at this stage to attempt a definition of the phrase or words **"MINIMAL DELAY"** within the context of the Employer's payment obligation to the Contractor for IPCs certified by the Consultant and the Executing Agency.

(xiv) **MEANING OF "MINIMAL DELAY".**

    (a) **The Longman Active Study Dictionary, 7th Edition 2000**, at *page 420* defines **"minimal"** as "extremely small in amount or degree and therefore not worth worrying about, e.g. the storm caused only minimal damage.

    (b) **The Macmillan Dictionary** defines "Minimal" as 'of the least possible', 'minimum' or "smallest".

    (c) "Minimal" means as small as possible, slightly, fairly, partly or very small or slight.

    (d) "Minimal" means "little or nothing", extremely small".

    (e) **"Minimal Delay" means extremely small in amount or degree, or as small as possible."e.g,**

       **"If there is any delay, that delay will be minimal."**

    (f) **Collins English Dictionary 2014** defines **"Minimal"** as the least possible e.g. minimum wage, the need to enforce minimum standards.

       *Adjectives -*    Minimum, smallest, least, slightest, token, nominal, negligible, least possible.


CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3|7|19

(g) **Legal Dictionary** defines **"Minimal"** as brief, diminished, inappreciable, least, lesser, little, meager, minimum, minor, paltry, modest, smallest, unimportant.

(xv) Given the various definitions of **"Minimal"** and **"Minimal Delay"** above, I have come to the conclusion that the intention of the parties when they agreed in *Clause 19.0* of the contract that in consideration of the satisfactory execution of the works by the Contractor, the Employer covenants to issue the appropriate certificate and to pay the Contractor any sums due to it with **"Minimal delay"**, was that "the Interim Payment Certificates issued by the Consultant and the Executing Agency will be paid by the Employer with the least possible", "nominal", "negligible", "smallest" delay.

(xvi) While *Clause 60(1)* of the Standard Conditions of Contract in respect of certificates and payment provide that the Contractor will be paid monthly on the certificate of the Engineer the amount due to him on account of the estimated contract value of the permanent work executed up to the end of the previous month, *Clause 68(1)* of the Standard Conditions of Contract provide for a maximum duration of 60 days for payment to the Contractor of the amount due to him under any certificate of the Engineer, after the same shall have become due under the terms of the contract.

(xvii) It is my humble view that the **"minimal delay"** provision in *Clause 19.0* of the contract executed by the parties on 20th April, 2006 takes precedence over the one month period provided for payment to the Contractor and the 60 days maximum period provided for payment to the Contractor respectively under *Clauses 60(1)* and *68(1)* of the Standard Conditions of Contract by virtue of the hierarchy of the contractual documents forming part of this contract as categorized in *Clause 4.0* of the Agreement.

(xviii) The above being the case, the period of delay for payment of IPCs certified by the Consultant and the Executing Agency, being governed by the **"minimal delay"** provision in *Clause 19.0* of the Agreement, then the agreed period of delay of payment of certified IPCs, cannot be the one month and 60 days period respectively



under *Clauses 60(1)* and *68(1)* of the Standard Conditions of Contract. Therefore the period of delay for payment of IPCs certified by the Consultant and Executing Agency, **is minimal, that is, extremely small, negligible and not worth worrying about as envisaged by the parties in *Clause 19.0* of the contract.**

(xix)   This is much more so when the works can only be performed during the dry season and the duration of the contract as agreed by the parties is 52 weeks.

Most importantly, the parties are *ad idem* in their submissions that the flood control works, the subject matter of this dispute can only be performed during the dry season.

(xx)   By the agreement of the parties, payment to the Contractor **shall** be against a certificate issued under the hand of the Consultants containing a full-itemised statement of the estimated value of the works executed. *(Clause 2.0).*

(xxi)   I have examined IPCs Nos. 1-5 and I find that they reflect full-itemised statement of the estimated value of the works executed with the certification and recommendation of the Consultant and the Executing Agency as follows:

(a)   IPC No. 1, for example is dated 28/11/06 with the signatures of the Consultant and the Executing Agency reflected thereon, with the following certification:

> *"I hereby certify that the sum of ₦35,482,818.05k is now due for payment to the Contractor for works executed in respect of the above contract".*

(b)   It is my observation that IPC No. 1, was executed by the Consultant on 28/11/06, the Engineer's representative on 20/12/06, and the Head of Department of the Executing Agency on 22/12/06.


CERTIFIED TRUE COPY
Regional Centre For ...
Commercial Arbitra...
3/7/19

(c)   The letter of the Executing Agency, the Anambra-Imo River Basin & Rural Development Authority, forwarding IPC No. 1 to the EFO is dated 15th December, 2006.

(d)   The EFO acknowledged receipt of IPC No. 1 on 15th January, 2007.

(e)   It is also observed that the execution of IPC No. 1 between the Consultant and the Executing Agency took almost one month.

(f)   It took another three weeks, give and take for IPC No. 1 to be forwarded by the Consultant to the EFO.

(g)   It then took another one month exactly for IPC No. 1 to travel from the Consultants to the EFO. That is 15th December, 2006 – 15th January, 2007. *(See Annexure 13) at pages 188-190 of the Amended Points of Claim.*

(h)   IPC No. 2 is dated 29/3/07. It took a period of about 3 weeks between 29/3/07 – 18/4/07 for the Consultants to forward the IPC No. 2 to the EFO. *(See Annexure 14)at pages 191-192 of the Amended Points of Claim.*

(i)   IPC No. 3 is dated 26/6/07. It took a period of about 8 days for IPC No.3 to be sent to the EFO. It is not certain when IPC No. 3 was received by the EFO as there is no proof of receipt in the record.

(j)   IPC No.4 dated 10/01/08 was executed by the Consultants between 10/01/08 – 30/01/08. It was forwarded to the EFO on 15/01/08. It took about 5 days to be executed by the Consultants. No proof of the date of receipt by EFO.

(k)   IPC No. 5 dated 26/03/10 executed by the Consultants between 23/03/10 and 06/04/10, execution took about 11 days to be sent to EFO. No proof of when it was received by the EFO.

(xxii)   By the Respondent's own admission at *paragraph 24* of its Amended Points of Defence:

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3|7|19

(a) IPC No. 1 was received by the EFO on 15/1/07 and paid on 28/02/07, a delay period of almost 2 months.

(b) IPC No. 2 was received by the EFO on 23/4/07 and paid on 23/8/07 - a delay period of 4 months.

(c) IPC No. 3 was received by the EFO on 23/8/07 and paid on 27/12/07 - a delay period of 4 months.

(d) IPC No. 4 was received by the EFO on 20/2/08 and paid on 7/4/08 - a delay period of 2 months.

(e) IPC No. 5 was received by the EFO on 15/4/10 and paid on 5/10/10 – a delay period of 6 months. Even at that, IPC No. 5 was duly approved for payment by the Consultants for **₦30,486,151.17 (Thirty Million, Four Hundred and Eighty Six Thousand, One Hundred and Fifty One Naira, Seventeen Kobo)** was unilaterally cut down to **₦12,144,406.52 (Twelve Million, One Hundred and Forty Four Thousand, Four Hundred and Six Naira, Fifty Two Kobo)** without any recourse whatsoever to the Claimants on the basis or reason for the reduction of the amount approved by the Consultants for payment.

(xxiii) According to the Claimants, the time for calculating the period of the delay in effecting payment of an IPC is the date of the certification by the Consultants and not the date of the receipt of the IPC by the EFO. The Claimants therefore state at *paragraph 21* of their Amended Reply to the Respondent's Points of Defence that:

> *IPC No. 1 had 2 months delay;*
>
> *IPC No. 2 had 4 months delay;*
>
> *IPC No. 3 had 6 months delay;*
>
> *IPC No. 4 had 3 months delay; and*
>
> *IPC No. 5 had 6 months delay for the payment of the reduced amount and the balance still remains unpaid till date.*



CERTIFIED TRUE COPY,
Regional Centre For Int'l
Commercial Arbitration-Lagos

3/7/19

(xxiv)  Given the definition of the phrase *"Minimal Delay"* as defined in this Award, the above periods of delay in effecting payment to the Claimants pursuant to the certification of the certificates by the Consultants cannot be said by any stretch of imagination to have been paid with "Minimal Delay" within the context of *Clause 19.0* of the Agreement between the parties.

(xxv)   Under cross-examination on the duration of time to pay an IPC, the following conversation ensued between the Claimants' Witness (CW) and the Respondent's Counsel.

> *Respondent's Counsel:*       *Now, in this contract agreement was there ever any mention of a certain number of days within which certificates must be paid in this contract agreement?*
>
> *Claimants' Witness:*       *It says* **"minimal delay".**
>
> *Respondent's Counsel:*       *But it didn't mention any number of days.*
>
> *CW:*       *It didn't mention but you don't have to take one year to pay or 6 months to pay (See page 19 transcript of the Hearing of 10th April, 2018).*

(xxvi)  The Respondent alleges that the construction of the Gully Erosion works was not predicated on payment by the Employer of certified IPCs because the Claimants had represented to the Respondent at the time of bidding for the contract that he had the financial and technical capability to execute the contract. Still on **"Minimal Delay",** this is what ensued:

> *Respondent's Counsel:*       *When you bidded for the job, you represented to the Government that you possessed the financial and technical capability to do the job.*



CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3|7|19



CW:                     *Yes of course.*

CW:                     *I am trying to say that financial capability includes ability to take loan from the Bank. You just cannot walk to the Bank, ....................................(page23 of the transcript of 10/4/18).*

(xxvii)  On his part, the Respondent's first witness Mr. Anthony Afuye had this to say, under cross-examination, about how long it takes the EFO to pay an IPC certified by the Consultant and the Executing Agency:

Claimants' Counsel:   *Your little experience in that department, do you have the period of delay to reckon with in payments? Is there any particular period you people normally supposed to process payments?*

RW1:                   *We all (sic) it minimal delay.*

Claimants' Counsel:   *Yes. What is the period of minimal delay in layman language, like us if we want to know the period?*

RW1:                   *Okay. Now with explanation, can I go ahead?*

Claimants' Counsel:   *Just tell us the period of minimal delay. We don't want to know what a minimal delay is.*

RW1:                   *Like before, it's like 4 months.*

Claimants' Counsel:   *4 months?*

RW1:                   ***Yes, because of Bureaucracy.*** *Then the Consultant will raise the IPC at the site.*

                      ..............................................................................
                      ..............................................................................



| | |
|---|---|
| *Claimants' Counsel:* | *You said before it was 4 months. Now, that 4 months you mentioned, is it a law or just your whimsical decision?* |
| *RW1:* | *No, it is not law but processes.* |
| *Claimants' Counsel:* | *It's not law.* |
| *RW1:* | *The processes, like presently there is no executing agency.* |
| **Arbitrator:** | **You say minimal delay amounts to 4 months. Where in the contract do you have minimal delay? Where in the contract does this issue of minimal delay show up? In which Clause?** |
| *RW1:* | *Payment.* |
| *Arbitrator:* | *In respect of payment?* |
| *RW1:* | *Yes.* |
| *Arbitrator:* | *That the employer must pay with minimal delay. Where in the contract?* |
| *Claimants' Counsel:* | *Employer's obligation at 19.0, your Honour.* |
| *Arbitrator:* | *What page?* |
| *Claimants' Counsel:* | *At page 53 of the Amended Points of Claim. Item No. 1 in that paragraph your Honour.* **It said to issue the appropriate certificate and pay to the Contractor any sum due to it with minimal delay.** |
| | **That is why we are talking about delay. Let themselves know that there would be delay, but the definition of minimum delay is what I want to come from him, which he said is 4 months. And he said it's not a rule, it is not law. So now, a contract that is** |

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration
3|7|19

*meant for 52 weeks, that is one year and there is minimal delay of 4 months, I would be correct to say that half, or almost half of the year is gone.*

*I would be correct to say in a contract of 12 months, minus 4 months, almost half of the year is gone, am I correct or I'm not correct?*

RW1:        *You are correct, but then the execution of the job is not based on payments.*

Claimants' Counsel:        *Okay, okay.*

RW1:        *It's based on, yes.*

Claimants' Counsel:        *No problem, we'll come to that.*

RW1:        *The Contractor's claim of financial capability.*

Claimants' Counsel:        *No problem, so I'm correct.*

Arbitrator:        *Where is the Contractor's claim of financial capability in the contract?*

Respondent's Counsel:  *That's part of the bidding process, it is on the basis of the - we have documents to actually back it. It was the basis of the bidding - the representation at **the stage of bidding, it's part of what is considered to know whether we want to do the job or not. Technical and financial bid ...........................***

Claimants' Counsel:        **But you agree with me also that if the Claimant has capacity to finance the project with his money, with his funds, it does not remove the obligation from you to pay as at when due. You agree with me?**

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3/7/19

RW1:             <u>*Yes I agree with you. (Pages 37 - 40 of the hearing of 10/4/18).*</u>

(xxviii) Under re-examination by the Respondent's Counsel, the Respondent's Witness had this to say on the process of payment by the Employer and the role the Consultant has to play in the process.

