UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER A. CHIEJINA, and
PICCOL NIGERIA LTD.,

    *Petitioners*,

v.

FEDERAL REPUBLIC OF NIGERIA,

    *Respondent*.

Civil Action No. 1:21-cv-02241-RJL

**STATEMENT OF POINTS AND AUTHORITIES BY RESPONDENT
FEDERAL REPUBLIC OF NIGERIA IN SUPPORT OF ITS MOTION TO DISMISS**

Tara M. Lee (DC Bar No. 17902)
Scott Lerner (DC Bar No. 1024964)
Benedict S. Bernstein (admitted *pro hac vice*)
**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: +1 202 626 3600
Facsimile: +1 202 639 9355

February 9, 2022

*Counsel for Respondent
Federal Republic of Nigeria*

# **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................................1

BACKGROUND .............................................................................................................................3

    A.    The Parties Enter Into An Agreement For The Construction
          Of Erosion Control Measures In Nigeria ................................................................3

    B.    PICCOL And Nigeria Have A Dispute And
          Petitioners Demand Arbitration ..............................................................................5

ARGUMENT ...................................................................................................................................6

I.    THIS COURT SHOULD DISMISS THE PETITION BECAUSE IT LACKS
     PERSONAL JURISDICTION OVER NIGERIA ................................................................6

II.   THIS COURT SHOULD DISMISS THE PETITION FOR
     LACK OF SUBJECT-MATTER JURISDICTION ..............................................................9

    A.    The "Arbitration Exception" to Sovereign Immunity
          Does Not Apply to Mr. Chiejina's Claims ............................................................10

    B.    Nigeria Did Not Implicitly Waive its Immunity To Suit .......................................11

CONCLUSION ..............................................................................................................................13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*\*Argentine Republic v. Amerada Hess. Shipping Corp.*,
   488 U.S. 428 (1989)..................................................................................................6, 9, 11–12

*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*,
   734 F.3d 1175 (D.C. Cir. 2013).................................................................................................9

*\*Chevron Corp. v. Republic of Ecuador*,
   795 F.3d 200 (D.C. Cir. 2015)................................................................................................10

*Creighton Ltd. v. Gov't of Qatar*, 181 F.3d 118 (D.C. Cir. 1999)...........................................11, 12

*Democratic Republic of Congo v. FG Hemisphere Assocs., LLC*,
   508 F.3d 1062 (D.C. Cir. 2007).................................................................................................7

*\*Diag Human S.E. v. Czech Republic-Ministry of Health*,
   64 F. Supp. 3d 22 (D.D.C. 2014).............................................................................................13

*Diag Human S.E. v. Czech Republic-Ministry of Health*,
   824 F.3d 131 (D.C. Cir. 2016).................................................................................................13

*Doe I v. State of Israel*,
   400 F. Supp. 2d 86 (D.D.C. 2005)............................................................................................7

*First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*,
   703 F.3d 742 (5th Cir. 2012) ..................................................................................................10

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
   905 F.2d 438 (D.C. Cir. 1990).........................................................................................11, 12

*\*G.E. Transp. S.p.A. v. Republic of Albania*,
   693 F. Supp. 2d 132 (D.D.C. 2010).......................................................................................7, 8

*GSS Grp. LTD. v. Republic of Liberia*,
   31 F. Supp. 3d 50 (D.D.C. 2014)..............................................................................................9

*I.T. Consultants, Inc. v. Islamic Republic of Pakistan*,
   2000 U.S. Dist. LEXIS 22548 (D.D.C. Sept. 28, 2000) .......................................................7, 9

*Mani Kumari Sabbithi v. Major Waleed KH N.S. Al Saleh*,
   623 F. Supp. 2d 93 (D.D.C. 2009).....................................................................................7, 8–9

*\*Marlowe v. Argentine Naval Com.*,
   604 F. Supp. 703 (D.D.C. 1985)................................................................................................8

**Nikbin v. Islamic Republic of Iran*,
    471 F. Supp. 2d 53 (D.D.C. 2007) .................................................................................. 6

*Princz v. Federal Republic of Germany*,
    26 F.3d 1166 (D.C. Cir. 1994) ...................................................................................... 11

*Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*,
    506 F. Supp. 3d 1 (D.D.C. 2020) .................................................................................. 12

**Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*,
    962 F.3d 576 (D.C. Cir. 2020) ........................................................................................ 9

