UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER A. CHIEJINA and
PICCOL NIGERIA LTD.,

Petitioners,

vs.

FEDERAL REPUBLIC OF NIGERIA,

Respondent

No. 1:21-cv-02241-RJL

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
RESPONDENT'S MOTION TO DISMISS**

Theodore J. Folkman
FOLKMAN LLC
53 State St., Suite 500
Boston, MA 02109
(617) 219-9664
ted@folkman.law

*Attorney for the Petitioners*

TABLE OF CONTENTS

Table of Authorities ............................................................................................................. ii

Preliminary Statement ........................................................................................................ 1

Background .......................................................................................................................... 2

Argument ............................................................................................................................. 4

   A.   Service of Process Was Proper. ........................................................................... 4

   B.   If Service Was Improper, The Court Should Quash The Service, Not Dismiss
       The Case. ............................................................................................................ 9

   C.   The Court Has Subject-Matter Jurisdiction. ...................................................... 10

      1.   The Arbitration Exception To Sovereign Immunity Applies. ...................... 10

      2.   Nigeria Has Implicitly Waived Its Sovereign Immunity. ............................ 16

Conclusion ........................................................................................................................... 20

TABLE OF AUTHORITIES

CASES

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n,* 528 F.3d 934 (D.C. Cir. 2008)....................9

*Angellino v. Al-Saud,* 681 F.3d 463 (D.C. Cir. 2012) ....................................................7

*Balkan Energy Ltd. v. Republic of Ghana,* 302 F. Supp. 2d 144 (D.D.C. 2018) .........................12

*Barot v. Embassy of Zam.,* 785 F.3d 26 (D.C. Cir. 2015) ......................................................4, 7, 9

\* *BCB Holdings Ltd. v. Gov't of Belize,* 110 F. Supp. 3d 233 (D.D.C. 2015),
    *aff'd,* 650 Fed. App'x 17 (D.C. Cir. 2016)..................................................................13

\* *Berkowitz v. Republic of Costa Rica,* 288 F. Supp. 3d 166 (D.D.C. 2018).........................4, 6, 7

\* *Chevron Corp. v. Republic of Ecuador,* 795 F.3d 200 (D.C. Cir. 2015).......................10, 12, 15

*Comm'ns Imp. Exp. S.A. v. Republic of the Congo,* 2015 U.S. Dist. LEXIS 192785
    (D.D.C. Jul. 6, 2015) ..................................................................................7

\* *Creighton Ltd. v. Government of Qatar,* 181 F.3d 118 (D.C. Cir. 1999).......................16, 17, 20

\* *De Csepel v. Republic of Hungary,* 859 F.3d 1094 (D.C. Cir. 2017).........................................15

*Diag Human, S.E. v. Czech Republic Ministry of Health,* 2014 U.S. Dist. LEXIS 186826
    (D.D.C. Dec. 24, 2014)..................................................................................19

*Diag Human, S.E. v. Czech Republic Ministry of Health,* 64 F. Supp. 3d 22
    (D.D.C. 2014), *rev'd on other grounds,* 824 F.3d 131 (D.C. Cir. 2016) .....................18, 19, 20

*Diag Human, S.E. v. Czech Republic Ministry of Health,* 824 F.3d 131 (D.C. Cir. 2016)...........19

\* *Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria,* 225 F. Supp. 3d 18
    (D.D.C. 2014)..................................................................................6, 7

*First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.,* 703 F.3d 742 (5th Cir. 2012)....................14

*Foremost-McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438 (D.C. Cir. 1990) .........19, 20

*G.E. Transp. S.p.A. v. Republic of Albania,* 693 F. Supp. 2d 132 (D.D.C. 2010).........................8

*Grupo Unidos Por El Canal, S.A. v. Autoridad del Canal de Panama,* 2018 U.S. Dist.
    LEXIS 102695 (S.D. Fla. Jun. 18, 2018) ..................................................................8

\* *Hardy Expl. & Prod. (India), Inc. v. Gov't of India,* 219 F. Supp. 3d 50
    (D.D.C. 2016)..................................................................................6, 8, 9, 10

*Int'l Rd. Fed.v. Embassy of the Dem. Rep. Congo,* 131 F. Supp. 2d 248 (D.D.C. 2001)...............7

* *LLC SPC Stileks v. Republic of Moldova,* 985 F.3d 871 (D.C. Cir. 2021)...........................13, 15

*Marlowe v. Argentine Naval Comm'n,* 604 F. Supp. 703 (D.D.C. 1985) ...................................7, 8

*Massachusetts v. EPA,* 549 U.S. 497 (2007) .................................................................................16

*Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826 (1989) ....................................................16

* *Orange Middle East & Afr. v. Republic of Equatorial Guinea,* 2016 U.S. Dist.
    LEXIS 65147 (D.D.C. May 18, 2016) ..............................................................................6, 8, 9

*Permanent Mission of India to the UN v. City of New York,* 551 U.S. 193 (2007)......................14

* *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria,* 506 F. Supp. 3d 1
    (D.D.C. 2020) ...........................................................................................................................17

*Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574 (1999) ..............................................................16

* *Seetransport Wiking Trader Schiffarhtsgesellschaft mbH & Co. v. Navimplex
    Centrala Navala,* 989 F.2d 572 (2d Cir. 1993) ..................................................................16, 17

*Space Sys./Loral, Inc. v. Yuzhnoye Design Office,* 164 F. Supp. 2d 397 (S.D.N.Y. 2001).........7, 8

*Stati v. Republic of Kazakhstan,* 199 F. Supp. 3d 179 (D.D.C. 2016) ..........................................14