Respondent's Counsel:      *And I am asking him, from the record, from his knowledge, what he knows, was there any complaint on the part of Government as to the competence of the Consultant?*

RW1:      *And I said no.*

Arbitrator:      *He has answered.*

Respondent's Counsel:      *He has answered me, he said, no. Please, can you, from what you know, specific relation to payment, does a Consultant pay (sic) any role and if yes, what?*

RW1:      *Yes. The Consultant will have to access the job carried out by the Contractor at the site, then after assessment, during that time because things have changed now, he would now pass his judgment through Executing Agency. Executing Agency in turn will now look at it and forward it to Ecological Fund Office. Then for us to be sure of what the Consultant and the Contractor is saying, we have to - the officers have to visit the site for on the spot assessment of the job. Then after coming back, then you would write a memo for it.*

63 | Page


CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration - O.



| | |
|---|---|
| *Respondent's Counsel:* | *So with respect to every pay, the Consultant has a role to play.* |
| *RW1:* | *Yes.* |

Still on **"minimal delay"** in the payment of IPCs approved by the Consultant, the Respondent's second witness, Mr. Audu Cornelius had this to say:

| | |
|---|---|
| *RW2:* | *My name is Audu Cornelius. I'm a Civil Servant and I'm employed by the Ecological Fund Office of the Federal Government.* |
| *Arbitrator:* | *You work?* |
| *RW2:* | *In Ecological Fund Office.* |
| *Arbitrator:* | *Okay.* |
| *Respondent's Counsel:* | *Please what's your relationship with the subject matter of this Arbitration, the project?* |
| *RW2:* | *This project, I happen to be the Project Manager.* |
| *Arbitrator:* | *You were the Project Manager?* |
| *RW2:* | *Yes.* |
| *Arbitrator:* | *When you say Project Manager, what do you mean by that?* |
| *RW2:* | *That is, we assess the projects and ensure that the project is completed.* |
| *Arbitrator:* | *Okay.* |
| *Arbitrator:* | *You took over the project when?* |
| *RW2:* | *2011.* |

CERTIFIED TRUE COPY
Region'l Centre For Int'l
Commercial Arbitration-Lagos.

| | |
|---|---|
| Arbitrator: | Go on. |
| RW2: | And I had the concern that the project should not be abandoned, to be completed and we visited the site, we held series of meetings to be sure that this project is not abandoned. Then the meeting we held in 2014 **when the Claimant was complaining about payment was the reason for the delay**, the meeting was extensive, he came with a team of lawyers and the Respondent, their own lawyers, we the project managers were there and we looked at the issues, our concern and we now agreed that the IPCs or the payments were not delayed. We discovered that IPC No. 1 was paid early. IPC Nos. 2 and 3 were paid with minimal delay and IPC No. 4. |
| Arbitrator: | Sorry, when you say IPC No. 2 & 3 was (sic) paid with minimal delay, what do you mean by minimal delay? |
| RW 2: | You know in the contract agreement, they said IPCs should be paid with minimal delay and the period in question is not specified because there is a process, there is a chain of events that lead to payments. |
| Arbitrator: | So within that context, what do you consider to be minimal delay? What was the range of minimal delay? |
| RW 2: | It's not specified in there. |
| Arbitrator: | Practically |

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3/7/19

| | |
|---|---|
| *RW 2:* | *In the practically,* |
| *Arbitrator:* | *Say IPC No.1, No. 2* |
| *RW2:* | *Okay, like IPC No. 1 was paid within 2 months or less than 2 months. Then IPCs No. 2 and 3 took 4-4 months.* |
| *Arbitrator:* | *Within the submission* |
| *RW 2:* | *Yes within submission, Yes.* |
| *Arbitrator:* | *After the Consultant had certified the job is done.* |
| *RW 2:* | ***Even when they've certified that the job is done and the IPC comes, they have to send a team of the Project Manager, Engineers to go and see what they are saying. They don't work on paper.*** |
| *Arbitrator:* | *Who, the Respondent?* |
| *RW 2:* | *The EFO.* |
| *Arbitrator:* | *Has to send them to go to the site to see that the work has been done.* |
| *RW 2:* | *Yes.* |
| *Arbitrator:* | *In accordance with the IPC.* |
| *RW 2:* | *Yes.* |
| *Arbitrator:* | *And it is from that day that it takes four months to pay.* |
| *RW 2:* | *No, not from- the process, the four months you are counting was from when the letter for the work from Consultant and EA comes to the office.* |



CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3\7\19

| | |
|---|---|
| *Arbitrator:* | *when you say EA, who is EA?* |
| *RW 2:* | *Executing Agency.* |
| *Arbitrator:* | *That is River Basin?* |
| *RW 2:* | *Yes. Then there is a process of sending another team to the site to confirm if the documents sent, if they are in order.* |
| *Arbitrator:* | *Okay. So, all of the processes took 4 months in some cases.* |
| *RW 2:* | *Yes.* |
| *Arbitrator:* | *Were they eventually paid?* |
| *RW 2:* | *Of course, of course, the payments are there. IPC 1 was paid, 2 was paid, 3 was paid.* |
| *Arbitrator:* | *Completely?* |
| *RW 2:* | *They were paid.* |
| *Arbitrator:* | *In full?* |

(xxix)  I have gone through a very elaborate and painstaking exercise in respect of the meaning of **"minimal delay"** in *Clause 19.0 (i)* of the Contract under the Employer's Obligation, with a view to determining whether the Respondent breached the contract by delayed payments for certified IPCs as alleged by the Claimants:

    a.    The Respondent admits both in its pleadings and in the written and oral testimony of its two witnesses that payments for IPCs took a period of 2-4 months to be paid to the Contractor after certification by the Consultant and the Executing Agency, who are agents of the Respondent.

    b.    RW 1 and RW 2 testify that the payments made to the Contractor within 2-4 months of the certification of the IPCs, were payments made with **"minimal delay"** as agreed in



CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3|7|19

*Clause 19.0 (i)* of the contract, because according to them, processes of confirming the accuracy or authenticity of the information contained in the IPCs had to be carried out.

c.   According to the Respondent's witnesses, RW1 and RW 2, upon receipt of the IPCs from the Consultants, a project monitoring team is sent to the site to confirm that the work as stated in the IPC has been carried out. It is after this confirmation by the project monitoring team, that the process of payment to the Contractor commences, and this verification process by the EFO, give and take, takes between 2-4 months to complete and pay the Contractor. According to them, a delayed payment period of 2-4 months is minimal.

d.   According to the Respondent's witnesses, the period of delay is immaterial because the execution of the project does not depend on payment from the Respondent, the Claimants having represented to the Employer during the bidding process that he has both the technical and financial capacity to take on the job, which is the reason why the contract was awarded to him.

e.   When asked by Tribunal, whether the Claimants made representations about their financial capacity to undertake the job, the Witnesses testified that the financial ability to undertake the job is part of the requirements for being awarded the contract as contained in the Bid document.

f.   Under Cross Examination of RW2 in respect of the allegation that the Claimants made representations that they have the financial capacity to undertake the job, the following conversation ensued:

> *Claimants' Counsel:* .......................................................*In a project of 12 months and payments are made within 4 months, 6 months, irrespective of who that person is, whether that person is late Abiola because that is, the person still believed*

CERTIFIED TRUE COPY
Region: Centre For Int'l
Commercial Arbitration-Lagos

3 7 19



|  | *to be the richest, do you think he would be able to continue with the job?* |
|---|---|
| RW2: | *There is a contract term that the Contractor should have financial capability.* |
| Claimants' Counsel: | Yes. |
| RW2: | *There are some in some cases with mobilisation, they finished the project.* |
| Claimants' Counsel: | *But you will agree with me that the mere fact that the Contractor has the money to execute the program doesn't denigrate from the fact that you ought to pay him promptly so that he can foot the bill of the mortgage because by law now, if you carry cash, it is money laundering. It is an offence. You source, am I correct?* |
|  | *It is your capacity to source for funds, that is, what shows that you are a man, you are buoyant; am I correct sir?* |
| RW2: | *When you are given a job, they will examine you. Do you have the technical and financial capability?* |
| Claimants' Counsel: | *My question now is that, your ability to do the job is not whether you have a lorry load of cash in your backyard, but that you can source for immediate funds to do the job. Am I correct to say that?* |
| RW2: | *I don't understand you.* |
| Claimants' Counsel: | *Ability to seek for fund and get it.* |

CERTIFIED TRUE COPY
Regional Centre For int'l
Commercial Arbitration - Lagos

3/7/19

| | |
|---|---|
| *RW2:* | *When you said you have capacity -* |
| *Claimants' Counsel:* | *Listen to me, it is a question that I am asking. I said, ability to seek for the fund and get it for the job is what makes that capacity, what makes up of that capacity to do the job.* |
| *RW2:* | *Okay.* |
| *Claimants' Counsel:* | *Fine. Okay means what.* |
| *RW2:* | *Yes.* |
| *Claimants' Counsel:* | *So, now I would be correct to say that the Claimants sourced for fund from Skye Bank and it was granted to him for the job, he actually proved that he has clout, financial clout to execute the job. I'm correct to say that? (Pages 68-69 of the hearing of 10/4/18).* |

g.  On the Respondent's allegation of the Claimants' representations of financial capacity to execute the contract pursuant to a requirement in the Bid document, on the basis of which the contract was awarded to the Claimants, I have painstakingly perused the Bid Document, that is, the INSTRUCTIONS FOR TENDERING annexed to the Respondent's Amended Points of Defence dated 26th March, 2018 as *(Annexure 2)* at *pages 99 - 115* of the Respondent's Bundle.

h.  The Clauses in the Bid Document relevant to the Respondent's allegation that the Claimants represented to the Respondent that they have the financial capacity to undertake the job pursuant to which the contract was awarded to them are:

(i)  CLAUSE 6.1(ii) OF THE BID DOCUMENT

**FINANCIAL QUALIFICATION.**

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3/7/19

*"The Tenderer shall submit evidence of his financial standing. Preferably this shall include a copy of the last three annual balance sheets and auditor's report together with authority to approach the Tenderer's Bank for a reference".*

(ii)   CLAUSE 16.0

### AWARD CRITERIA.

*"Subject to clause 22, the Employer will award the contract to the successful Tenderer whose tender has been determined to be substantially responsive and has been determined as the most advantageous evaluated tender, provided further that the Tenderer is determined to be qualified to perform the contract satisfactorily. The most advantageous tender is not necessarily the lowest evaluated tender.*

(iii) CLAUSE 24.0

### TENDER DEPOSIT.

*The Tender shall be accompanied by a Bank deposit receipt in favour of the Employer for 5 Million Naira from a Bank incorporated in Nigeria. Alternatively, the deposit may take the form either of a letter of Guarantee from a Bank or of credit confirmed by a Bank in Nigeria made in favour of the Employer.*

(i)   From the relevant Clauses of the BID Document reproduced above, it is obvious that the alleged representations of financial capacity made by the Claimants which earned them the contract, such that the performance of the job will not be dependent upon payment made by the Respondent for jobs already executed and certified for payment by the Consultants.