**Republic of Sudan v. Harrison*,
    139 S. Ct. 1048 (2019) ................................................................................................... 6

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v.
    Navimpex Centrala Navala*,
    989 F.2d 572 (2d Cir. 1993) ......................................................................................... 12

*Shapiro v. Republic of Bolivia*,
    930 F.2d 1013 (2d Cir. 1991) ....................................................................................... 11

*Space Sys./Loral, Inc. v. Yuzhnoye Design Office*,
    164 F. Supp. 2d 397 (S.D.N.Y. 2001) ............................................................................ 8

*Stati v. Republic of Kazakhstan*,
    199 F. Supp. 3d 179 (D.D.C. 2016) .............................................................................. 10

*Tatneft v. Ukraine*,
    771 F. App'x 9 (D.C. Cir. May 28, 2019) .................................................................... 12

*Toledano v. O'Connor*,
    501 F. Supp. 2d 127 (D.D.C. 2007) .............................................................................. 11

**Transaero, Inc. v. La Fuerza Aerea Boliviana*,
    30 F.3d 148 (D.C. Cir. 1994) ......................................................................................... 7

### Statutes And Regulations

28 U.S.C. § 1330(b) ............................................................................................................ 6

28 U.S.C. §§ 1604–1607 .................................................................................................... 9

28 U.S.C. § 1605(a)(1) ................................................................................................ 11, 12

28 U.S.C. § 1605(a)(6) ...................................................................................................... 10

28 U.S.C. § 1608(a) .................................................................................................... 6, 7, 9

28 U.S.C. § 1608(a)(1)..................................................................................................7, 8

28 U.S.C. § 1608(a)(3).....................................................................................................7

## Rules

Fed. R. Civ. P. 12(b)(1).................................................................................................3, 9

Fed. R. Civ. P. 12(b)(2).............................................................................................3, 9, 10

Fed. R. Civ. P. 12(b)(5).................................................................................................3, 9

## Other Authorities

Obidimma C. Ezezika & Olorunfemi Adetona, *Resolving the Gully Erosion Problem in Southeastern Nigeria: Innovation Through Public Awareness and Community-Based Approaches*, 2(10) J. Soil Sc. & Env. Mgmt. 286 (2011).........................................................3

Arbitration and Conciliation Act Cap. 19
   Laws of the Federation of Nigeria 1990 ..........................................................4, 8, 13

\* Indicates authorities on which counsel chiefly relies.

## **PRELIMINARY STATEMENT**

Through this action, Petitioners seek to re-write the terms of an arbitration award and the underlying commercial contract by having this Court convert that award—issued in Nigerian naira—into U.S. dollars using cherry-picked and inapplicable exchange rates going back to 2005. Petitioners' request, which has no support in the law, would result in a massive multi-million-dollar windfall to Petitioners based only on fluctuations in the price of naira relative to the U.S dollar. The U.S. District Courts, however, are not a foreign exchange market, and the Court should not countenance Petitioners' attempt to use the U.S. court system in this way. Indeed, this is particularly true where, as here, the underlying dispute between the parties has *no* connection to the United States or the U.S. court system, and where, as here, personal and subject matter jurisdiction are lacking.

Specifically, in 2005, Petitioner PICCOL Nigeria Ltd. ("**PICCOL**")—a Nigerian engineering company—entered into a contract with the Federal Republic of Nigeria ("**Nigeria**") to construct a gully erosion control system in Nigeria (the "**Agreement**"). The Agreement was executed in Nigeria; it was performed in Nigeria; and it was governed by Nigerian law. The Agreement further required Nigeria to pay PICCOL a fixed sum denominated in Nigeria naira. The parties also agreed to resolve any disputes through arbitration seated in Nigeria and administered under Nigerian arbitration rules. And when a dispute between the parties arose in 2014, PICCOL demanded arbitration and specifically sought damages in naira. Ultimately, on June 7, 2019, the arbitration tribunal awarded PICCOL 330,102,551.94 naira (the "**Award**").

Now, more than two years later, PICCOL, together with its Managing Director Petitioner Peter Chiejina ("**Mr. Chiejina**"), initiated this present action to have this Court convert the Award into U.S. dollars using favorable exchange rates from nearly 12 years ago. Not only is Petitioners'

1

request unsupported by the law, it would, as discussed, result in a massive windfall to Petitioners due to currency fluctuations that have occurred since 2005. Moreover, Petitioners' request is entirely inconsistent with the express terms of the Agreement, which expressly requires payment in naira. In short, by agreeing to transact its business with Nigeria in naira, PICCOL freely accepted the risk of changes in the value of that currency and could have included provisions in the Agreement to hedge against that risk. It did not; and it is not the Court's responsibility to now re-write the terms of the Agreement and the Award in a way that would unjustly enrich Petitioners.