* *Tatneft v. Ukraine,* 771 Fed. App'x 9 (D.C. Cir. 2019), *cert. denied,* 140 S. Ct. 901
    (2020) ................................................................................................................................17, 20

*Termorio S.A. E.S.P. v. Electranta S.P.,* 487 F.3d 928 (D.C. Cir. 2007) .....................................12

*Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.,* 978 F. Supp. 266
    (S.D. Tex. 1997) .........................................................................................................................6

*Underwood v. United Republic of Tanania,* 1995 U.S. Dist. LEXIS 1333
    (D.D.C. Jan. 27, 1995).................................................................................................................7

## STATUTES

9 U.S.C. § 207 .................................................................................................................................9

* 28 U.S.C. § 1605(a)(1) .................................................................................................................16

28 U.S.C. § 1605(a)(3) ...................................................................................................................15

* 28 U.S.C. § 1605(a)(6) ................................................................................................10, 12, 14, 18

* 28 U.S.C. § 1608(a)(1) .............................................................................................................1, 4, 7

28 U.S.C. § 1608(a)(2) ........................................................................................................4

28 U.S.C. § 1608(a)(3) ....................................................................................................4, 7

Arbitration and Conciliation Act (1990) Cap. 19, § 12(1) (Nigeria)................................12

Arbitration and Conciliation Act (1990) Cap. 19, § 29(1)(a) (Nigeria) ...........................3

Arbitration and Conciliation Act (2004) Cap. 18 (Nigeria) .............................................3

## TREATIES

United Nations Convention on the Recognition and Enforcement of Foreign Arbitral
        Awards, Jun. 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 .........................................11

United Nations Convention on the Recognition and Enforcement of Foreign Arbitral
        Awards, Jun. 10, 1958, art. I(1), 21 U.S.T. 2517, 330 U.N.T.S. 38....................11, 18

United Nations Convention on the Recognition and Enforcement of Foreign Arbitral
        Awards, Jun. 10, 1958, art. III, 21 U.S.T. 2517, 330 U.N.T.S. 38............................12

United Nations Convention on the Recognition and Enforcement of Foreign Arbitral
        Awards, Jun. 10, 1958, art. V, 21 U.S.T. 2517, 330 U.N.T.S. 38.............................12

## RULES

Arbitration Rules art. 1 .....................................................................................................6

Arbitration Rules art. 2 .....................................................................................................5

Arbitration Rules art. 21(1) .............................................................................................12

Arbitration Rules art. 21(3) .............................................................................................12

G.A. Res. 31/98, art. 21(1) (Dec. 15, 1976) ...................................................................12

G.A. Res. 31/98, art. 21(3) (Dec. 15, 1976) ...................................................................12

PRELIMINARY STATEMENT

Nigeria, after breaching its contract with PICCOL Nigeria Ltd., lost an arbitration brought against it by PICCOL and its principal, Peter Chiejina, a Nigerian citizen who now resides in the United States. The arbitration took place in Nigeria, and the Nigerian arbitrator awarded damages that were to be paid within 21 days. Nigeria has paid nothing in the years since, and it now seeks to avoid enforcement of its undisputed obligation to the petitioners by arguing that this Court lacks jurisdiction to hear their case. Its arguments lack merit.

Service of process in this case was valid. Nigeria argues that an agreement between the parties that notices under their contract or notices pursuant to the rules governing their arbitration constitutes a special arrangement for service of process under 28 U.S.C. § 1608(a)(1). Its argument is surprising and meritless. This Court's precedents clearly hold that only an all-encompassing notice agreement, not limited to notices under the contract or the arbitration, constitutes a special arrangement for service. It is especially surprising that Nigeria selectively quotes from the relevant contract language and arbitral rules in its memorandum, omitting just those words that are central to the distinction this Court draws between all-encompassing notice agreements and agreements that govern only notices given under the contract, not service of process.

Nigeria's subject-matter jurisdiction arguments fare no better. It argues that the Court lacks subject-matter jurisdiction because Mr. Chiejina, one of the two petitioners, was not a signatory, in his individual capacity, to the contract that contained the agreement to arbitrate. The argument applies at most to only one of the two petitioners: Nigeria makes no argument that PICCOL's claim is not within the arbitration exception to foreign sovereign immunity from suit. Nigeria's argument as to Mr. Chiejina fails on the merits because it mistakes merits questions

about whether Nigeria has a defense to confirmation of the award under the New. York Convention with a question about jurisdiction.

Nigeria also argues that it has not implicitly waived its sovereign immunity, but that argument is squarely foreclosed by the cases, which hold that states that sign the New York Convention thereby implicitly waive their immunity from award confirmation actions in other Convention states. Nigeria's argument that this case should be distinguished because the arbitration's seat was in Nigeria rather than in another Convention state has no basis in the Convention.

Nigeria hopes to delay even further performance of its undisputed obligation to pay damages to a small business and its owner for injuries they suffered due to Nigeria's breach of contract, which Nigeria failed to pay when an arbitrator sitting in Nigeria ordered it to pay, and which it has failed to pay in the years since. The Court should deny the motion to dismiss and proceed summarily to enter a judgment in favor of the petitioners.

<u>BACKGROUND</u>

PICCOL and Nigeria were parties to a contract under which PICCOL was to build gully erosion control structures in Imo State. As the arbitrator found, Nigeria breached its contract with PICCOL by delaying payments due and by wrongfully reducing the amount of an interim payment certificate that had already been certified for payment. (Award ¶¶ 28.0(1), 27.3(ii)).[1] PICCOL and its principal, Mr. Chiejina, demanded arbitration per ¶ 18, of the contract, which provides:

> Any dispute, controversy or claim arising out of or relating to this contract or the breach, termination or invalidity thereof, shall be settled by arbitration at the Regional Centre for International Commercial Arbitration, Lagos, under the applicable Arbitration Rules in

---

[1] The award is attached as Exhibit 2 to the Folkman Declaration (ECF 3).

the schedule to the Arbitration and Conciliation Act Cap. 19 Laws of the Federation of
Nigeria 1990.