(j)   Contrary to the Respondent's allegation of the Claimants' representation of financial capacity to execute the project to conclusion, without any payments from the Respondent for jobs certified done, I have not come across any such representation from the Claimants even in the Bid Document as alleged.

CERTIFIED TRUE COPY
Regional Centre For
Commercial

3|7|19

(k)     I therefore find as fact that the Claimants did not make any representation of their financial capacity to undertake the project to conclusion without payment by the Respondent for jobs certified satisfactorily executed by the Consultant and the Executing Agency, the Anambra-Imo River Basin Development Authority.

(l)     From the foregoing, I also find as fact that the alleged financial capacity to execute the contract with the Claimants' own personal funds was not a term of the contract entered into by the parties.

(m)     It was sufficient that the Claimants had the capacity to approach any bank to obtain a banking facility to execute the contract, of which there is evidence in the Tribunal's record that the Claimants indeed obtained banking facility from Skye Bank PLC for the purpose of using the funds borrowed for the execution of the contract, a development which the Ecological Fund Office (EFO) was fully aware.

(n)     It is my candid opinion that the knowledge by the EFO that the Claimants had borrowed money from Skye Bank for the purpose of using the funds to execute the construction project and the EFO's knowledge of the fact that the Bank is about to sell the 2nd Claimant's Residential home which he had mortgaged as security for the Skye Bank loan ought to have been an additional incentive to pay the Claimants promptly for jobs certified by the Consultants as satisfactorily executed. Unfortunately, the Respondent failed to pay the Claimants for jobs satisfactorily completed with the certification of the Consultants with **MINIMAL DELAY** as agreed in their contract.

(o)     The provision of *Clause 19.0(i)* of the contract under the Employer's Obligation is very simple, clear, unambiguous and straight forward. At the risk of the repetition, *Clause 19.0(i)* of the contract unequivocally provides that:



CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3|7|19

### 19.0  EMPLOYER'S OBLIGATION.

*In consideration of the satisfactory execution of the works by the Contractor, the Employer covenants:*

*(i)   To issue the appropriate certificate and pay to the Contractor any sums due to it with **MINIMAL DELAY**.*

(p)   Interpreted literally, it is my firm view that once the Consultant and the Executing Agency have certified an IPC for payment for a job satisfactorily done, the EFO, as the Agent of the Respondent in charge of overseeing the project, is duty bound to effect the payment of any such certificate with minimal delay as agreed.

A Minimal Delay, which is a period of time, even less than the one month period allowed for payment under *Clause 60(1)* of the Standard Conditions of Contract; or the maximum period of 60 days delay provided in *Clause 68(1)* of the Standard Conditions of Contract which is next in line to the Agreement in the hierarchy of the contractual documents forming part of this contract, AND I SO HOLD.

(xxx)   The parties are *ad idem* that payment for certificates certified for payment by the Consultant and the Executing Agency, for jobs satisfactorily executed were delayed for between 2-6 months period before payment to the Claimants were effected, and in most cases, the jobs already completed would have deteriorated, necessitating the repeat of the jobs by the Contractor deploying funds finally paid, for jobs already completed for the repeat of deteriorated jobs.

(xxxi)   The only requirement for payment by the EFO to the Contractor for jobs satisfactorily executed as provided in the contract is the certification of the IPC by the Consultant and the Executing Agency.

(xxxii)   To be satisfied that the entries in the IPC certified by the Consultants are authentic and the jobs truly executed satisfactorily, the Respondent's Witnesses testified that upon receipt of an IPC from the Executing Agency, the EFO will thereafter dispatch its own project monitoring team, who are



CERTIFIED TRUE COPY
Regional Centre For
Commercial Arbitration
3|7|19

Engineers to the site for the purpose of verifying that the statements of satisfactory completion of the particular milestone as contained in the IPC is authentic.

(xxxiii) Although the verification or re-confirmation of IPCs by the EFO, is not a contractual requirement for payment to the Contractor for work satisfactorily done, I believe this exercise is within the Respondent's prerogative, provided the exercise is carried out promptly to enable the EFO effect payment of certified IPCs with MINIMAL DELAY as agreed by the parties. But this was not the case.

(xxxiv) In a report to the Permanent Secretary, Ecological Fund Office (EFO) from D. C. Afoenyi, Assistant Legal Adviser, EFO dated 29th August, 2012 at *pages 265 - 269* of the Claimants' Bundle annexed to their Amended Points of Claim, the Assistant Legal Adviser informed the Permanent Secretary, among others, as follows that:

> "1.  *The project is yet to be completed due to conflicting number of reasons to wit: that the Contractor abandoned the site as a result of delayed payments, e.t.c.*
>
> 2.  *Among the other numerous factors, such as **delayed payments**, and the Consultants' incompetence."*

(xxxv)  (a)  It is important to note that, while the Claimants formulated 2 issues for determination as follows:

1.  Whether the Defendant is not liable for breach of contract in this case; if the answer to Issue one above is YES, then;

2.  Whether in the circumstances of this case, the Claimants are not entitled to all the relief claimed thereof, the Respondent on the other hand, re-formulated its 10 issues earlier filed into a single issue for determination at *paragraph 0.3* of its Closing Submission dated 6th June, 2018 as follows:

3.  Whether there has been a breach of the Contract Agreement and by whom, as a basis upon which the Tribunal should determine entitlement to any of the relief sought?



CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3\7\19

(b)  **In Answer to the question whether there has been a breach of contract and by whom?**

(c)  From the totality of the evidence presented in this case, the Tribunal finds that the Respondent breached the contract by failing to effect payment due to the Claimants for jobs satisfactorily executed by the Claimants and certified by the Consultant and Executing Agency with **minimal delay** as provided in the contract.

(d)  The Tribunal finds that the Claimants are entitled to damages for breach of contract.

(e)  The Claimants' Issue 1 and the Respondent's sole issue are resolved in favour of the Claimants.

(xxxvi)  **THE OFFER OF ₦60 MILLION IN FULL AND FINAL SETTLEMENT OF ALL THE CLAIMANTS' CLAIMS AGAINST THE RESPONDENT.**

a.  The Claimants aver at *paragraphs 42-46* of their Amended Points of Claim dated 1st March, 2018 as follows:

*"42. That the most annoying part of the Defendant's behaviour in this transaction was that they invited us to several settlement meetings and at the last meeting on their own admitted the fault and urged us to collect the sum of ₦60 Million as compensation for the delay aforesaid, which we reluctantly accepted but unfortunately, the Defendant failed to honour their own undertaken (sic) to pay the said sum.*

*43. That after we waited and demanded for payment of ₦60 Million to no avail, the Defendant despite several meetings and discussions relating to the contract neglected the Claimants and did nothing about their own concession to pay the money. The Defendant did not implement any of the issues agreed upon at the meeting for over one year. (See pages 270- 288.)*



CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration - Lo-
3|7|19

*44. The Claimants shall rely on all the minutes of meetings held by the parties, and the Defendant is hereby put on notice to produce the originals of all the minutes of meetings relevant to this case. We shall also rely on the letter from the Defendant titled **Re: "Award of Contract for Umuako Ubirilem Flood Control Measures, Orlu LGA, Orlu Imo State: Settlement dated 20th October, 2016 and the reply dated 16/11/16."** (See pages 281 and 287.)*

*45. The Claimants sent many letters and correspondence to the office of the Defendant but none of them was ever replied, **showing a high level of insensitivity and neglect of the Claimants' plight and predicament".***

b.  In reply to the above averments, the Respondent averred at *paragraphs 34* and *35* of its Amended Points of Defence dated 26th March, 2018 that:

*"34. The Respondent admits paragraph 42 only to the extent that there were meetings convened aimed at resolving the differences between the parties. The Respondent however denies that the conveyance of the meetings is an admission of fault. The Respondent further denies that it ever admitted fault in any of the meetings. The Respondent states further that the decision of the Respondent to offer the sum of ₦60 Million was largely based on the magnanimous consideration of the Respondent and compassionate pleas of the Claimants.*

*35. The Respondent denies paragraph 43 of the Claimants' Points of Claim and states that the Claimants never demanded for the ₦60 Million arrived at in the last meeting. The Respondent states that parties at that meeting had the understanding that the resolution to pay the Claimants the ₦60 Million on compassionate grounds was to be forwarded to the relevant government offices to obtain the necessary approvals. The Respondent also states further that it officially communicated the offer to the Claimants after necessary*



CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3 | 7 | 19

*approvals were secured for the release of the ₦60 Million to the Claimants."*

c.  The Respondent's first witness, RW 1 had this to say about the settlement offer of ₦60 Million:

| | |
|---|---|
| *Claimants' Counsel:* | *Did you ever prepare any Minutes of meetings at all? In the Minutes of Meetings, you remember that the sum, all the remaining sum in respect of the contract were supposed to be paid – the Perm Sec said it should be paid  or be paid to the Claimant to compensate him in order to stop this whole "wahala" let me use the official language. You can remember?* |
| *RW 1:* | *I disagree with you.* |
| *Claimants' Counsel:* | *You disagree with me?* |
| *RW 1:* | *Yes, because I'm the secretary to that meeting.* |
| *Claimants' Counsel:* | *It was not recorded that they should pay him any ₦60 Million?* |
| *RW 1:* | *No, No, see when you annoy the Permanent Secretary.* |
| *Claimants' Counsel:* | *Was it agreed that he should be paid ₦60 Million?* |
| *RW 1:* | *Because the resolution was made by us.* |
| *Claimants' Counsel:* | *Was it agreed?* |
| *RW 1:* | **He later agreed after one year.** |

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3|7|19

| | |
|---|---|
| *Claimants' Counsel:* | *Okay, he later agreed after one year.* |
| *RW 1:* | *Because he wanted us to testify why he should be paid ₦60 Million.* |
| *Claimants' Counsel:* | *After one year, you've answered the question.* |
| *RW 1:* | ***This is civil service; he said we should testify for a period of 9 months, I keep on writing, writing.*** |
| *Claimants' Counsel:* | *Just to pay. And you don't want to say the truth the way it is.* |
| *RW 1:* | ***Am I not explaining? I am explaining. We made that resolution. It was a stakeholders' resolution out of compassion because baba was saying they want to sell his house, they want to do this.*** |

d. From the above averments and oral testimony of the Respondent's Witness, if the Respondent had paid the ₦60 Million as promised, this arbitration proceeding would have been unnecessary.

### 24.9 (E)   THE UNILATERAL REDUCTION OF IPC NO. 5 BY THE EFO.

#### (A)  THE CLAIMANTS' POSITION.

1. The Claimants allege at *paragraph 19* of their Amended Points of Claim that the Respondent through its agent, the Ecological Fund Office (EFO) breached the contract in respect of Interim Payment Certificate (IPC) No. 5 as follows:

   (i) IPC No. 5 dated 26/3/10 was certified by the Consultant and the Executing Agency for the sum of **₦30,486,151.17 (Thirty**

CERTIFIED TRUE COPY
Region: Centre For Int'l
Commercial Arbitration-Lagos

3/7/19

Million, Four Hundred and Eighty Six Thousand, One Hundred and Fifty One Naira, Seventeen Kobo). However, the EFO unilaterally reduced the value of the IPC to ₦12,144,406.52 (Twelve Million, One Hundred and Forty Four Thousand, Four Hundred and Six Naira, Fifty Two Kobo) without any notice or reference to the Consultant, the Executing Agency or the Claimants.

(ii) Payment of ₦12,144,406.52 (Twelve Million, One Hundred and Forty Four Thousand, Four Hundred and Six Naira, Fifty Two Kobo) for IPC No. 5 was made 6 months after the same was submitted by the Consultants.

(iii) The balance payment of IPC No. 5 in the sum of ₦18,341,744.65 (Eighteen Million, Three Hundred and Forty One Thousand, Seven Hundred and Forty Four Naira, Sixty Five Kobo) remains unpaid till date despite several letters of demand.