But before the Court can even entertain the substance of Petitioners' request to have the Award confirmed and converted to U.S. dollars, this Court must first resolve threshold jurisdictional issues implicated by the Petition. Because Nigeria is a foreign sovereign, Petitioners are required to establish personal and subject matter jurisdiction under the Foreign Sovereign Immunities Act ("**FSIA**"). Petitioners have not and cannot establish either. In particular, Petitioners failed to strictly comply with the FSIA's service of process provision. As a result, this Court lacks personal jurisdiction over Nigeria. Additionally, this Court lacks subject matter jurisdiction over claims raised by Mr. Chiejina. As a foreign sovereign, Nigeria is presumptively immune from suit unless one of the FSIA's enumerated exceptions applies. No such exception applies as to Mr. Chiejina.

At most, Petitioners purport to invoke the FSIA's "arbitration exception," which abrogates immunity in an action to confirm an award made pursuant to an agreement to arbitrate. But Nigeria never agreed to arbitrate disputes with Mr. Chiejina. Petitioners concede as much in their Petition, recognizing that the arbitration agreement was "between Nigeria and PICCOL." Pet. ¶ 5. Nor has Nigeria implicitly waived its sovereign immunity by being a signatory to the New York Convention. In every case Petitioners cite where courts found an implicit waiver, the contracting

2

state also agreed to arbitration in a different contracting state.  Not so here.  The Agreement required the parties to arbitrate in Nigeria.  Accordingly, Nigeria respectfully requests that this Court dismiss the Petition under Rules 12(b)(1), 12(b)(2), and 12(b)(5) of the Federal Rules of Civil Procedure.

## BACKGROUND

### A. The Parties Enter Into An Agreement For The Construction Of Erosion Control Measures In Nigeria

For decades, Nigeria has battled a gully erosion crisis.  The "formation of gullies is one of the greatest environmental disasters in Southeastern Nigeria."  Obidimma C. Ezezika & Olorunfemi Adetona, *Resolving the Gully Erosion Problem in Southeastern Nigeria: Innovation Through Public Awareness and Community-Based Approaches*, 2(10) J. Soil Sci. & Env't. Mgmt. 286 (2011).  If left unchecked, gullies grow larger and deeper with each rainfall and can turn into ravines hundreds of feet deep.  Not only are gullies making certain areas of Nigeria hazardous for human habitation, but gullies also destroy farmlands causing agricultural and economic crises.  *Id.*

To combat gully erosion, Nigeria's National Committee on Ecological Problems designed engineering plans for gully erosion control structures throughout Nigeria.  Petitioner PICCOL, a Nigerian Limited Liability Company, submitted a price proposal for the construction of certain engineering plans in Nigeria's Imo State.  Finding PICCOL's price suitable, Nigeria and PICCOL entered into the Agreement, dated April 20, 2005.  Mr. Chiejina, Managing Director of PICCOL, signed on behalf of PICCOL in a representative capacity, and Col. Musa Mohammed (Rtd), Honourable Minister of Inter-Governmental Affairs, Special Duties & Youth Dev./Chairman, National Committee on Ecological Problems, signed on behalf of Nigeria.  Agreement at 3, 18–19.

The Agreement contemplated PICCOL would construct certain gully erosion control

structures over the course of 52 weeks for a fixed sum of ₦255,898,518.75.  Agreement §§ 1.1, 11, ECF No. 3-1; Award ¶ 1.9, ECF No. 3-2.  Nigeria advanced a sum of ₦63,974,629.69 before PICCOL began work.  Agreement § 2(iii).  Nigeria also hired an independent consultant to monitor PICCOL's progress.  Future payments by Nigeria to PICCOL were contingent on certifications by the consultant indicating the progress made by PICCOL.  *See* Agreement § 2; Award ¶ 1.10.  Nigeria was required to pay PICCOL with "minimal delay."  Award ¶ 1.8.