(Contract at 13-14).[2] Although the Arbitration and Conciliation Act and the arbitral rules gave

the arbitrator the power to rule on objections to her jurisdiction, and although the rules required

Nigeria to make any such objections no later than in its statement of defense, Nigeria never

objected to Mr. Chiejina's presence in the case, the arbitrability of his claim under the contract,

or the arbitrator's jurisdiction to award damages to Mr. Chiejina.

The arbitrator issued her award on June 7, 2019. The award ordered payment to "the

Claimants" (i.e., to PICCOL and Mr. Chiejina) within twenty-one days. (Award at 116-118).

Under the Arbitration and Conciliation Act, Nigeria had three months from the date of the award

to make an application to set aside the award. *See* Arbitration and Conciliation Act (1990) Cap.

19, § 29(1)(a).[3] It never did. Nigeria expresses surprise or disappointment that "[t]wo years after

the Award was issued, and in the midst of settlement negotiations, Petitioners suddenly filed this

instant action to have the Award confirmed …" (Mem. at 5). There was, though, nothing to settle

or negotiate except what part of its undisputed legal obligation to the petitioners Nigeria was

willing to perform. The answer to that question is evidently "none": Nigeria has paid the

petitioners nothing in the nearly three years since the award.

PICCOL and Mr. Chiejina commenced this action in August 2021. Because, as explained

in detail below, they had no special arrangement with Nigeria for service of process, and because

---

[2] The contract is attached as Exhibit 1 to the Folkman Declaration (ECF No. 3).
[3] A copy of the Act, including the schedule containing the Arbitration Rules, is attached to this memorandum as
Exhibit 1. The contract specifies that the arbitration is governed by the Act as enacted in 1990. Nigeria reenacted the
arbitration statute in 2004. *See* Arbitration and Conciliation Act (2004) Cap. 18 (Nigeria). The 2004 enactment is
identical to the 1990 enactment in the two respects relevant to this memorandum, namely, the three-month limitation
period for applying to set aside an award and the provision on the arbitrator's power to rule on questions of
arbitrability. The Arbitration Rules attached to the Act are also identical in the respects relevant to this
memorandum, namely, the limitation on the scope of the rules in Article 1 and the limiting words in the scope of the
rule on notice in Article 2.

Nigeria is not a party to any international convention on service of judicial documents, they

served process under 28 U.S.C. § 1608(a)(3) by arranging for the Clerk to address and dispatch

the necessary papers to the Nigerian Ministry of Foreign Affairs. The Minister received the

papers on September 28, 2021. (Folkman Decl. ¶ 4 & Ex. 1, ECF 9).

ARGUMENT

A.    <u>Service of Process Was Proper.</u>

Nigeria claims that the parties' contract and the rules governing the arbitration constitute

a "special arrangement for service between the plaintiff and the foreign state," 28 U.S.C. §

1608(a)(1). The FSIA "provides four methods of service in descending order of preference,"

*Barot v. Embassy of Zam.,* 785 F.3d 26, 27 (D.C. Cir. 2015), and so if Nigeria is right, then

PICCOL and Mr. Chiejina should have attempted service using the special arrangement rather

than service by mail addressed and dispatched by the Clerk to the Minister of Foreign Affairs of

Nigeria, 28 U.S.C. § 1608(a)(3).[4]

But Nigeria is wrong, and indeed, obviously wrong under this Court's precedents. When

a party (usually the plaintiff, not the foreign state) claims that a notice provision applicable to the

parties is a special arrangement for service, the Court asks whether the provision's language

governs all notices whatsoever, or whether it merely governs notices given under the contract.

An "all-encompassing" notice provision may be a special arrangement for service; a notice

provision that merely provides a method for serving notices under the contract, or the rules, or

the treaty in which the provision appears is not. *See Berkowitz v. Republic of Costa Rica,* 288 F.

Supp. 3d 166, 173 (D.D.C. 2018) ("Courts have interpreted the 'special arrangement' language

of Section 1608 narrowly, such that a special arrangement exists only where the language is all

---

[4] Nigeria is not a party to any applicable convention on the service of judicial documents, and so there was no possibility of serving Nigeria under 28 U.S.C. § 1608(a)(2).

encompassing rather than confined to the contract or agreement at issue") (citation and internal quotation marks omitted).

Nigeria quotes the language of the contract's notice provision, but its quote is incomplete and misleading; remarkably, Nigeria leaves out the key words:

| *Nigeria's Memorandum* | *The Contract* |
|---|---|
| "Section 27 of the Agreement, entitled 'NOTICES,' requires 'any notice, authorization, information, instruction, and correspondence' by PICCOL be submitted via 'registered post' to [a specified address]." | "any notice, authorization, information, instruction and correspondence **required or authorized by this Agreement** to be given by either party to the other shall be sent by registered post to the other party at" a specified address. |
| (Mem. at 7-8). | (Contract ¶ 27) (emphasis supplied). |

Nigeria also omitted the key language when it quoted Article 2 of the Arbitration Rules that governed the arbitration:

| *Nigeria's Memorandum* | *Article 2 of the Arbitration Rules* |
|---|---|
| "The Arbitration Rules, in turn, contain specific notice procedures that require notices be 'physically delivered to the addressee or … place of business.' Arbitration Rules, art. 2" | **"For the purpose of these Rules,** any notice, including a notification, communication or proposal, is deemed to have been received if it is physically delivered to the addressee or if it is delivered at his habitual residence, place of business or mailing address, or if none of these can be found after making reasonable inquiry, then at the addressee's last known residence or place of business." |
| (Mem. at 8). | (Arbitration Rules art. 2) (emphasis supplied). |

Nor does Nigeria mention Article 1 of the Arbitration Rules, which specifies that the Rules "**shall govern any arbitration proceedings.**" (Arbitration Rules art. 1) (emphasis supplied). Nothing in the Rules suggests that they apply to post-arbitration enforcement proceedings. *Contrast Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.,* 978 F. Supp. 266, 298-99 (S.D. Tex. 1997) (arbitral rules contained a special arrangement for service where they expressly governed "any papers, notices, or process necessary or proper … for the entry of judgment on any award made under these rules").