## (B) THE RESPONDENT'S POSITION.

(i) The Respondent admits that IPC No. 5 was approved by the Consultant and Executing Agency for the sum of ₦30,486,151.17 (Thirty Million, Four Hundred and Eighty Six Thousand, One Hundred and Fifty One Naira, Seventeen Kobo).

(ii) IPC No. 5 had a lot of discrepancies as such its processing took 6 months because it took a longer time to resolve the discrepancies in collaboration with the Executing Agency and the Consultant.

(iii) The IPC was based on the re-scoped BEME.

(iv) The Contingency Sum in the project which is usually not paid until the project is fully executed was added to this IPC and had to be deducted.

(v) The 2.5% of the contract being the Administrative charges as stipulated in the Agreement had to be deducted.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3|7|19

(vi) There is no balance of any money at all due to the Claimants on IPC No. 5.

(vii) IPC No. 5 was subjected to the same verification process as was the case with every other IPCs that had been paid before IPC No. 5.

## (C) THE TRIBUNAL'S DECISION.

(i) IPC No. 5 dated 26/3/10 states that:*"I/we hereby certify that the sum of Thirty Million, Four Hundred and Eighty Six Thousand, One Hundred and Fifty One Naira, Seventeen Kobo Only is due for payment to the Contractor for works executed in respect of the contract above."*

(ii) IPC No. 5, like IPC Nos. 1 - 4 was raised by the Executing Agency, Anambra-Imo River Basin Development Authority and signed by the Consultant, Jones Tech International Ltd in the person of Engr. Bassey Ekanem.

The IPC was also signed by all the representatives of the Executing Agency including its Managing Director.

(iii) By letter dated 26th March, 2010, the Consultant forwarded IPC No. 5 to the Managing Director of the Executing Agency as follows:

"26th March, 2010.

The Managing Director
Anambra/Imo River Basin
Development Authority
Km 10, Owerri - Aba Road
P.M.B. 1301
Owerri – Imo State.

Dear Sir,





UMUAKO UBIRIELEM FLOOD/GULLY EROSION CONTROL.
RE: CONSTRUCTION WORK – INTEPIM PAYMENT
CERTIFICATE NO. 5

We forward herewith for your consideration and payment,
seven (7) copies of Interim Payment Certificate (IPC) No. 5 now
due to the Contractor Messrs PICCOL (NIG) LTD for the on-
going construction works, out-lines in the heading above.

The sum of Thirty Million, Four Hundred and Eighty Six
Thousand, One Hundred and Fifty-One Naira, Seventeen Kobo
Only (₦30,486,151.17) representing 90.8% of permanent
works is hereby presented for settlement.

Yours faithfully,

JONES-TECH INT'L LTD."*(See page 201 of the Claimants'
Bundle).*

(iv) By letter dated 30/3/10, the Anambra-Imo River Basin Development
Authority forwarded IPC No. 5 to the Ecological Fund Office as
follows:

"30/03/10.

The Permanent Secretary
The Ecological Fund Office,
Federal Secretariat,
Abuja.

Sir,

## UMUAKO-UBIRIELEM   FLOOD/EROSION   CONTROL
## MEASURES INTERIM PAYMENT CERTIFICATE NO. 05.

We wish to forward for your consideration and payment two
copies of interim payment certificate No. 05 for the sum of
Thirty Million, Four Hundred and Eight Six Thousand, One
Hundred   and   Fifty   One   Naira,   Seventeen   Kobo

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos.

31/7/19

(₦30,486,151.17) in favour of PICCOL Nig. Ltd. for above mentioned project.

Engr. C. A. Uzoho, FNSE
Managing Director."

*(See page 200 of the Claimants' Bundle).*

(v)  By letter dated 11th August, 2010, after a period of about six (6) months, the National Committee on Ecological Problems, Ecological Fund Office of the Secretary of the Government of the Federation in the Presidency wrote to the Claimants as follows:

"11th August, 2010.

EF/SEFCP/ S 173/VOL.111/532

The Managing Director
Messrs Piccol Nig. Ltd.
No. 13, Ekiomado Street
Uselu Quarters,
Benin City.

**CONSTRUCTION OF EROSION CONTROL STRUCTURES AT UMUAKO UBIRIELEM, ORLU, IMO STATE. RE: PAYMENT OF CONTACTORS IPC NO.5**

I am directed to inform you that the Honourable Minister of Environment and Chairman, National Committee on Ecological problems has approved the payment of ₦12,144,406.52 (Twelve Million, One Hundred and Forty Four Thousand, Four Hundred and Six Naira, Fifty Two Kobo) only, including VAT and withholding Tax to your company, Messrs PICCOL Nig Limited being payment of Contractor's invoice No. 5 of the above named project.

2.  Please ensure that you or your accredited representative, come to this office with a letter of authority and two (2) passport size, photographs attached to it for identification purposes. Meanwhile, you are expected to forward the name of your

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3/7/19

Banker, your Account Number, Sort Code and Tax identification Number to facilitate the processing of your payment.

3. Congratulations!

J. K. Madaki
For Permanent Secretary" *(See page 216 of the Claimants' Bundle)."*

(vi) The letter informing the Claimants of the payment of **₦12,144,406.52 (Twelve Million, One Hundred and Forty Four Thousand, Four Hundred and Six Naira, Fifty Two Kobo)** for IPC No. 5 did not give any reason for the reduction of IPC No. 5 from the certified amount of **₦30,486,151.17 (Thirty Million, Four Hundred and Eight Six Thousand, One Hundred and Fifty One Naira, Seventeen Kobo)** to **₦12,144,406.52 (Twelve Million, One Hundred and Forty Four Thousand, Four Hundred and Six Naira, Fifty Two Kobo).**

(vii) By letter dated 5th October, 2010, the Claimants wrote to the Honourable Minister, Federal Ministry of Environment strongly protesting the reduction of the IPC No. 5 from **₦30,486,151.17 (Thirty Million, Four Hundred and Eight Six Thousand, One Hundred and Fifty One Naira, Seven Kobo)** to **₦12,144,406.52 (Twelve Million, One Hundred and Forty Four Thousand, Four Hundred and Six Naira, Fifty Two Kobo)** in the certificate prepared and signed by the Consultant and the Anambra-Imo River Basin Development Authority after a joint site measurement was taken. *(See page 122 of the Claimants' Bundle).*

(viii) By letter dated 4th April, 2011, the Anambra- Imo River Basin Development Authority wrote a letter captioned ***"RE: STALLED PROJECT", to the Permanent Secretary, Ecological Fund Office, giving an update of the Project from inception, cataloguing the various duration of delays in payments, starting from IPC No. 1- IPC No. 5. The Executing Agency stated that "During the delays in the payment certificates, the contractor was out of site and the erosion escalated to an alarming situation. We are aware that the contractor procured some loans even from the community to***

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration
3|7|19

*execute the project." The Contractor claimed that certificate No.5 was grossly underpaid and no reason was given for the short payment. In the light of the above, it will be appreciated if all earned certificates are paid. The Contractor is claiming that he cannot go back to site with the resources available to him and other issues relating to the site not resolved. If he does not go back to site soonest, we may end up with a worse disaster than we started with.*

*Gratefully assist................"*

*(See pages 157-158 of the Claimants' Bundle".)*

(ix) In a write-up on the Project by the Presidential Committee on Monitoring of Ecological Projects in the South East Zone, captioned **"Monitoring and Evaluation Template":**

a. **On the issue of delayed payment, the Presidential Committee noted that the delay in the execution of works is due to delayed payment of IPCs by the EFO.**

b. It was reported that the Committee visited the site on 18th March, 2013 and 98% of re-scoped work had been done by August, 2010.

c. The major problem on the site at the time of the visit was their observation that a Contractor was tarring the road at Ubirielem end and also mobilising equipment at Obibi of the contract with a view to complete (sic) the project. It is believed that the NDDC contracted the Contractor. This is being done without the knowledge of Federal Government (EFO) or PICCOL Nig Ltd. We are therefore taking legal action.

d. On IPC No. 5, it was reported that the value of IPC No. 5 is **"₦30,486,151.17 (Thirty Million, Four Hundred and Eighty Six Thousand, One Hundred and Fifty One Naira, Seventeen Kobo)** which the EFO reduced to **₦12,144,406.52 (Twelve Million, One Hundred and Forty Four Thousand, Four Hundred and Six Naira, Fifty Kobo)** without any reason. We


CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3\7\19

wrote the EFO rejecting the reduction. *(See pages 252-256 of the Claimants' Bundle).*

(x) The only condition stated in the contract for payment to the Contractor is as provided in *Clauses 2.0 (ii) & (v)* of the contract on method of payment as follows:

> **"(ii) Payment to the Contractor shall be against a certificate issued under the hand of the Consultants containing a full-itemised statement of the estimated value of the works executed."**

(xi) All subsequent payment shall be made on certification by the Consultants to the Project certifying the works done and recommending the payment for such works in accordance with the conditions in the schedule attached to this Agreement.

(xii) I have diligently perused IPC No. 5 dated 26/3/10 and I find that the said IPC No. 5 conforms with the provisions of the contract vis-à-vis the conditions for payment and it qualifies for payment to the Contractor as approved by the Consultant. *(See page 202 of the Claimants' Bundle).*

(xiii) I find as fact that the Respondent ought to have paid IPC No. 5 in full. The said IPC No.5 having met the contractual standard agreed by the parties.

(xiv) It is traditional for employers to honour the Architect's or Engineer's payment certificate without question. However, if the certificate does not satisfy the requirements of the contract, the Employer may temporarily suspend payment, and seek clarification or resolution of any ambiguities with the Contractor, and then proceed to make payments once all doubts have been cleared.

(xv) The Employer certainly lack the powers to unilaterally reduce the amount certified for payment to the Contractor by the Consultant and the Executing Agency in IPC No. 5 without giving the Consultant and the Contractor any reasons for doing so.

CERTIFIED TRUE COPY
Region 1 Centre For Int'l
Commercial Arbitration-Lagos
3\7\19

(xvi) It is inappropriate for the Respondent to have reduced the amount certified for payment by the Executing Agency and the Consultant without stating the reason for such reduction. The action of the Employer runs contrary to the way the construction industry operates. As Lord Denning once held:

> **"An architect's certificate is like a bill of exchange i.e. money in the hand and should be honoured."**

*(See 150 Contractual Problems and their Solutions. Blackwell Publishing (2005) @ page 136.)*

(xvii) From the foregoing I find as a fact that the Respondent breached the contract by reducing the payment due to the Contractor under IPC No. 5 without any explanation to the Executing Agency, the Consultant and the Contractor.

(xviii) I also find as fact that the Claimants are entitled to damages for this breach of contract.

(xix) This sub-issue is resolved in favour of the Claimants.

## 24.9 (F)  UNILATERAL DEDUCTION OF 2.5% AS ADMINISTRATIVE CHARGE FROM THE CONTRACT.

### (A) CLAIMANTS' POSITION.

(i) The unilateral deduction of 2.5% value of the contract from IPC No. 5 as administrative charge is not provided in the contract.

(ii) Provision has already been made for this in the Bill of Quantities in the preliminaries under the heading "Allowance for project management by Employer and Executing Agency", which sum has already been claimed in full in IPC No. 5, therefore the unilateral introduction of 2.5% Administrative Charge is fraudulent.



CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3|7|19

**(B)  RESPONDENT'S POSITION.**

(i)  One of the reasons for the delay in the processing of IPC No. 5 was because deductions had to be made from the IPC, one of which was the deduction of 2.5% of the contract being Administrative Charge as stipulated in the Agreement.

**(C)  TRIBUNAL'S DECISION.**

(i)  I adopt my comments and decision in respect of the unilateral reduction of IPC No. 5 without any notification to the Claimants, also under this head of complaint.

(ii)  As alleged by the Claimants, provision has indeed already been made for this in the Bill of Quantities under the heading preliminaries as follows:

"Allowance for project management by Employer and Executing Agency – ₦4,000,000.00".