Besides payment provisions, the Agreement contained two other provisions relevant to the Petition.  *First*, the Agreement includes a "NOTICES" provision requiring "[a]ny notice, authorisation, information, instruction and correspondence" by PICCOL be addressed to the "Ecology Fund Office," which is now part of the Office of the Secretary to the Federation.  Agreement § 27; Award ¶¶ 15.7, 15.8.

*Second*, the Agreement included an "ARBITRATION" provision that required "[a]ny dispute, controversy or claim arising out of or relating to [the Agreement] or the breach, termination or invalidity thereof" be submitted to arbitration "at the Regional Centre for International Commercial Arbitration, Lagos."  Agreement § 18.  The arbitration provision required arbitration be conducted in accordance with "the applicable Arbitration Rules in the schedule to the Arbitration and Conciliation Act Cap. 19 Laws of the Federation of Nigeria 1990" (the "**Arbitration Rules**").  *Id.*  But before arbitration is available for dispute resolution, PICCOL and Nigeria must first refer the dispute to the Director of Federal Public Works in The Ministry of Works and Housing (the "Engineer").  *See* Standard Conditions of Contract ("**Standard Conditions**"), Agreement at 20, 65–66.  Only if PICCOL or Nigeria "are dissatisfied" with the Engineer's decision or if the Engineer fails to timely provide a decision, may PICCOL or Nigeria submit their dispute to arbitration.  Standard Conditions ¶ 66.

### B.      PICCOL And Nigeria Have A Dispute And Petitioners Demand Arbitration

During the course of PICCOL's performance, the parties disagreed as to whether the pace Nigeria paid PICCOL for interim payments, which ranged anywhere from two to six months, was without "minimal delay." *See* Award ¶¶ 1.8, 1.12. Approximately seven years later, on March 26, 2014, Petitioners served Nigeria with a Notice of Arbitration, alleging Nigeria breached the Agreement for failing to timely make payments. *Id.* ¶ 12.1.

Before demanding arbitration, PICCOL did not refer the matter to the Engineer. *See generally* Award. PICCOL also failed initially to submit the arbitration demand to the Regional Centre for International Commercial Arbitration, Lagos ("**RCICAL**"). Award ¶¶ 12.2, 12.3. Instead, Petitioners initiated arbitration proceedings before the Abuja Multi Door Court House on July 1, 2014. *Id.* Because this arbitration facility did not have jurisdiction over the dispute pursuant to Section 18 of the Agreement, that proceeding was dismissed. *Id.* ¶ 12.3. Approximately two years later, on August 3, 2016, Petitioners filed an arbitration demand with RCICAL, without providing Nigeria with a new Notice of Arbitration. *See id.* ¶¶ 12.1, 12.4–12.5, 15.3. Notably, in both proceedings, Mr. Chiejina joined PICCOL as a claimant, even though he was not a party to the Agreement or the arbitration provision therein. *See generally* Award.

The arbitration proceedings under RCICAL progressed for approximately two years before the tribunal issued an award on behalf of Petitioners on June 7, 2019. Like the payments contemplated in the Agreement between PICCOL and Nigeria, the Award awarded Petitioners damages in naira—specifically, ₦330,102,551.94. *See* Award at 116–18.

Two years after the Award was issued, and in the midst of settlement negotiations, Petitioners suddenly filed this instant action to have the Award confirmed by this Court and converted to U.S. dollars using conversion rates dating as far back as March 2010—nearly a decade

5

before the Award was issued.  *See generally* Petition; Mem., ECF No. 2.

## ARGUMENT

**I.   THIS COURT SHOULD DISMISS THE PETITION BECAUSE IT LACKS PERSONAL JURISDICTION OVER NIGERIA**

This Court lacks personal jurisdiction over Nigeria because Petitioners did not comply with the FSIA's provisions governing service of process.  The FSIA provides the "sole basis for obtaining jurisdiction over a foreign state in our courts."  *Argentine Republic v. Amerada Hess. Shipping Corp.*, 488 U.S. 428, 434 (1989).  And under the FSIA, "proper service is a prerequisite to the assertion of personal jurisdiction over" a foreign state.  *Nikbin v. Islamic Republic of Iran*, 471 F. Supp. 2d 53, 69 (D.D.C. 2007); *see also* 28 U.S.C. § 1330(b) ("Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) ***where service has been made under section 1608 of this title***.") (emphasis added).