 This Court has consistently held that provisions limited in scope to notices under the contract, or under the relevant treaty, do not constitute special arrangements for service. *See Berkowitz,* 288 F. Supp. 3d at 173 (treaty provision providing for service of notice of "[n]otices and other documents in disputes under [Chapter 10] Section B" of the treaty not a special arrangement for service); *Hardy Expl. & Prod. (India), Inc. v. Gov't of India,* 219 F. Supp. 3d 50, 57-58 (D.D.C. 2016) (contract providing "All notices, statements, and other communications to be given, submitted or made **hereunder** by any Party to another" must be made in particular manner; same result) (emphasis supplied); *Orange Middle East & Afr. v. Republic of Equatorial Guinea,* 2016 U.S. Dist. LEXIS 65147, at *8 (D.D.C. May 18, 2016) (contract governed "notices, agreements, waiver declarations, and other communications made *under this agreement;"* same result) (emphasis in original).

 Indeed, in *Enron Nigeria Power Holding, Ltd. v. Federal Republic of Nigeria,* 225 F. Supp. 3d 18 (D.D.C. 2014), where the shoe was on the other foot and Nigeria was a defendant, the Court applied this rule in favor of Nigeria, holding that a contractual notice provision that "govern[ed] the exchange of '[a]ll notices or other communications required or permitted to be

given **hereunder,**" *Id.* at 20 (emphasis supplied), was not a special arrangement for service. The Court did not dismiss the action as Nigeria asked, but it quashed the service.

The distinction the Court draws between limited notice provisions and all-encompassing notice provisions is consistent with the courts' insistence that the FSIA's service provisions demand strict compliance. *See Barot,* 785 F.3d at 27. In almost every § 1608(a)(1) case, it is the plaintiff seeking to use a contractually agreed method of notice and the foreign state insisting that the contract is not a special arrangement for service.[5] Thus the Court's rule that § 1608(a)(1) should be read "narrowly," *Berkowitz,* 288 F. Supp. 3d at 173, almost always means that the Court is being protective of foreign sovereign defendants and ensuring that they are only haled into court via a specially agreed method of service when it is quite clear that the parties had actually agreed to use that method for service of process. The price of this protective rule is that in the rare case where a foreign state wants to argue that service was improper because the plaintiff failed to use a special arrangement for service between the parties, the foreign state cannot succeed unless it is equally clear that the parties had actually agreed to use that method for service of process. An agreement that notices permitted or required under the contract is insufficient to make that showing.

Nigeria relies on *Marlowe v. Argentine Naval Commission,* 604 F. Supp. 703 (D.D.C. 1985), and *Space Systems/Loral, Inc. v. Yuzhnoye Design Office,* 164 F. Supp. 2d 397 (S.D.N.Y. 2001), both of which are entirely consistent with this Court's precedents. In *Marlowe,* the

---

[5] In addition to the cases cited above and the cases Nigeria relies on, *see Angellino v. Al-Saud,* 681 F.3d 463, 465-66 (D.C. Cir. 2012); *Int'l Rd. Fed.v. Embassy of the Dem. Rep. Congo,* 131 F. Supp. 2d 248, 251 (D.D.C. 2001); *Underwood v. United Republic of Tanania,* 1995 U.S. Dist. LEXIS 1333, at *6 (D.D.C. Jan. 27, 1995). The only example known to the petitioners in which a foreign state argued a supposed special arrangement for service is *Commissions Import Export S.A. v. Republic of the Congo,* 2015 U.S. Dist. LEXIS 192785 (D.D.C. Jul. 6, 2015), in which the plaintiff had made service under 28 U.S.C. § 1608(a)(3) and the Congo, seeking to set aside a default judgment, argued that the service was insufficient because the parties had a special arrangement for service that the plaintiff had failed to use. The argument was weak, and the Court easily rejected it. *Id.* at *4-5.

contract provided that "[a]ll notices, requests, demands, or other communications to or upon the respective parties hereto" would be made in a particular way. The clause thus applied to all notices directed to the parties to the contract without specifying that it applied only to notices given under the contract. It applied to notices to "the parties hereto," not notices "hereunder." *See Orange, supra* at \*9 (distinguishing *Marlowe* on this ground). Similarly in *Space Systems,* the notice clause provided that "[a]ll notices and communications between the parties shall be in writing and shall be effective, if delivered" using a certain procedure. *Space Sys.,* 164 F. Supp. 2d at 402. That is, it governed all notices between the parties, not just notices given under the contract. *See Grupo Unidos Por El Canal, S.A. v. Autoridad del Canal de Panama,* 2018 U.S. Dist. LEXIS 102695, at \*9 (S.D. Fla. Jun. 18, 2018) (distinguishing *Space Systems* on the grounds that its provision "was broad enough to be all-encompassing").