(iii)  The Tribunal finds that the deduction of any sum representing 2.5% of the contract is inappropriate, provision having already been made for the same in the Bill of Quantities as agreed by the parties.

(iv)  The unilateral deduction of any sum representing 2.5% of the contract as Administrative Charge without any reference to the Claimants, constitute a breach of the contract between the parties, for which the Claimants are entitled to damages.

(v)  This sub-issue is resolved in favour of the Claimants.

## 24.9 (G)  THE RESPONDENT'S ALLEGATION OF BREACH OF CONTRACT BY THE CLAIMANTS.

While denying any fault on its part, the Respondent in turn alleges that the Claimants breached the agreement by abandoning the site, suspending the progress of work, failing to complete the project within one year as agreed as well as failing to insure the project.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos.

3|7|19

## (A)  CLAIMANTS' POSITION.

(i)    The Claimants deny that they abandoned the site, or failed to progress the work, or failed to complete the work within one year. According to the Claimants, work stopped due to non-payment of certified IPCs by the Respondent. IPCs which were supposed to be paid with **minimal delay** were unduly delayed for periods between 2 – 6 months.

(ii)   The Claimants could not have abandoned the site when their equipment and two (2) security staff remained on site.

(iii)  The Claimants informed the Respondent by several letters to make payment so that work can go on and or resume to no avail. It is the Respondent's failure to pay the IPCs as at when due that is responsible for the failure of the project, until the intervention of the NDDC which now completed the work.

(iv)   The Claimants did not breach the contract by failing to complete the works within one year. The contract between the parties provided for extension of time and the Claimants were duly granted extension of time to complete the works, which completion was made impossible by the Employer's failure to effect payment of certified IPCs as at when due, until work finally stopped in August 25, 2010.

(v)    The Claimants did not breach the contract by failing to insure the project. The obligation to insure the project is on both parties according to the contract.

(vi)   Part of the problems encountered on the site was the fact that the Employer appointed an unqualified Engineer as Consultant to the project and when the fact of the qualification of the Engineer arose, or when the Claimants suspected that the Engineer was not qualified, the 2nd Claimant wrote to the Council for the Regulation of Engineering in Nigeria (COREN), who by letter dated 29th December, 2011 confirmed that neither Engineer Bassey M. Ekanem nor his Company, Jones Tech International Limited are registered with COREN for the



CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration ....

3/7/19

purpose of carrying out work as Engineers in Nigeria, the Employer did nothing to stop or remove the Consultant despite his incompetence. The Ecological Fund Office acknowledged receipt of COREN's letter disclaiming the Consultant as one of its registered members on 1st February, 2012.

(vii) The Claimants could not have abandoned the site under the watchful vigilance of the beneficiary community who will not allow the Claimants to remove their materials from the site until NDDC's intervention in the project.

(viii) The Claimants insist that they never abandoned the site which is why the Employer could not terminate the contract.

(ix) It is reiterate that the work stopped at the site when payment for work certified done were not forth coming and the mortgage loan exhausted, without any payment from the Respondent to pay off bank interest already accumulating on the mortgage.

(x) The Claimants state further that there were two (2) security guards on the site. However, with the above equipment and building materials packed at the site and awaiting payment from the Employer, the Employer cannot claim that the site was abandoned.

(xi) The Claimants having not breached the contract, the Respondent is not entitled to any damages in the sum of **₦50,000,000.00 (Fifty Million Naira)**.

## (B)  THE RESPONDENT'S POSITION.

(i)  The Claimants breached the contract in the following ways:

a.  Abandonment of site;

b.  Suspension of work;

CERTIFIED TRUE COPY
Region: f Centre For Int'l
Commercial Arbitration-Lagos
3|7|19

c.   Failure to complete the project within one year and;

d.   Failure to carryout insurance on the project as agreed by the parties;

e.   The Claimants are liable for damages in the sum of **₦50,000,000.00 (Fifty Million Naira)** for breach of contract.

## (C)  THE TRIBUNAL'S DECISION.

(i)   The Tribunal will take the sub-issues of the Respondent's allegations of abandonment of site and suspension of work together because they are inter-related.

(ii)   As indicated above, the Claimants have denied that they abandoned the construction as alleged. According to the Claimants, work merely stopped on the site when they ran out of funds due to the Respondent's inordinate delay in honouring the IPCs as at when due.

(iii)   The question that arises for determination under this sub-issue is whether, taking into consideration all the circumstances of this case, the Claimants can be said to have abandoned the construction site as alleged.

(iv)   A good starting point will be to try to understand the meaning of the words *"abandon"* and *"abandonment"*.

(v)   The word **"abandon"** is defined as:

"To desert, surrender, forsake, or cede. To relinquish or give up with intent of never again resuming one's right or interest. To give up or to cease to use. To give up **absolutely**, to forsake entirely, to renounce utterly, to relinquish all connections with or concern in. **To desert**. It includes the intention and the external act of carrying it into effect."



The word **"abandonment"** is defined as:

"To surrender, relinquishment, disclaimer or cession of property or rights. <u>**Voluntary relinquishment of all right, title, claim and possession with the intention of not reclaiming it**</u>. *(See Black's Law Dictionary, 6th Edition at page 2.)*

(vi) With the Claimants' denial of the Respondent's allegation of abandonment of site, it is important to examine the contractual provision and penalty for the abandonment of the site and/or the suspension of the works, vis-à-vis the Claimants' contention that they did not abandon the site as alleged, as their equipment and staff were on site at all material times relevant to the subject matter of this dispute, rather because of the Respondent's excessive delay in honouring IPCs as at when due, work naturally stopped when the Claimants ran out of money and could not continue with the works.

(vii) **Clause 17.0 of the contract on Material Breach by the Contractor provides that:**

*"If the Contractor commits a material breach of this Agreement and fails to remedy same after 14 days notice to that effect has been given by the Employer, such breach shall be a ground for the Employer to determine this Agreement and take possession of the whole works or if the Contractor defaults in any one or more of the following respects, that is to say:-*

(a) *If it **without reasonable cause**, wholly suspends the carrying out of the works before the completion thereof."*

(viii) That the contractor stopped or suspended the contract is not in doubt. However, the Contractor claims to have suspended work at the site for lack of funds due to the Respondent's delays in effecting payment upon duly certified IPCs.

(ix) The operative phrase in **Clause 17.0 (a)** of the Contract is **"reasonable cause"**.



CERTIFIED TRUE COPY
Regional Centre For
Commercial Arbitration
3|7|19

(x) What then is the meaning of **"reasonable cause" or "reasonable"**? Reasonable means thinking, acting or speaking from the dictates of reason. *(See Black's Law Dictionary 6th Edition at page 1265).*

(xi) **"Reasonable cause"** also means **"justifiable cause".** It connotes **"justification".** It is based on all the facts and circumstances of the Claimants' situation.

(xii) For the Claimants to benefit from the **"reasonable cause"** exception in *Clause 17.0* of the Contract, the Tribunal must determine whether the Claimants' reason for suspension of works at the site is legitimate, with a view to determining further, whether the Claimants' suspension of works at the site constitute a material breach of the Contract under *Clause 17.0* of the Contract.

(xiii) What then is the impact of the Employer's failure to effect payments of the IPCs as at when due, such that the Claimants ran out of funds to continue with the works at the site?

(xiv) It is trite that when construction contracts provide for interim payments, it is usually for the very good reason that the contractors need money to continue with the project. Sometimes, the sums involved are so large that even bigger construction companies feel the pinch when payment is withheld. *(See 150 Contractual Problems and their Solutions op.cit at page 135).*

(xv) Delaying in paying construction contractors impacts negatively on the effectiveness of the contractor and affects the project delivery schedule. Failure to pay contractors for work executed may lead to the contracting firm being insolvent and exposed to severe hardship and indignity (as has been the case with the Claimants in the case under consideration).

(xvi) The impact of delayed payment is delay in project progress which affects the schedule of work and leads to cost overrun and extension of time.





(xvii)   Delayed payments create financial hardship for the contractor and in most cases give the contractor a right to suspend work.

(xix)    Since contractors do not work for free, nonpayment or even half payment for contractor's certified approved work MAY be sufficient legal excuse to quit working and abandon the project.

(xx)     The contractor may therefore suspend work for non-payment of certified IPCs, but give notice until the contractor has received payment.

(xx)     On the issue of Notice of Suspension of the works at the site due to non-payment of certified IPCs. The records of the Tribunal are replete with exchange of communication between the parties on the suspension of the works at the site. There are several letters from the Claimants pleading to be paid overdue certified IPCs to enable them return to the site and resume work. There are also several letters from the Employer directing the Contractor to return to the site and resume work. The parties also held several meetings with a view to resolving the issues of delayed payments to enable the Contractor return to site and complete the project.

(xxii)   There is also evidence before the Tribunal that the Contractor returned to site from time to time, resumed work upon payment of an approved but delayed IPC, stops work again, when the money is exhausted and the next IPC is delayed.

(xxiii)  From the foregoing, I find as fact that the EFO had adequate notice of the suspension of works at the site by the Contractor. For example, it is stated in the minutes of the stakeholders' meeting on the project held on 10th November, 2011 at the Office of the Director, Ecological Fund Office, where the Project Manager, Mr. Audu Cornelius, of the EFO, informed the participants "that the major aim of the meeting is to find lasting solution on how the contractor can mobilise back to site and complete the project without further delay." *(See pages 101-112 of the Claimants' bundle).*



(xxiv) Given the meaning of "abandonment" of site as defined above to mean "to leave completely and finally, forsake utterly, desert", can the Respondent truly say that the Claimants abandoned the site within the meaning of that word?

**(xxv)  From the circumstances of this case, I find as a fact that the Claimants did not suspend work on site "without reasonable cause". The suspension of the works for non-payment of certified IPCs was "justified" within the context of *Clause 17.0* of the Contract. Accordingly, the Claimants:**

a.  Did not breach the Contract by suspending the works due to non-payment of certified IPCs, alternatively, I find as fact that the Claimants did not abandon the site within the context of the word "abandonment", and if the Respondent claims that the Claimants abandoned the site, the circumstances of the case reveal that such abandonment was not **"without reasonable cause"**.

(xxvi) On the issue of the Claimants' breach of Contract for failure to insure the project, by the agreement of the parties in *Clause 4.0* of the Contract, the following documents constitute the contract documents:

a.  The tender document, the letter of award of Contract and the letter of acceptance.

b.  The Standard Conditions of Contract.

c.  The Specification annexed thereto.

d.  The Bill of Quantities.

e.  The Schedule of rates and prices for day work and

f.  The drawings.

(xxviii) From the above, the provisions of the Standard Conditions of Contract (SCC) are binding on the parties.

CERTIFIED TRUE COPY
Region & Centre
Commercial
3|7|19

(xxix) While *Clause 21.0* of the Contract obliges the Contractor to insure the entire works in the names of both the Employer and the Contractor, *Clause 25* of the Standard Conditions of Contract provides the penalty/remedy for the Contractor's failure to insure the works. *Clause 25* of the SCC provides that if the Contractor shall fail to effect and keep in force any insurance, which he may be required to effect under the terms of the contract, then and in any such case the Employer may effect and keep in force any such insurance and pay such premium or premiums as may be necessary for that purpose and from time to time deduct the amount so paid by the Employer as aforesaid from the monies due or which may become due to the Contractor or recover the same as debt due from the Contractor.

(xxx) The Claimants state that insurance is always provided for in the Bill of Quantities, however, there was an oversight on the part of the parties, such that the inclusion of insurance in the Bill of Quantities was inadvertently overlooked, and none of the parties mentioned the issue of insurance or complained about lack of insurance, throughout the duration of the Contract. The allegation of Breach of Contract by the Claimants' failure to insure the works is therefore an afterthought.

(xxxi) The Tribunal finds as a fact that *Clause 25* of the SCC having provided the penalty for the Contractor's failure to insure the works, the Employer ought to have insured the works and deduct the amount of the premium or premiums from time to time from the monies due or which may become due to the Contractor or recover the same as a debt due from the Contractor, accordingly, the Contractor did not breach the Contract for failure to insure the works.