Section 1608(a) of the FSIA sets forth the exclusive procedures for service of process on foreign states, including the order in which they must be attempted.  Importantly, the various methods of service are not listed arbitrarily so that a plaintiff can pick from them at will; they are hierarchical.  *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1054 (2019).  In other words, "[a] plaintiff does not have the privilege to choose from among the four methods.  The plain language of [section] 1608(a) makes clear that the FSIA lists the methods in descending order of preference; a plaintiff may only attempt service through the second method, for example, if service through the first method is unavailable or has proven unsuccessful."  *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 101 (D.D.C. 2005); *see also Democratic Republic of Congo v. FG Hemisphere Assocs., LLC*, 508 F.3d 1062, 1063 (D.C. Cir. 2007) ("28 U.S.C. § 1608(a) provides for service . . . upon a foreign state by four alternative means, each . . . available only if the previously enumerated

6

options are in some way foreclosed"). Moreover, a plaintiff is required to "strict[ly] adhere[] to the terms of 1608(a)," *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994), and failure to do so mandates dismissal. *See Mani Kumari Sabbithi v. Major Waleed KH N.S. Al Saleh*, 623 F. Supp. 2d 93, 98 (D.D.C. 2009); *see also I.T. Consultants, Inc. v. Islamic Republic of Pakistan*, 2000 U.S. Dist. LEXIS 22548, at *6–7, 12 (D.D.C. Sept. 28, 2000).

Here, Petitioners failed to adhere strictly to the terms of section 1608(a) of the FSIA. In particular, Petitioners attempted to serve Nigeria's Minister of Foreign Affairs pursuant to the third method of service, which permits service upon "the head of the ministry of foreign affairs of the foreign state concerned." 28 U.S.C. § 1608(a)(3); *see* Folkman Decl. ¶ 2, ECF No. 9 (claiming to have effected service of process on Nigeria by having the Clerk's Office mail the required process to Nigeria's Minister of Foreign Affairs). This method of service, however, was improper because Petitioners could have and should have served Nigeria pursuant to section 1608(a)'s first method of service, which allows service "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state[.]" 28 U.S.C. § 1608(a)(1).

"[A] special arrangement for service for purposes of § 1608(a)(1)" exists when there is "a contract provision specifying the method of providing notice" to the parties. *G.E. Transp. S.p.A. v. Republic of Albania*, 693 F. Supp. 2d 132, 137 (D.D.C. 2010). Here, there are several provisions in the Agreement between PICCOL and Nigeria that required PICCOL to notify Nigeria's Ecological Fund Office of any disputes between the parties. First, Section 27 of the Agreement, entitled "NOTICES," requires "any notice, authorisation, information, instruction and correspondence" by PICCOL be submitted via "registered post" to:

7

>The Presidency, Ecological Fund Office,
>Hon. Minister for Intergovernmental Affairs,
>   Special Duties & Youth Development
>New Federal Secretariat Complex,
>Phase II Bulet Building, Abuja

Agreement § 27. Such a notice provision establishes a special arrangement for purposes of section 1608(a)(1). *See G.E. Transp.*, 693 F. Supp. 2d at 136–37 (finding a special arrangement for service where the contract between the parties included a notice provision); *Marlowe v. Argentine Naval Com.*, 604 F. Supp. 703, 704, 707–08 (D.D.C. 1985) (same); *Space Sys./Loral, Inc. v. Yuzhnoye Design Office*, 164 F. Supp. 2d 397, 402–03 (S.D.N.Y. 2001) (same).

Section 18 of the Agreement, entitled "ARBITRATION," reinforces the "special arrangement" created by Section 27. Specifically, Section 18 provides that any dispute "shall be settled by arbitration . . . under the applicable Arbitration Rules in the schedule of the Arbitration and Conciliation Act Cap. 19 Laws of the Federation of Nigeria 1990." Agreement § 18. The Arbitration Rules, in turn, contain specific notice procedures that require notices be "physically delivered to the addressee or . . . place of business." Arbitration Rules, art. 2. Read in unison with Section 27 of the Agreement (the "NOTICES" provision), the "addressee" is the Ecological Fund Office and the "place of business" is the Office of the Secretary to the Federation, which Petitioners readily admit they "have dealt with . . . in relation to this contract." Agreement § 27; Arbitration Rules, art. 2; Award ¶ 15.8.