Nigeria also relies on *G.E. Transport S.p.A. v. Republic of Albania,* 693 F. Supp. 2d 132 (D.D.C. 2010). There, the Court recited the contract language as follows:

> In the contract at issue here, the parties set forth a special arrangement for service on Albania, which provided that '[a]ny notice to be given to [Albania] … shall be in writing, and shall be sent by personal delivery, air post, special courier, cable, telegraph, telex or facsimile transmission to or left at [Albania's] address.

*Id.* at 136-37. If the language were as the judge quoted it, then *G.E.* would be entirely consistent with the other cases cited, because nothing in the quoted language limits the scope of the clause to notices given under the contract. But as two judges of this Court later recognized, the judge in *G.E.* left out the key words in his analysis: in fact, the contract applied to notices given to Albania "under these Conditions," i.e., under the contract. *See Hardy,* 219 F. Supp. 3d at 64; *Orange, supra* at \*4. The decision in *G.E.* was correct given the contract language as the Court quoted it, but it cannot be read to apply to cases involving language such as the language the Court ignored in the decision. As Judge Collyer later put it:

8

> Since the Judge did not include the limiting words in his opinion, they were clearly not important to his analysis. To the extent that the Judge would have found a special arrangement even with the omitted words, this Judge disagrees.

*Orange, supra* at *4; *accord Hardy,* 219 F. Supp. 3d at 64.

In short, the cases show that a special arrangement for service requires something more than an agreement that notices under the parties' contract must be served by a particular method. The agreement here is limited in scope to notices "required or authorized by" the contract. Likewise, the Arbitration Rules apply only to the Arbitration, not to notices outside the arbitration. Neither is an "all-encompassing" provision on notice, and therefore neither is a special arrangement for service.

B.      If Service Was Improper, The Court Should Quash The Service, Not Dismiss The Case.

Because only one method of service at a time is ever proper under the FSIA, a plaintiff in an FSIA case always runs the risk that he has chosen the wrong method. Here, considering the cases cited above, that risk was small. The petitioners arranged for service promptly after commencing the action in August 2021. They have acted reasonably on service.

The three-year statute of limitations, *see* 9 U.S.C. § 207, will run in early June 2022. The petitioners hope to have a decision on this motion by then, but Nigeria will have a right to take an interlocutory appeal on the service issue if it wishes. *See Agudas Chasidei Chabad of U.S. v. Russian Fed'n,* 528 F.3d 934, 939 (D.C. Cir. 2008). In the circumstances, the petitioners should not have to bear the risk that their reasonable approach to service might bar their claim.

In *Barot,* 785 F.3d at 29, the DC Circuit held that it was error to dismiss rather than to quash service "when there exists a reasonable prospect that service can be obtained." In *Hardy,* the Court applied the same rule. It noted that the holding of *Barot* did not turn on the district court's role in creating the confusion that led to the plaintiff's mistake about service: it was

9

enough that, as is plainly the case here, the plaintiff had made a "good faith effort at timely compliance." *Hardy,* 219 F. Supp. 3d at 57.

C.   The Court Has Subject-Matter Jurisdiction.

1.   The Arbitration Exception To Sovereign Immunity Applies.

The arbitration exception to the ordinary rule of sovereign immunity from suit provides for jurisdiction in an action against a foreign state that is brought:

> either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable.

28 U.S.C. § 1605(a)(6).

To show that the arbitration exception applies, the petitioners must satisfy a burden of production by producing the agreement to arbitrate and the award based on the agreement, and the treaty that does or may govern the award. *See Chevron Corp. v. Republic of Ecuador,* 795 F.3d 200, 204-05 (D.C. Cir. 2015). But the burden of persuasion remains with Nigeria. *Id.* Here, the facts are undisputed:

- *The arbitration agreement.* There is no dispute about the existence of the agreement to arbitrate, contained in ¶ 18 of the contract. The arbitration agreement meets the requirements of the statute. It is (1) "made by the foreign state;" (2) "with or for the benefit of a private party," namely, PICCOL; (3) "to submit to arbitration all or any difference which … may arise between the parties." It is important to note that the statute does not, on its face, limit the

Court's jurisdiction to cases where the petitioner, let alone all petitioners, are parties to the agreement to arbitrate.

- *The award.* There is no dispute about the existence of the award. It is evident from the text of the award, which quotes the agreement to arbitrate (Award ¶ 3.1). The award is one made "pursuant to such an agreement to arbitrate," as the statute requires.

- *The treaty.* There is no dispute that Nigeria is a party to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Jun. 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("the New York Convention," or "the Convention"). The statute only requires that the award "may be" governed by the Convention, but in fact there is no doubt that the award here is governed by the Convention. The Convention applies to the recognition and enforcement of awards "made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal." Convention art. I(1). Here, the award was made in Nigeria, and the petitioners seek recognition and enforcement in the United States.

Nigeria's only basis for trying to rebut the petitioners' jurisdictional showing is Mr. Chiejina's status as a petitioner. Nigeria does not argue that the Court would lack jurisdiction under the arbitration exception if PICCOL were the only petitioner. Its argument is that Mr. Chiejina's presence in the case destroys jurisdiction that is otherwise proper.

The argument fails for two reasons. First, Nigeria is wrong to say that the Court lacks jurisdiction, because the point it raises is a merits point about arbitrability and about whether

Nigeria can make out a defense to confirmation under Article V of the Convention, not a point about the applicability of the arbitration exception in § 1605(a)(6).[6] But second, if *arguendo* Nigeria is right to say that the Court lacks jurisdiction over Mr. Chiejina's claim, its argument would at most require dismissal of Mr. Chiejina from the case, not dismissal of the action as a whole.

a.  The Arbitrability of Mr. Chiejina's Claim Against Nigeria Is A Merits Question, Not A Jurisdictional Question.