(xxxii) On the Respondent's allegation that the Claimants breach the Contract by their failure to complete the project within one year, the Tribunal finds, as admitted by the Respondent in its

CERTIFIED TRUE COPY
Region 1 Centre
Commercial

3|7|19



pleadings that the Contractor was granted three (3) extensions of time pursuant to *Clause 12.0* of the Contract.

(xxiii)  The Employer having exercised its discretion in favour of the Claimants' application for extension of time cannot be heard to complain that the Claimants did not conclude the works within one year as agreed by the parties in the Contract.

(xxxiv) The Tribunal accordingly finds as fact that the Claimants did not breach the contract by their failure to conclude the works within one year as alleged.

(xxxv)  From the foregoing, the Respondent's reformulated sole issue for determination, to wit:

> *Whether there has been a breach of the Contract Agreement and by whom, as a basis upon which the Tribunal should determine entitlement to any relief sought, is answered in the affirmative in favour of the Claimants. There has indeed been a breach of contract by the Employer/Respondent, entitling the Claimants to some of the relief sought.*

## 25.0   THE CLAIMANTS' ISSUE 2.

*Whether in the circumstances of this case, the Claimants are not entitled to all the reliefs claimed thereof?*

25.1   Pursuant to their allegation of breach of Contract, the Claimants claim the following reliefs against the Respondent:

i.   A declaration that the Respondent is liable for breach of Contract in Law.

ii.   The sum of ₦18,341,744.65 **(Eighteen Million, Three Hundred and Forty One Thousand, Seven Hundred and Forty Four Naira Sixty Five Kobo)** being balance of the payment for IPC No. 5.

iii.   The sum of ₦12,163,067.88 **(Twelve Million, One Hundred and Sixty Three Thousand, Sixty Seven Naira, Eighty Eight Kobo)**

96 | Page

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lago.

3 7 19

being payment in respect of work done by the Claimants from the date of Certification of IPC No. 5 to date of work stoppage at the site that is from 12th April, 2010 to 25th August, 2010, named Interim Payment Certificate (IPC) No. 6.

iv. Cost of repairs of work/extra works already done by the Claimants from June 2006 to August 2010 is ₦83,916,000.00 **(Eighty Three Million, Nine Hundred and Sixteen Thousand Naira).** *(See Annexure 24) at pages 233 – 235.*

v. The sum of ₦6,240,117.11 **(Six Million, Two Hundred and Forty Thousand, One Hundred and Seventeen Naira, Eleven Kobo)** being the total sum of interest charges at the rate of 5% on delayed payments for each IPC i.e. IPCs Nos. 1, 2, 3, 4, 5 up till May, 2016. *(See Annexure 25) at pages 236 – 240, 241 – 243A.*

vi. Interest charges on delayed payment on IPC No. 6 in the sum of ₦2,280,575.22 **(Two Million, Two Hundred and Eighty Thousand, Five Hundred and Seventy Five Naira, Twenty Two Kobo).** *(See Annexure 27) at pages 241-243 and 248 - 249.*

vii. Equipment idle time or loss of use due to incessant delays till date in the sum of ₦245,980,000.00 **(Two Hundred and Forty Five Million, Nine Hundred and Eighty Thousand Naira).** *(See Annexure 26) at pages 244 - 245.*

viii. Loss of profit in the sum of ₦51,179,663.75 **(Fifty One Million, One Hundred and Seventy Nine Thousand, Six Hurdred and Sixty Three Naira, Seventy Five Kobo).** *(See Annexure 28) at pages 246 - 247.*

ix. Interest charges on extra work done at 5% interest rate in the sum of ₦23,426,550.00 **(Twenty Three Million, Four Hundred and Twenty Six Thousand, Five Hundred and Fifty Naira).** *(See Annexure 29) at pages 248 - 249.*

x. The sum of ₦50,000,000.00 **(Fifty Million Naira)** as General damages for breach of contract.

xi. **10%** Post Judgment Interest on the total sum of the Award till the same is finally liquidated.



CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration
3/7/19

xii.   Cost of the Arbitration.

26.0   **THE RESPONDENT'S RELIEF.**

26.1   (i)   The Respondent seeks the dismissal of the Claimants' claims as it is brought *malafide* and it is lacking in merit, frivolous, fortune seeking and an attempt to reap where they have not sown.

(ii)   The Respondent seeks General Damages in the sum of **₦50,000,000.00 (Fifty Million Naira)** for breach of contract.

27.0   **CONSIDERATION OF THE RELIEF SOUGHT BY THE CLAIMANTS.**

27.1   A breach of contract means that the other party in breach has acted contrary to the terms of the contract.

27.2   It is trite that where a breach of contract is established, damages follow.  See *Cameroon  Airlines v. Otutuizu (2011) 4 NWLR  (part 1238) 512 @ 541 paras D-E.*

27.3   **THE TRIBUNAL'S DECISION ON THE CLAIMANTS' RELIEF.**

(i)   It is hereby **DECLARED** that the Respondent is liable for breach of contract between the parties.

(ii)   The Claimants' claim for the sum of **₦18,341,744.65 (Eighteen Million, Three Hundred and Forty One Thousand, Seven Hundred and Forty Four Naira, Sixty Five Kobo)** being the balance of payment for IPC No. 5 is **ALLOWED.** The Tribunal holds that IPC No. 5 having been duly certified by the Consultant and the Executing Agency, as being due for payment, it was inappropriate of the Employer to unilaterally reduce the amount approved without any reference whatsoever to the Claimants, the Consultant and the Executing Agency. IPC No. 5 having been certified by the Consultant and the Executing Agency ought to have been paid in full.

(iii)   The Claimants' claim for the sum of **₦12,163,067.88 (Twelve Million, One Hundred and Sixty Three Thousand, Sixty Seven**

CERTIFIED TRUE COPY
Region 1 Centre For Int'l
Commercial Arbitration...
3|7|19

**Naira, Eighty Eight Kobo)** being payment in respect of work done by the Claimants from the date of the certification of IPC No. 5 to the date of work stoppage at the site, that is from 12th April, 2010 to 25th August, 2010, named Interim Payment Certificate (IPC) No. 6 is hereby **REFUSED**.

The Tribunal holds as follows that:

(a)   As agreed by the parties in *Clause 2.0 (ii), (iii) & (iv)* of the contract and *Clauses 60(1), (3), 68(1), and 75* of the Standard Conditions of Contract, all Interim Payment Certificates **SHALL** be executed by the Consultant and the Executing Agency.

(b)   **Clause 75** of the Standard Conditions of Contract specifically provides that:

*"75. Valuation of the monthly statements **SHALL** be made in accordance with Clause 60 of the Standard Conditions of Contract. All monthly statements **SHALL** be certified by the Engineer's Representative on site, or where no representative is available by such procedure as may be laid down by the Engineer, monthly statements should be forwarded to reach the Engineer within 10 days after the month and to which the statement refers."*

(c)   IPC No. 6 dated 25/08/10 at *page 137* of the Claimants' bundle for the sum of **₦12,163,067.88 (Twelve Million, One Hundred and Sixty Three Thousand, Sixty Seven Naira, Eighty Eight Kobo)** is prepared and signed by the Claimants, contrary to **Clause 2.0** of the Contract, which provides that:

*"Payments to the Contractor shall be against a certificate issued under the hand of the Consultants containing a full-itemised statement of the estimated value of the works executed."*



CERTIFIED TRUE COPY
Region 1 Centre For Int'l
Commercial Arbitration

3|7|19



(d)   The Claimants state that the Consultant was not available on the site to prepare and/or sign IPC No. 6.

(e)   If the Consultant was not available to sign IPC No. 6, no explanation at all has been given by the Claimants as to why IPC No. 6 has not been countersigned by the Executing Agency, even if the Consultant was not available to sign IPC No. 6.

(f)   By letter dated 4th April, 2011, at *(pages 157-158 of the Claimants' Bundle)* the Executing Agency, Anambra-Imo River Basin Development Authority, wrote to the Permanent Secretary, Ecological Fund Office, making a strong case for the payment of all earned certificates. No mention of IPC No. 6 was made in this letter which was written several months after IPC No. 6 was submitted.

(g)   While there may be no doubt that the Claimants may have performed the works described in IPC No. 6, however, the said IPC No. 6 does not conform with the agreement of the parties for the purpose of payment of an Interim Payment Certificate.

(h)   The Tribunal and the parties are bound by the Contract signed by the parties. IPC No. 6 is accordingly **REFUSED** for the above reasons.

(iv)   The Claimants' claim for the cost of repairs of works/extra works already done by the Claimants from June 2006 to August 2010 in the sum of **₦83,916,000.00 (Eighty Three Million, Nine Hundred and Sixteen Thousand Naira).** *(See Annexure 24),* the particulars of which are at *pages 233-235* of the Claimants' Bundle is **REFUSED.**

(a)   **Clause 13.0** of the Contract provides that:

CERTIFIED TRUE COPY
Region'l Centre For  Int'l
Commercial Arbitration

3/7/19



> *"For any variation in the specifications or plan of the works or variation in any of the terms of this Agreement which may result in an increase of the Contract sum hereinbefore stipulated, the prior written consent of the Employer thereon shall be obtained. If the variation shall result in increase in Contract price, no such variation shall be entertained unless based on written agreement of the parties before the actual variation is made. For the avoidance of doubt, any claim for fluctuation or increase in prices is not within the purview of this agreement."*

(b) Clause 13.0 of the contract is very clear and unambiguous and there is no evidence of the parties' agreement in respect of the extra works performed by the Claimants.

(c) The Claimants ought to have obtained the written agreement of the Employer before proceeding to carry out the extra works.

(d) The claim for the sum of **₦83,916,000.00 (Eighty Three Million, Nine Hundred and Sixteen Thousand Naira)** for extra works is accordingly **refused.**

(v) The Claimants' claim of the sum of **₦6,240,117.11 (Six Million, Two Hundred and Forty Thousand, One Hundred and Seventeen Naira, Eleven Kobo)** being the total sum of interest charges at the rate of 5% on delayed payments for each of the IPCs i.e. IPC Nos. 1, 2, 3, 4, 5 up till May 2016, the particulars of which are at *pages 241-243ᴬ* of the Claimants' Bundle is **ALLOWED**, pursuant to the Tribunal's finding of fact that the Employer breached the contract by delayed payments of certified IPCs.

(a) For a party to be awarded pre-judgment interest, he must show the agreement of the parties in the contract, express or implied, some mercantile usage or statutory provision.



CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos.
3/7/19

A party who wishes to recover pre-judgment interest must plead facts and render evidence on it. See *NPA v. Ahmed (2017) 12 NWLR (part 1578) 72 @ pages 95-96, paras F-A.*

(b) Clause 60(3) of the Standard Conditions of Contract provides that the Employer shall pay the Contractor interest at the rate of 5% per annum upon all overdue payments from the date on which the same should have been made.

(c) Having found that the Employer unduly delayed payments on all the IPCs as calculated by the Claimants, the claim for interest of 5% per annum on delayed payments on all certified IPCs conforms with the agreement of the parties and the same is **ALLOWED.**

(vi) The Claimants' claim for interest charges on delayed payment on IPC No. 6 in the sum of **₦2,280,575.22 (Two Million, Two Hundred and Eighty Thousand, Five Hundred and Seventy Five Naira and Twenty Two Kobo)** *(Annexure 29)* the particulars of which are at *pages 248-249* is **REFUSED** on the basis of the refusal of the Claimants' claim in respect of IPC No. 6.

(vii) The Claimants' claim on equipment idle time or loss of use due to incessant delays in the sum of **₦245,980,000.00 (Two Hundred and Forty Five Million, Nine Hundred and Eighty Thousand Naira).** *(See Annexures 26 and 26ᴬ)* the particulars of which are at *pages 244 – 245* of the Claimants' Bundle is **ALLOWED**, for the following reasons:

(a) Work stopped on the site as a result of lack of funds due to the Employer's undue delay in the payment of approved and certified IPCs.