It is undisputed that Petitioners never served or otherwise notified the Ecological Fund Office of this action. As a result, Petitioners have failed to adhere to the "special arrangement" establishing how PICCOL would notify Nigeria of a dispute. Service was, therefore, defective for failure to adhere to the hierarchical structure of section 1608(a) and the Petition must be dismissed under Fed. R. Civ. P. 12(b)(2) and 12(b)(5). *See, e.g.*, *Mani Kumari Sabbithi*, 623 F. Supp. 2d at

98; *I.T. Consultants, Inc.*, 2000 U.S. Dist. LEXIS 22548, at *12.

## II. THIS COURT SHOULD DISMISS THE PETITION FOR LACK OF SUBJECT-MATTER JURISDICTION

Even if Petitioners had effected proper service of process pursuant to Section 1608(a)—which they did not—the Petition nonetheless must be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction. Again, the FSIA provides the "sole basis for obtaining jurisdiction over a foreign state." *Amerada Hess*, 488 U.S. at 434; *see GSS Grp. LTD. v. Republic of Liberia*, 31 F. Supp. 3d 50 (D.D.C. 2014) (granting motion to dismiss petition to confirm arbitral award pursuant to the New York Convention for lack of subject-matter jurisdiction because no exception to FSIA immunity applied). Nigeria is thus entitled to immunity from suit unless one of the FSIA's enumerated exceptions applies. 28 U.S.C. §§ 1604–1607.

The "FSIA begins with a presumption of immunity, which the plaintiff bears the initial burden to overcome by producing evidence that an exception applies." *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013). Thus, when a foreign state, such as Nigeria, challenges a U.S. court's jurisdiction or relies on an immunity defense under the FSIA, a court must first bring "resolution [to] an immunity assertion before the sovereign can be compelled to defend the merits." *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 585 (D.C. Cir. 2020).

Petitioners argue that this Court has subject-matter jurisdiction because the "Arbitration Exception" to foreign sovereign immunity applies and because Nigeria "implicitly waive[d]" its immunity by being a contracting state to the New York Convention. *See* Mem. at 13–14. As discussed below, these arguments fail.

9

A. **The "Arbitration Exception" to Sovereign Immunity Does Not Apply to Mr. Chiejina's Claims**

Because Mr. Chiejina is not a party to the arbitration agreement with Nigeria, he cannot invoke the arbitration exception to the FSIA.

The FSIA's "arbitration exception" to sovereign immunity, 28 U.S.C. § 1605(a)(6), abrogates immunity in an action "to confirm an award made pursuant to . . . an agreement to arbitrate." If litigants are "not, however, . . . part[ies] to the arbitration agreement," then "the arbitration exception . . . d[oes] not apply." *First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 756 (5th Cir. 2012) (finding no subject-matter jurisdiction under the FSIA where China "could not be bound to the [arbitration] agreement" at issue). Section 1605(a)(6) specifically "requires" the court to make a factual "finding" on whether "a foreign state has agreed to arbitrate." *Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015). "If there is no arbitration agreement . . . the District Court lacks jurisdiction over the foreign state and the action must be dismissed." *Id.*; *see also Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179, 190 (D.D.C. 2016) ("As the D.C. Circuit explained in *Chevron*, [§ 1605(a)(6)] requires that a district court must make . . . findings to satisfy itself that it has jurisdiction under the arbitration exception . . . [including that the] foreign state has agreed to arbitrate . . . ."). The question whether any agreement to arbitrate exists between the parties is a question the Court must assess for itself *de novo*, without any deference owed to the findings of the arbitrators. *See Chevron*, 795 F.3d at 204 (stating that for § 1605(a)(6) to apply, the FSIA "requires the District Court" to find the existence of an agreement to arbitrate).

Here, Mr. Chiejina was not a party to any arbitration agreement with Nigeria. To be sure, the Agreement is expressly between PICCOL and Nigeria. *See* Agreement at 1,3. Petitioners concede as much, explaining that their Petition was brought "pursuant to an **agreement between**

10

*Nigeria and PICCOL* to submit to arbitration . . . ." Pet. ¶ 5 (emphasis added).  That Mr. Chiejina signed the Agreement as an agent of PICCOL (*i.e.*, as the company's "represent[ative]") does not make him party to the Agreement.  Agreement at 19; *see Toledano v. O'Connor*, 501 F. Supp. 2d 127, 152 (D.D.C. 2007) ("It is black-letter law that when an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, the agent is not a party to the contract unless the agent and third party agree otherwise." (cleaned up)).  Accordingly, because Mr. Chiejina was not a party to any arbitration agreement with Nigeria, he cannot invoke the arbitration exception to the FSIA.