Although the New York Convention generally obliges American courts to confirm foreign arbitral awards such as the award in this case, *see* United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ["Convention"], Jun. 10, 1958, art. III, 21 U.S.T. 2517, 330 U.N.T.S. 38, the Convention allows courts to refuse to confirm an award on a handful of grounds. *See* Convention art. V. The grounds listed in Article V of the Convention are the only grounds on which a court can refuse confirmation. *See Termorio S.A. E.S.P. v. Electranta S.P.,* 487 F.3d 928, 935 (D.C. Cir. 2007). But a court does not lack jurisdiction to hear a case that otherwise falls under the arbitration exception to foreign sovereign immunity just because there are grounds under the Convention to refuse to confirm the award. In *BCB Holdings*

---

[6] When the Court reaches the merits, Nigeria's argument about Mr. Chiejina's role in the case will fail. Nigerian law recognizes the power of the arbitrator to rule on her jurisdiction. *See* Arbitration and Conciliation Act Cap. 19, §12(1). Here, the parties delegated that power to the arbitrator by adopting the arbitral rules attached as a schedule to the Nigerian Arbitration and Conciliation Act. Article 21(1), the rule giving the arbitrator power to rule on arbitrability, is identical to Article 21(1) of the 1976 UNCITRAL Arbitration Rules, *see* G.A. Res. 31/98, art. 21(1) (Dec. 15, 1976), and adoption of the UNCITRAL Rules "provides clear and unmistakable evidence that the parties intended for the arbitrator to decide questions of arbitrability." *See Chevron,* 795 F.3d at 207-08; *Balkan Energy Ltd. v. Republic of Ghana,* 302 F. Supp. 2d 144, 158 (D.D.C. 2018). The same must be true when the parties adopt a rule identical to the UNCITRAL rule. The arbitrator never expressly held that Mr. Chiejina's claims were arbitrable, but that is because Nigeria never raised any objection to arbitrability or to his presence in the case. Mr. Chiejina's participation as a claimant in the arbitration, even though under Article 21(3) of the arbitral rules, which is identical to Article 21(3) of the UNCITRAL Rules, "[a] plea that the arbitral tribunal does not have jurisdiction shall be raised not later than in the statement of defence." Arbitration and Conciliation Act, Sched. 1, art. 21(3); G.A. Res. 31/98, art. 21(3). As the award shows (Award ¶¶ 15.1-15.16), Nigeria did raise a timely arbitrability argument, but the argument went to the sufficiency of service of the notice of arbitration and sufficiency of the notice of arbitration. Thus Nigeria will have no basis to object to confirmation of the award on the basis of Mr. Chiejina's role in the case.

*Ltd. v. Government of Belize,* 110 F. Supp. 3d 233, 243-44 (D.D.C. 2015), *aff'd,* 650 Fed. App'x 17 (D.C. Cir. 2016), for example, the Court held that it had jurisdiction in an action to confirm an award against Belize even when Belize asserted that the contract containing the agreement to arbitrate was void ab initio and that the claim was therefore not arbitrable, holding that the issue of arbitrability should be decided on the merits under Article V of the Convention, not as a jurisdictional question. As the Court observed:

> [T]he proposition that this Court must conduct a de novo review of the arbitrability of the dispute to find subject-matter jurisdiction runs counter to the clear teaching of this Circuit on the purpose and role of the FSIA. The FSIA is a jurisdictional statute that speak[s] to the power of the court rather than to the rights and obligations of the parties. Inquiring into the merits of whether this dispute was rightly submitted to arbitration is beyond the scope of the FSIA's jurisdictional framework.

*Id.* at 244 (citations and internal quotation marks omitted).

This case is similar in the relevant respects to *LLC SPC Stileks v. Republic of Moldova,* 985 F.3d 871 (D.C. Cir. 2021). There, the undisputed jurisdictional facts included the agreement to arbitrate (in that case, an investment treaty and notice to arbitrate rather than a contract), the award, and the New York Convention. Moldova argued that the petitioner was not an investor entitled to demand arbitration of a claim, just as Nigeria claims that Mr. Chiejina is not a party to the arbitration agreement entitled to demand arbitration of a claim against it under the contract. The court rejected Moldova's argument that it lacked jurisdiction. It held that Moldova might have a defense to confirmation under the Convention, but that "the arbitrability of a dispute is not a jurisdictional question under the FSIA." *Id.* at 878. If anything, the result in *Stileks* should apply here *a fortiori,* because in *Stileks* there was only one petitioner, and if the court lacked jurisdiction of its claim, it lacked jurisdiction of the only claim asserted. Here, no one questions that PICCOL's claim falls under the arbitration exception to foreign sovereign immunity.

None of the cases Nigeria cites are close to this case on the facts. In *First Investment Corp. v. Fujian Mawei Shipbuilding, Ltd.,* 703 F.3d 742 (5th Cir. 2012), First Investment arbitrated a claim against two Chinese shipbuilding companies, one a state-owned company, pursuant to a contract containing an agreement to arbitrate. It sought confirmation of the award against the two parties and against the Chinese state on an alter ego theory, as China was the sole shareholder of the state-owned shipbuilder. The court held that it lacked jurisdiction because China was not a party to the arbitration agreement. But in this case, there is no question that Nigeria was a party to the agreement to arbitrate and that the award, which indisputably is against Nigeria itself, was made pursuant to the agreement to arbitrate. *Stati v. Republic of Kazakhstan,* 199 F. Supp. 3d 179 (D.D.C. 2016), is similarly unhelpful to Nigeria. There, Kazakhstan argued that it had not agreed to arbitrate the petitioners' claims, arguing that under the treaty that contained the arbitration provision, a three-month settlement period must precede a demand for arbitration. The court rejected Kazakhstan's argument in the section of its opinion devoted to subject-matter jurisdiction under the FAA. *See id.* at 184-87. Looking to the FAA for jurisdiction was a clear mistake, since the FAA plays no jurisdictional role in a petition against a foreign state to confirm an arbitral award: the FSIA is "the sole basis for obtaining jurisdiction over a foreign state in federal court," *Permanent Mission of India to the UN v. City of New York,* 551 U.S. 193, 197 (2007) (citation and internal quotation marks omitted). In any case, the court went on to consider jurisdiction under 28 U.S.C. § 1605(a)(6) and rejected Kazakhstan's argument, finding that it had jurisdiction because the foreign state had agreed to arbitrate, the award was based on that agreement, and the award was, or might be, governed by the New York Convention. *Stati,* 199 F. Supp. 3d at 190.