(b) The Claimants aver at ***paragraph 52*** of their Amended Points of Claim dated 1st March, 2018 that:

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration
3|7|19



> *"All through the period of the delays, all the equipment and staff could not be diverted to other use leading to heavy loss on idle time. We have itemized and calculated the equipment idle time. (See Annexure 26.)*

(c)  The Respondent avers at **paragraph 40** of its Amended Points of Defence dated 26th March, 2018 that:

> *"The Respondent is not in a position to deny or admit paragraphs 51-53 of the Points of Claim".*

(d)  It is trite that the above traverse in **paragraph 40** of the Respondent's Amended Points of Defence is deemed by law to be an admission of the allegation.

(e)  The Claimants further aver at *paragraph 56* of their Amended Points of Claim that the Defendant from their attitude towards the project made the Claimants to incur lots of losses on account of the project as follows:

> i.  Loss of return on equipment which was left idle. Please *(See Annexure 26) at pages 244-245.*

(f)  In denying the allegation of loss of equipment in *paragraph 56* of the Amended Points of Claim, the Respondent now joins issues with the Claimants when it averred at *paragraph 42* of its Amended Points of Defence that:

The Respondent denies in its entirety, *paragraph 56* of the Points of Claim and states as follows:

> 1.  *The Claimant was adequately paid as stipulated in the Bill of Quantities for equipment, and the Respondent cannot be held responsible for any loss on returns on equipment which was left idle, as the alleged idleness of the equipment was entirely a decision of the Claimants.*

103 | Page

CERTIFIED TRUE COPY
Regional Centre For
Commercial Arbitra..
3|7|19

(g) The Claimants list the equipment at *paragraph 40* of their Amended Reply to the Amended Points of Defence dated 3rd April, 2018, as follows that the construction equipment and building materials parked at the site include the following:

| | | | |
|---|---|---|---|
| 1) | 15 ton Avelling Roller | -------- | 1 no. |
| 2) | Reversing Drum Concrete Mixer | ---------- | 1 " |
| 3) | Mercedes Benz Tipper Lorry 1213 type | ---------- | 1 " |
| 4) | Caterpillar 966 pay loader | ---------- | 1 " |
| 5) | O & K Motor grader | ---------- | 1 " |
| 6) | 1.5 ton roller | ---------- | 1 " |
| 7) | Atlas copco compressor | --- ------- | 1 " |
| 8) | Tilting Drum Concrete Mixer | ---------- | 1 " |
| 9) | Caterpillar D8 bulldozer | ---------- | 1 " |
| 10) | 1 ton roller | ---------- | 1". |
| 11) | Pieces of metal formwork | ---------- | 200 nos. |
| 12) | 1.5 ton Volkswagen pickup truck | ---------- | 1 no. |
| 13) | BRC mesh | ---- ----- | 50 rolls. |
| 14) | 10 tons of Iron rod. | | |
| 15) | Granite chippings 30 tons. | | |

h. The Claimants aver at *paragraph 41* of the Reply to the Amended Points of Defence that with the above equipment and building materials packed at the site and awaiting payment from the Defendant, the Defendant cannot claim that the site was abandoned.

i. The Claimants further aver at *paragraph 52* of the Amended Reply to the Amended Points of Defence that:

CERTIFIED TRUE COPY
Region I Centre For Int'l
Commercial Arbitration-Lagos



3|7|19

> *"It is clear that the Claimants' equipment parked at the site were idle, and waiting for payment. Some were rented or hired for the job, with rental cost mounting on daily basis."*

j.   The Claimants have calculated a 502 days delay period when their equipment lay idle at the site due to non payment by the EFO from the date work stopped on 25th August, 2010 to 1st April, 2013, totaling the sum of **₦245,980,000.00 (Two Hundred and Forty Five Million, Nine Hundred and Eighty Thousand Naira)**. See *page 244* of the Claimants' Bundle annexed as (*Annexure 26)* in their Amended Points of Claim.

k.   Also annexed to the Amended Points of Claim at *page 245* of the Claimants' Bundle is a breakdown of the cost of hire or leasing of the equipment dated 4/2/14.

l.   The breakdown of the calculation of the equipment idle time and the price list of the cost of hiring the equipment are reproduced overleaf as submitted by the Claimants.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

3 \7 \15

ANNEX 2.0

UMUAKO-UBIRIELEM FLOOD/EROSION CONTROL MEASURES,
ORSU LGA, IMO STATE
CALCULATION OF EQUIPMENT IDLE TIME

1. Time when work stopped at the site due to non payment by EFO is 25th August 2010.

2. Time when tresspassers entered the site and removed/sold/vandalized equipment packed at the site is 1st April 2013.

3. Number of average working days allowing for rainy days and equipment breakdown in one month = 16 days

From 25th Aug 2010 to 24th Aug 2011 = 12 Months = 192 days.

From 25th Aug 2011 to 24th Aug 2012 = 12 Months = 192 days.

From 25th Aug 2012 to 1st April 2013 = 7 Months and 6 days =118 days. Total No. of days = 502.

| ITEM | TYPE OF EQUIPMENT | NO. OF EQUIPMENT | HIRE RATE OF EQUIPMENT. NAIRA/DAY | NO. OF DAYS | AMOUNT NAIRA |
|------|------|------|------|------|------|
| 1 | 966c Caterpillar wheel Loader | 1 | 75,000.00 | 502 | 37,650,000.00 |
| 2 | O&K 130 Motor Grader | 1 | 80,000.00 | 502 | 40,160,000.00 |
| 3 | Caterpillar D8 Bulldozer | 1 | 150,000.00 | 502 | 75,300,000.00 |
| 4 | 15 Ton Aveling Benford Roller | 1 | 65,000.00 | 502 | 32,630,000.00 |
| 5 | Benford Reversing Drum Concrete Mixer | 1 | 25,000.00 | 502 | 12,550,000.00 |
| 6 | Tilting Drum Concrete Mixer | 1 | 13,000.00 | 502 | 6,526,000.00 |
| 7 | Bomag 1 Ton Roller | 1 | 15,000.00 | 502 | 7,530,000.00 |
| 8 | Mecedes Benz Tipper 1213 type | 1 | 25,000.00 | 502 | 12,550,000.00 |
| 9 | Metal Formwork | 200 | 80.00 | 502 | 8,032,000.00 |
| 10 | Atlas Copco Air Compressor | 1 | 16,000.00 | 502 | 8,032,000.00 |
| 11 | 1.5 Ton Volks Wagon Pickup Truck | 1 | 10,000.00 | 502 | 5,020,000.00 |
| | TOTAL | | | | 245,980,000.00 |

6/2/2014     244.

3/7/19

Annexure L6A

# MACHIPE SIBIRS CONSTRUCTION COMPANY LTD.

General Kick-Starters, Alternators, Generators and all types of
Machines Bulldozer, Perioder Roller Road, Construction, Site Clearing,
Tarring of Road, Building, Civil Engineering & Equipment Leasing.

Office Address:
Km 4, Onitsha Owerri,
Express Road, Owerri, Imo State
Tel: 08033763434

Branch Office:
No 20 Onitsha Express
Road, Opposite Chukwudi
fuel Station, Nkpu.

Our Ref: _____  Your Ref: _____  Date: 4/2/2014

## PRICE OF LEASING OF EQUIPMENT AS REGULATED PER DAY OF EIGHT HOURS

| | | |
|---|---|---|
| (1) | 966c Caterpillar wheel loader | N75,000.00 |
| (2) | O & K 130 Motor Grader | N80,000.00 |
| (3) | Caterpillar D8 Bulldozer | N150,000.00 |
| (4) | 15 Ton Aveling Benford Roller | N65,000.00 |
| (5) | Benford Reversng Drum Concrete Mixer | N25,000.00 |
| (6) | Tilting Drum Concrete Mixer | N13,000.00 |
| (7) | Bomag 1 Ton Roller | N15,000.00 |
| (8) | Mecedes Benz Tipper 1213 type | N25,000.00 |
| (9) | Atlas COPCO Air Compressor | N16,000.00 |
| (10) | 1.5 Ton Volks Wagon Pickup Trucks LT 35 | N10,000.00 |

Okay Madu.

CERTIFIED TRUE COPY
Region & Centre for Int'l
Commercial Arbitration-Lagos
3/7/19

m.   The Respondent has not controverted any of the claims of the Claimants in Annexures 26 and 26A which state clearly the equipment and their cost of hire per day. The Respondent has not controverted the allegation of 502 idle days when the equipment lay fallow.

n.   On 18th March, 2013, the Presidential Committee on Monitoring of Ecological Projects in the South East visited the site and confirmed the presence of the equipment on the site together with their monetary value.

o.   Under cross-examination, RW 2, Audu Cornelius confirmed that as at 2014, the Claimants' equipment were still on the site lying idle, as follows:

| | |
|---|---|
| *Claimants' Counsel:* | *How many times did you visit the site?* |
| *RW 2:* | *I was there once.* |
| *Claimants' Counsel:* | *Which year was that?* |
| *RW 2:* | *May be 2014* |
| *Claimants' Counsel:* | *You were there once in 2014.* |
| *RW 2:* | *Yes, I am not the only one.* |
| *Claimants' Counsel:* | *Now you said 2014 you were there once, you would agree with me as at 2014 the Claimant was no longer there.* |
| ***RW 2:*** | ***But his equipment were there.*** |
| ***Claimants' Counsel:*** | ***His equipment were there?*** |
| ***RW 2:*** | ***They were on the Site.*** |



| | |
|---|---|
| *Claimants' Counsel:* | *Okay. As at 2014 his equipment were there.* |
| *RW 2:* | *And no work was going on.* |
| *Claimants' Counsel:* | *I said the equipment was there at the site.* |
| *RW 2:* | *Nobody is at work.* |
| *Arbitrator:* | *In 2014.* |
| *Claimants' Counsel:* | *In 2014, his equipment were there at the site. You would agree with me that as the Manager of the Project, all that has to do with this project, information ought to be at your fingertips.* |

p.  From the foregoing conversation, RW 2, Mr. Audu Cornelius who was the Project Manager and a staff of the EFO confirmed that as at 2014, when he visited the site, the Claimants' equipment were still lying idle at the site.

q.  It is important to understand that whether equipment is owned or rented, they cost money whenever they are idle. From the foregoing, the Claimants' claim of the sum of **₦245,980,000.00 (Two Hundred and Forty Five Million, Nine Hundred and Eighty Thousand Naira)** for equipment idle time is **ALLOWED**.

r.  It is important to mention that the equipment not being owned by the Contractor or by a company, in which the Contractor has controlling shares as indicated in *Annexure 26ᴬ* of the Claimants' bundle of documents, is not deemed to become the property of the Respondent pursuant to *Clause 53(2)* of the Standard Conditions of Contract.

(viii)   The Claimants' claim for loss of profit in the sum of **₦51,179,663.75 (Fifty One Million, One Hundred and Seventy Nine Thousand, Six Hundred and Sixty Three Naira, Seventy Five Kobo)** is **ALLOWED** for the following reasons:

(a)   The Claimants aver at *paragraphs 54 and 55* of their Amended Points of Claim that the profit margin for the contract was 25%, if there was no delay in payment, the Claimants would have made 25% profit from the job. The Claimants lost the profit of **₦51,179,663.75 (Fifty One Million, One Hundred and Seventy Nine Thousand, Six Hundred and Sixty Three Naira, Seventy Five Kobo)**. *(See Annexure 28) at page 246.*

(b)   The Respondent denies *paragraphs 54-55* of the Points of Claim and puts the Claimants to the strictest proof of same. The Respondent further states that it did not delay payments and that loss of "alleged profit" by the Claimants is not a fault of the Respondent.

(c)   The Respondent has not controverted the Claimants' particulars of loss of profit annexed as Annexure 28 at page 247 of the Claimants' Bundle of documents.

(d)   The parties have joined issues on the Claimants' claim of loss of profit. A common thread in the averments of the parties is the fact that the loss of profit is predicated upon the EFO's breach of contract.