> B.  <u>Nigeria Did Not Implicitly Waive its Immunity To Suit</u>

Petitioners also argue that Nigeria implicitly "waive[d]" its immunity by being a contracting state to the New York Convention.  *See* Mem. at 14.  Petitioners are incorrect.  There is "virtually unanimous" consensus among U.S. courts that the FSIA's "implied waiver provision" under 28 U.S.C. § 1605(a)(1) must be construed "narrowly."  *Creighton Ltd. v. Gov't of Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999) (citing *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir. 1991)); *see also Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990) (observing that "cases involving arbitration clauses illustrate that provisions allegedly waiving sovereign immunity are narrowly construed").  The plaintiff must show that the foreign state "intended to waive its sovereign immunity" or otherwise "indicated its amenability to suit." *Creighton*, 181 F.3d at 122); *Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1174 (D.C. Cir. 1994).  Thus, the mere fact that a foreign state signs a treaty that is silent on the issue of immunity does not cause a foreign state to waive its immunity.  *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428,  442–43 (1989) (explaining the Court did not "see how a foreign state can waive its immunity under § 1605(a)(1) by signing an international

11

agreement that contains no mention of a waiver of immunity to suit in the United States courts or even the availability of a cause of action in the United States").

Because the New York Convention is silent as to whether its contracting states waive their sovereign immunity, it cannot supply the requisite "strong evidence," for which courts in this Circuit look. *Creighton*, 181 F.3d at 122; *see generally* New York Convention. Thus, in each of the cases Petitioner cites, when courts have found contracting states to the New York Convention to have implicitly waived sovereign immunity, it has only been when the contracting states agreed to arbitration *in another state* that is also a contracting state. *See Tatneft v. Ukraine*, 771 F. App'x 9 (D.C. Cir. May 28, 2019) (contracting-state Ukraine waived sovereign immunity to U.S. courts for recognition proceedings by agreeing to arbitration in France, another contracting state); *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 506 F. Supp. 3d 1 (D.D.C. 2020) (contracting-state Nigeria waived sovereign immunity to U.S. courts for recognition proceedings by agreeing to arbitrate in England, another contracting state); *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572 (2d Cir. 1993) (contracting-state Romania waived sovereign immunity to U.S. courts for recognition proceedings by agreeing to arbitration in France, another contracting state). This should come as no surprise, for D.C. Circuit precedent provides that implicate waiver, more generally, occurs when "a foreign state has *agreed to arbitration in another country*." *Foremost-McKesson*, 905 F.2d at 444. This instant action is markedly different.

Here, Nigeria consented to arbitration *within its own territory* pursuant to its own laws. *See* Agreement § 18 (specifying the seat of arbitration as Lagos, Nigeria and Nigeria's Arbitration and Conciliation Act as the controlling arbitration rules). Under these facts and this Circuit's precedent, Nigeria could not have waived sovereign immunity to U.S. courts for any confirmation

proceeding arising from any subsequent award.  *See Diag Human S.E. v. Czech Republic-Ministry of Health*, 64 F. Supp. 3d 22, 30–33 (D.D.C. 2014) (holding the waiver exception to the FSIA does not apply to a contracting state of the New York Convention when the state does not consent to arbitration in another country), *rev'd on other grounds*, 824 F.3d 131 (D.C. Cir. 2016).

Accordingly, because Nigeria did not consent to arbitration outside of its own territory, it has not implicitly waived its sovereign immunity by being a contracting state to the New York Convention.  And even if Nigeria had waived sovereign immunity by agreeing to the New York Convention, any such waiver would not extend to claims brought by Mr. Chiejina, who is not a party to the underlying arbitration agreement.

## CONCLUSION

For the foregoing reasons, Nigeria respectfully requests that this Court dismiss the Petition.

Dated: February 9, 2022
       Washington, DC

Respectfully submitted,

**WHITE & CASE**

/s/ *Tara M. Lee*
Tara M. Lee (DC Bar No. 17902)
Scott Lerner (DC Bar No. 1024964)
Benedict S. Bernstein (admitted *pro hac vice*)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone:     + 1 202 626 3600
Facsimile:       + 1 202 639 9355
tara.lee@whitecase.com
scott.lerner@whitecase.com
benedict.bernstein@whitecase.com

*Counsel for Respondent*
*Federal Republic of Nigeria*