In the final case on which Nigeria relies, *Chevron Corp. v. Republic of Ecuador,* 795 F.3d 200 (D.C. Cir. 2015), a claim for confirmation of an award under an investment treaty, Ecuador argued, as Nigeria does here (with respect to Mr. Chiejina) that it had not agreed to arbitrate. The court rejected the argument because it held that the district court was not required "to make a *de novo* determination of whether Ecuador's offer to arbitrate in the BIT encompassed Chevron's breach of contract claims." *Id.* at 205. Ecuador's argument failed because, like Nigeria's argument, it "conflates the jurisdictional standard of the FSIA with the standard for review under the New York Convention." *Id.* As with *Stileks,* the result in *Chevron* should apply here *a fortiori.* In *Chevron,* a finding that Ecuador had not agreed to arbitrate Chevron's claim would have destroyed jurisdiction over the case as a whole, because Chevron's claim was the only claim. Here, a finding that Nigeria had not agreed to arbitrate Mr. Chiejina's claim would not affect the undisputed arbitrability of PICCOL's claim.

> b.   If There Is A Jurisdictional Problem, The Court Should Drop Mr. Chiejina As A Party Rather Than Dismissing The Case.

Nigeria has offered no reason to think that the Court lacks jurisdiction over the action as a whole even if it would have lacked jurisdiction in an action brought by Mr. Chiejina alone. In other contexts, courts take subject-matter jurisdiction claim-by-claim. They do not dismiss an action in its entirety for lack of jurisdiction where they have jurisdiction of at least one but not all of the claims. For instance, in *De Csepel v. Republic of Hungary,* 859 F.3d 1094, 1110 (D.C. Cir. 2017) a Holocaust restitution case brought under the expropriation exception to foreign sovereign immunity, 28 U.S.C. § 1605(a)(3), the court held that the district court should apply a piece-by-piece approach to determine whether the claim to each artwork in question came within the scope of the exception. The same is true when there are multiple plaintiffs asserting a single claim. Thus even though standing is a prerequisite to subject-matter jurisdiction, only one

plaintiff in a multi-plaintiff case need have standing to give the court jurisdiction to hear the case. *See Massachusetts v. EPA,* 549 U.S. 497, 518 (2007). There is, of course, a well-known counterexample: the rule of complete diversity requires dismissal of an action in its entirety when a single party on one side of a case shares a state citizenship with a single party on the other side. But the complete diversity rule is based on the interpretation of the diversity jurisdiction statute, not any general jurisdictional principles. *See Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 584 (1999). There are no cases interpreting the FSIA in the same way, nor has Nigeria offered any argument that supports such an interpretation.

If, despite this reasoning, the Court finds that Mr. Chiejina's presence in the case would destroy jurisdiction, it should deal with the problem in the same way that courts deal with the problem in the diversity jurisdiction context: by dropping the problematic party from the case to preserve the Court's jurisdiction. *See Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 832 (1989) (court may drop party under Rule 21 if party's presence in the case destroys complete diversity).

2.  Nigeria Has Implicitly Waived Its Sovereign Immunity.

The Court also has jurisdiction under 28 U.S.C. § 1605(a)(1), which provides an exception to sovereign immunity in cases "in which the foreign state has waived its immunity either explicitly or by implication." Nigeria has waived its immunity in this case by implication by signing the New York Convention, because any state that signs the Convention "must have contemplated enforcement actions in other signatory states." *Seetransport Wiking Trader Schiffarhtsgesellschaft mbH & Co. v. Navimplex Centrala Navala,* 989 F.2d 572, 578 (2d Cir. 1993).

The DC Circuit first signaled its agreement with the holding of *Seetransport Wiking Trader* in *Creighton Ltd. v. Government of Qatar,* 181 F.3d 118 (D.C. Cir. 1999). There, the

Court expressly approved of the Second Circuit's view that the act of signing the Convention implied a state's recognition that it could be sued in cases in which the Convention called for confirmation of an arbitral award against it. *Id.* 123. But the respondent in the case, Qatar, was one of the few states not party to the Convention. Thus the court held that Qatar had not implicitly waived its sovereign immunity, and the court's approval of the rule of *Seetransport Wiking Trader* was in dicta.

In *Tatneft v. Ukraine,* 771 Fed. App'x 9 (D.C. Cir. 2019) (per curiam), *cert. denied,* 140 S. Ct. 901 (2020), the court expressly held that signing the New York Convention implicitly waives foreign sovereign immunity. The decision in *Tatneft* is unpublished. Nevertheless, this Court has applied the rule suggested in *Creighton* and adopted in *Tatneft* against Nigeria, finding the DC Circuit's reasoning "persuasive." *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria,* 506 F. Supp. 3d 1, 11 (D.D.C. 2020). The Court rejected the view that the implied waiver rule would make the arbitration exception superfluous, finding that the two rules did not overlap precisely (as *Creighton* itself showed: there Qatar had not implicitly waived its immunity because it had not signed the Convention, but the claim was nevertheless within the scope of the arbitration exception). The Court also rejected Nigeria's appeal to the legislative history of the FSIA, noting that the legislative history only supported the view that signing an *agreement to arbitrate* did not constitute a waiver, not the view that signing *the Convention* did not constitute a waiver. *See id.* at 10.