(e)   The Tribunal having found as fact that the EFO unduly delayed payment thereby breaching the contract between the parties, the Claimants' claim for breach of contract is meritorious, and the same is **ALLOWED**.


CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3/7/19

(ix.) The Claimants' claim for interest charges on extra works done at 5% interest rate in the sum of ₦23,426,550.00 **(Twenty Three Million, Four Hundred and Twenty Six Thousand and Five Hundred and Fifty Naira)** is **REFUSED** for the following reasons:

    (a)    The Claimants' claim for extra work having been refused for lack of written agreement between the parties, there is no foundation upon which the claim for interest charges for extra work done can be sustained. Something cannot be placed upon nothing. The claim for interest charges on extra work is accordingly **REFUSED**.

(x.) The Claimants' claim of the sum of ₦50,000,000.00 **(Fifty Million Naira)** as General Damages for breach of contract is **REFUSED** for the following reasons:

    (a)    The Claimants' claim for the relief granted above are in the form of special damages.

    (b)    It is trite that as far as breach of contract is concerned, the award of special damages as well as general damages amounts to double compensation, which is not allowed by law. Accordingly, claims for both special and general damages are inappropriate in actions for breach of contract. See *Emirates Airline v. Aforka (2015) 9 NWLR (part 1463) 80 @ 107 paras D-E.*

(xi) **THE RESPONDENT'S CLAIM FOR THE SUM OF ₦50,000,000 (FIFTY MILLION NAIRA) AS GENERAL DAMAGES** for breach of contract in its closing submissions dated 6th June, 2018 is hereby **REFUSED**, the Tribunal having found that the Claimants did not breach the contract between the parties as alleged.



28.0 **SUMMARY OF THE TRIBUNAL'S FINDINGS OF FACTS ON THE ISSUES FOR DETERMINATION.**

For the reasons set out above, the Tribunal finds that:

1. The Respondent breached the contract by unduly delaying the payment of Interim Payment Certificates certified by the Consultant and the Executing Agency contrary to the provisions of the Agreement between the parties.

2. The Claimants are entitled to damages for breach of contract.

3. There were unnecessary delays in the payment of IPCs to warrant or entitle the Claimants to a Declaration of breach of contract.

4. The failure of the Claimants to insure the project in the joint names of the Employer and the Contractor does not constitute a breach of contract, because *Clause 25* of the Standard Conditions of Contract obliges the Respondent to insure the project when the Claimants fail to do so, and deduct the amount of the premium from monies due to the Claimants from time to time.

5. The Claimants did not abandon the site. The facts and circumstances of the case show that work stopped on site when the Claimants ran out of funds due to undue delay in the payment of certified IPCs.

6. The Claimants did not breach the contract by suspending work, while awaiting payment from the EFO to enable them return to site.

7. The Claimants did not breach the contract by failing to conclude the contract within the contractual period of 52 weeks, because the EFO having granted the Claimants extensions of time within which to complete the project, the Claimants cannot be liable for failure to complete the project as agreed by the parties in their contract. More so, as the failure of the Claimants to complete the project within the agreed time was due to the Defendant's undue delay in effecting payments for certified IPCs.



8.  IPC No. 6 did not follow due process; therefore all claims arising from IPC No. 6 are **REFUSED.**

9.  There was no written agreement between the parties for the execution of extra works, accordingly, every claim predicated upon extra works is **REFUSED**.

10. The Respondent is liable to pay for equipment idle time for causing the Claimants' equipment to lie fallow.

11. The Claimants are entitled to damages for loss of profit.

12. The Respondent is only liable for interest charges in respect of the period of delay in honouring certified IPCs.

29.0  **COSTS OF ARBITRATION.**

29.1  Article 41 of the Rules of Arbitration of the RCICAL provides that:

> *"The Arbitral Tribunal, in consultation with the Director of the Centre, shall fix the costs of Arbitration in its Award."*

29.2  Pursuant to *Article 41* of the Rules of the RCICAL, the fees were fixed as follows:

1.  The fees of the Arbitral Tribunal is fixed at the sum of **₦11,522,053.08 (Eleven Million, Five Hundred and Twenty Two Thousand, Fifty Three Naira, Eight Kobo).**

2.  The Administrative Fees of the RCICAL is fixed at **₦5,000,000.00 (Five Million Naira).**

3.  The Tribunal's Fee is to be paid in equal share of **₦5,761,026.9 (Five Million, Seven Hundred and Sixty One Thousand, Twenty Six Naira, Nine Kobo)** by the parties.

4.  The Administrative Fee of the Centre is to be paid in equal share by the parties.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos.

3/7/19

5.   Both parties have paid their share of the Tribunal's fees in the sum of **₦5,761,026.9 (Five Million, Seven Hundred and Sixty One Thousand, Twenty Six Naira, Nine Kobo)** each.

6.   Both parties have paid their share of the Administrative fees of the Centre, in the sum of **₦2,500,000.00 (Two Million, Five Hundred Thousand Naira)** each.

7.   The total sum paid by the parties as the Tribunal's fees and the Administrative Fees is the sum of **₦16,522,053.08 (Sixteen Million, Five Hundred and Twenty Two Thousand, Fifty Three Naira, Eight Kobo).**

## 30.0   <u>THE CLAIMANTS' COSTS SUBMISSIONS.</u>

30.1   The Claimants claim the cost of the Arbitration in their Amended Points of Claim dated 1st March, 2018.

30.2   The Claimants further make elaborate submissions on the principles guiding the Award of costs, in their closing submissions dated 2nd August, 2018. However, the Claimants have not provided the breakdown or the particulars of the costs claimed.

## 31.1   <u>THE RESPONDENT'S COSTS SUBMISSIONS.</u>

The Respondent filed its costs submissions dated 6th June, 2018 claiming the total sum of **₦13,611,026.00 (Thirteen Million, Six Hundred and Eleven Thousand, Twenty Six Naira, Zero Kobo)** broken down as follows:

a.   The Arbitrator's fees and the Administrative Fees of the RCICAL – **₦8,261,026.0k (Eight Million, Two Hundred and Sixty One Thousand, Twenty Six Naira, Zero Kobo).**

b.   The Respondent's legal fees – **₦3,000,000.00k (Three Million Naira).**

c.   Travel, Accommodation and Logistics cost for legal team and witnesses – **₦2,250,000.00 (Two Million, Two Hundred and Fifty Thousand Naira).**

CERTIFIED TRUE COPY
Region 1 Centre For Int'l
Commercial Arbitration

3|7|19

d.   Consequential cost awarded in favour of the Respondent in the course of the Arbitration – ₦100,000.00k (One Hundred Thousand Naira).

## 32.0   INTEREST.

32.1   Article 60(3) of the Standard Conditions of Contract provides that the Employer shall pay to the Contractor interest at the rate of 5% per annum upon all overdue payment from the date on which the same should have been paid.

32.2   The Claimants have claimed interest at the rate of 5% per annum on all delayed payments in this Arbitration proceeding.

32.3   The parties having agreed to pay interest at the rate of 5% per annum for all overdue payments to the Contractor, as stated in the Standard Conditions of Contract, the Contractor's claim for interest at the rate of 5% in appropriate cases is ALLOWED.

32.4   The Claimants claim of 10% Post Judgment Interest on the total sum awarded to the Claimants till the same is finally liquidated.

## 33.0   AWARD OF COSTS.

33.1   The Claimants have won seven (7) out of their twelve (12) heads of relief claimed, and all the issues formulated for determination by the Tribunal by both the Claimants and the Respondent, while the Respondent lost its sole claim for relief in  the sum of ₦50,000,000.00 (Fifty Million Naira) as General Damages for breach of contract.

33.2   The Tribunal has considered all the circumstances of this case to determine the most appropriate allocation of costs in this Arbitration including the principle that costs follow the event.

33.3   The Tribunal has been mindful of the complexity of the legal and factual issues which the Tribunal was called to determine, the reasonableness of the positions taken by both parties in relation to the legal issues at stake.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos

33.4   The Tribunal notes that the Claimants had prevailed on the Respondent's earlier jurisdictional objection and the Claimants have also prevailed on seven (7) out of the twelve (12) claims put forward by the Claimants and on all the issues raised on the merits by the parties.

33.5   In the circumstances, the Tribunal finds that the Rule according to which the losing party should bear the entire costs of the Arbitration should apply in this case. Therefore, the Respondent shall bear the costs of the Arbitration in this case.

33.6   The Respondent ought, also, to bear the Claimants' costs in this Arbitration. However, the Claimants have not provided the particulars or a breakdown of their costs in the Claimants' Final Submission on Costs as directed by the Tribunal.

Now, therefore, I, DOROTHY UDEME UFOT, SAN, FCIArb (U.K.) CHARTERED ARBITRATOR, herein the Sole Arbitrator, having **carefully, diligently** and **honestly** considered the pleadings, the documents, the oral evidence of the witnesses, the Agreement of the parties, the Standard Conditions of Contract, and the submissions of Counsel for the parties in this reference, **DO HEREBY AWARD AND DIRECT AS FOLLOWS THAT:**

1.   The Respondent shall pay to the Claimants within 21 days from the date of this AWARD, the sum of **₦18,341,744.65 (Eighteen Million, Three Hundred and Forty One Thousand, Seven Hundred and Forty Four Naira, Sixty Five Kobo)** being the balance of payment for Interim Payment Certificate (IPC) No. 5 with interest at the rate of 5% per annum from 30th May, 2016 till the date of this FINAL AWARD and thereafter at the same rate of 5% per annum until the whole sum is fully liquidated.

CERTIFIED TRUE COPY
Regional Centre For Int'l
Commercial Arbitration-Lagos
3/7/19

2.  The Respondent shall pay to the Claimants within 21 days from the date of this AWARD, the sum of ₦6,240,117.00 ( **Six Million, Two Hundred and Forty Thousand, One Hundred and Seventeen Naira)** being interest charges on delayed payments for IPCs 2, 3, 4 and 5 with interest at the rate of 5% per annum, from 30th May, 2016 till the date of this AWARD and thereafter at the same rate of 5% per annum until the entire sum is fully liquidated.

3.  The Respondent shall pay to the Claimants within 21 days from the date of this AWARD the sum of ₦245,980,000.00 **(Two Hundred and Forty Five Million, Nine Hundred and Eighty Thousand Naira)** being the cost of equipment idle time, with interest at the rate of 5% per annum from 2nd April, 2013 till the date of this AWARD and thereafter at the same rate of 5% per annum until the entire sum is fully liquidated.

4. .  The Respondent shall pay to the Claimants within 21 days from the date of this AWARD the sum of ₦51,279,663.75 **(Fifty One Million, Two Hundred and Seventy Nine Thousand, Six Hundred and Sixty Three Naira, Seventy Five Kobo)** being the amount of loss of profit occasioned by the Respondent's breach of contract with interest at the rate of 5% per annum from 25th October, 2010 (when work finally stopped at the site) till the date of this AWARD, and thereafter at the same rate of 5% per annum till the entire sum is fully liquidated.



CERTIFIED TRUE COPY
Region I Centre
Commercial ...

3/7/19

5.  The Respondent shall pay to the Claimants within 21 days from the date of this AWARD the sum of ₦8,261,026.54 **(Eight Million, Two Hundred and Sixty One Thousand, Twenty Six Naira, Fifty Four Kobo)** being 50% of the Costs of Arbitration paid by the Claimants less the sum of **₦100,000.00 (One Hundred Thousand Naira)** being costs awarded against the Claimants in the course of the Arbitration, and thereafter at the same rate of 5% interest per annum, until the **entire** sum is fully liquidated.

**PLACE OF ARBITRATION:**   LAGOS, NIGERIA

**Signed in Lagos by:**

......................................................................................................

**MRS. DOROTHY UDEME UFOT, SAN, FCIArb (U.K) Chartered Arbitrator.**
**SOLE ARBITRATOR.**

**DATED THIS 7th DAY OF JUNE, 2019.**

CERTIFIED TRUE COPY
Region 1 Centre For Int'l
Commercial Arbitration-Lagos
3|7|19