Nigeria does not ask this Court to reject the rule of *Creighton* and *Tatneft.* Instead, Nigeria asks the Court to distinguish those cases on the grounds that unlike this case, they involved arbitrations seated outside of the foreign state's own territory. In short, Nigeria acknowledges that it has waived its sovereign immunity from suit when an award creditor seeks

17

to confirm an award against Nigeria entered in an arbitration that took place in London or Paris, but not when an award creditor seeks to confirm an award against Nigeria entered in an arbitration that took place in Lagos or Abuja.

Nothing in the Convention supports that view. The Convention applies to awards "made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." Convention, art. I(1). A state signing the Convention thus could have reason to think that the Convention might not require its own courts to confirm an award in an arbitration that took place in its own territory. Nigeria might have had reason to think that the Convention did not require a Nigerian court to confirm the award the petitioners obtained against it. But nothing in the Convention could lead Nigeria to think, when it signed the Convention, that parties who arbitrated claims against the Nigerian government in Nigeria would not be entitled to have the award confirmed in the courts of other states if, as here, Nigeria failed to pay for years. There is no basis in the Convention for treating awards in arbitrations taking place in a state's own territory from any other awards, at least when it comes to the state's expectations about confirmation proceedings award creditors would be entitled to take in other states' courts. To put it another way: if there were some basis in the Convention for giving special treatment to awards in arbitrations taking place in the territory of the state against which confirmation is sought, then surely it would be addressed in the arbitration exception, 28 U.S.C. § 1605(a)(6), or in cases on the scope of that exception; but Nigeria has no argument to suggest that § 1605(a)(6) does not apply to awards made in the territory of the foreign sovereign defendant.

Nigeria cites one case on this point, *Diag Human, S.E. v. Czech Republic Ministry of Health,* 64 F. Supp. 3d 22 (D.D.C. 2014), *rev'd on other grounds,* 824 F.3d 131 (D.C. Cir. 2016). In *Diag,* the Czech Republic moved to dismiss "on numerous grounds, including failure to state a

claim under the New York Convention, the SPEECH Act of 2010, and *forum non conveniens,"* but not for lack of subject-matter jurisdiction. *Id.* at 25. The Court raised the issue of jurisdiction sua sponte, and it dismissed the case sua sponte for lack of jurisdiction. Its main basis for dismissal was the finding that the relationship between the parties was not a commercial relationship and thus was not within the scope of the New York Convention. Thus the arbitration exception to immunity did not apply. *See id.* at 32-33. The Court also held that the Czech Republic had not implicitly waived its sovereign immunity because the arbitration took place in the Czech Republic. *See id.* at 31. On this point it merely cited *Foremost-McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438, 444 (D.C. Cir. 1990), for the proposition that

> The U.S. Court of Appeals for the D.C. Circuit has found implied waivers in three circumstances: when "(1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that the law of a particular country governs a contract; or (3) a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity."

Diag moved to alter or amend the judgment, arguing that the parties had a commercial relationship, but its motion did not address waiver. (See ECF 42 in Civ. A. No. 13-cv-355). The Court denied the motion without mentioning waiver. *See Diag Human, S.E. v. Czech Republic Ministry of Health,* 2014 U.S. Dist. LEXIS 186826 (D.D.C. Dec. 24, 2014). On appeal, the DC Circuit reversed, holding that the parties had a commercial relationship sufficient to bring the case within the arbitration exception. *See Diag Human, S.E. v. Czech Republic Ministry of Health,* 824 F.3d 131 (D.C. Cir. 2016). The opinion did not mention waiver. Diag did argue waiver to the DC Circuit, but its argument was that the Czech Republic had implicitly waived sovereign immunity by bringing a motion to dismiss for failure to state a claim and for forum non conveniens without raising sovereign immunity. Diag did not argue that the Czech Republic had implicitly waived immunity by signing the New York Convention. *See id.* at 140 (Sentelle, J., dissenting).

19

Thus the Court, in the case on which Nigeria relies, decided the implied waiver issue sua sponte without argument, and remarkably, the petitioner never even sought to argue that the Czech Republic had waived its immunity by signing the Convention. The petitioners acknowledge that *Diag* says what it says, but they respectfully submit that the issue has never actually been litigated, and that *Diag* provides only a weak basis for rejecting the rule of *Creighton* and *Tatneft* here. *Diag* does not provide any support for the Judge's view other than the citation to *Foremost-McKesson,* but *Foremost-McKesson* was not an arbitration case, and the DC Circuit's statement of three grounds on which other courts had found an implied waiver was mere dicta. Especially in light of *Creighton* and *Tatneft,* which treat a state's agreement to the New York Convention as the key fact in deciding implied waiver, *Diag* cannot bear the weight Nigeria wants it to carry.

<u>CONCLUSION</u>

For these reasons, the Court should deny Nigeria's motion to dismiss.

Respectfully submitted,

PETER A. CHIEJINA and
PICCOL NIGERIA LTD.

By their attorney:

*/s/ Theodore J. Folkman*

Theodore J. Folkman
FOLKMAN LLC
53 State St., Suite 500
Boston, MA 02109
(617) 219-9664
ted@folkman.law

Dated: February 25, 2022