UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER A. CHIEJINA, and
PICCOL NIGERIA LTD.,

        *Petitioners*,

v.

FEDERAL REPUBLIC OF NIGERIA,

        *Respondent*.

Civil Action No. 1:21-cv-02241-RJL

**RESPONDENT FEDERAL REPUBLIC OF NIGERIA'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Tara M. Lee (DC Bar No. 17902)
Scott Lerner (DC Bar No. 1024964)
T.J. McElhinney (DC Bar No. 1657817)[*]
Benedict S. Bernstein (admitted *pro hac vice*)
**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: +1 202 626 3600
Facsimile: +1 202 639 9355

*Counsel for Respondent
Federal Republic of Nigeria*

March 4, 2022

[*] D.D.C. admission pending.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT........................................................................................................................2

I. THIS COURT LACKS PERSONAL JURISDICTION BECAUSE PETITIONERS FAILED TO PROPERLY SERVE NIGERIA ......................................................................2

II. THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER MR. CHIEJINA'S CLAIMS ..........................................................................................................6

III. NIGERIA DID NOT IMPLICITLY WAIVE ITS IMMUNITY TO SUIT ..........................8

CONCLUSION...................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Argentine Republic v. Amerada Hess Shipping Corp.*,
   488 U.S. 428 (1989) ..................................................................................................8

*BCB Holdings Ltd. v. Gov't of Belize*,
   110 F. Supp. 3d 233 (D.D.C. 2015) ...........................................................................7

*Berkowitz v. Republic of Costa Rica*,
   288 F. Supp. 3d 166 (D.D.C. 2018) .......................................................................3, 4

*Chevron Corp. v. Republic of Ecuador*,
   795 F.3d 200 (D.C. Cir. 2015) ...............................................................................6, 7

*Creighton Ltd. v. Gov't of Qatar*,
   181 F.3d 118 (D.C. Cir. 1999) ...............................................................................8, 9

*Diag Human S.E. v. Czech Republic-Ministry of Health*,
   64 F. Supp. 3d 22 (D.D.C. 2014) ................................................................................9

*Enron Nigeria Power Holding, Ltd. v. Federal Republic of Nigeria*,
   225 F. Supp. 3d 18 (D.D.C. 2014) .........................................................................3, 4

*First Inv. Corp. v Fujian Mawei Shipbuilding, Ltd.*,
   703 F.3d 742 (5th Cir. 2012) ......................................................................................6

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
   905 F.2d 438 (D.C. Cir. 1990) ....................................................................................9

*G.E. Transp. S.p.A. v. Republic of Albania*,
   693 F. Supp. 2d 132 (D.D.C. 2010) ...........................................................................5

*Hardy Exploration & Prod. (India), Inc. v. Gov't of India*,
   219 F. Supp. 3d 50 (D.D.C. 2016) .........................................................................3, 4

*LLC SPC Stileks v. Republic of Moldova*,
   985 F.3d 871 (D.C. Cir. 2021) ....................................................................................7

*Marlowe v. Argentine Naval Comm'n*,
   604 F. Supp. 703 (D.D.C. 1985) .................................................................................5

*Orange Middle East & Africa v. Republic of Equatorial Guinea*,
   2016 WL 2894857 (D.D.C. May 18, 2016) ...........................................................3, 4

*Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*,
  21-7003, 2021 U.S. App. LEXIS 33838 (D.C. Cir. Nov. 15, 2021) ........................................... 8

*Tatneft v. Ukraine*,
  301 F. Supp. 3d 175, 186 (D.D.C. 2018) ................................................................................. 9

*Tatneft v. Ukraine*,
  771 F. App'x 9 (D.C. Cir. May 28, 2019) ................................................................................ 8

*Trans Chem. Ltd. v. China Nat'l Mach. Import & Export Corp.*,
  978 F. Supp. 266 (S.D. Tex. 1997) .......................................................................................... 5

**PRELIMINARY STATEMENT**

Petitioners' Opposition (ECF No. 19) glaringly omits any reference to their request that this Court effectively re-write the terms of the Award to provide them a massive windfall at Nigeria's expense based on fluctuations in the value of the U.S. dollar relative to the Nigerian naira. Petitioners' request is all the more remarkable because the underlying dispute has no connection with the United States or the U.S. dollar, as the Opposition emphasizes: PICCOL, a Nigerian corporation, contracted with the government of Nigeria to perform services in Nigeria in return for payment in Nigerian naira; PICCOL agreed that any dispute with Nigeria related to that contract would be resolved in Nigeria under Nigerian law; when a dispute did arise, PICCOL submitted the dispute to a Nigerian arbitrator seated in Nigeria and governed by Nigerian law; and PICCOL obtained an award denominated in Nigerian naira. See Opp. 1–4. On the other hand, the Opposition identifies two purported connections between this action and the United States. First, both Nigeria and the United States are signatories to the New York Convention. *See* Opp. at 2, 11. And second, one Petitioner—Mr. Chiejina, who was not a party to the Agreement and has no award—is "a Nigerian citizen who *now* resides in the United States." Opp. 1 (emphasis added). On that meager basis, the Opposition insists this Court "proceed summarily" to grant Petitioners the extraordinary relief they seek.

But this Court has neither personal jurisdiction over Nigeria, nor subject-matter jurisdiction for Mr. Chiejina's claims. Petitioners have not complied with the requirements of the FSIA, which provides the sole basis for obtaining personal and subject matter jurisdiction in this action. The Court thus lacks personal jurisdiction because Petitioners failed to effect service pursuant to the terms of the Agreement between PICCOL and Nigeria, as they must under the hierarchical service provisions of § 1608(a) of the FSIA. The cases invoked by the Opposition in an attempt to avoid

1

that result do not address the special arrangement contained in the Agreement and, in fact, uniformly recognize that foreign sovereigns are entitled to service in strict conformity with the requirements of the FSIA.

This Court likewise lacks subject-matter jurisdiction as to Mr. Chiejina's claim because none of the FSIA's exceptions to Nigeria's immunity apply. The Opposition concedes that there was never an agreement to arbitrate between Mr. Chiejina and Nigeria but contends that the Court should nevertheless exercise something approaching supplemental subject-matter jurisdiction based on the Agreement between PICCOL and Nigeria and the Award PICCOL obtained based on that Agreement. But nothing in the FSIA's comprehensive framework provides a basis for such jurisdiction and Mr. Chiejina's claim must be dismissed.

## ARGUMENT

### I. THIS COURT LACKS PERSONAL JURISDICTION BECAUSE PETITIONERS FAILED TO PROPERLY SERVE NIGERIA

There is no dispute that failure to serve a foreign sovereign in strict compliance with the hierarchical terms of § 1608(a) of the FSIA divests the Court of personal jurisdiction. *See* Opp. At 4; *see also* Statement of Points & Auths. in Support of Mot. to Dismiss ("Mot."), ECF No. 17-1, at 6–7. Nor is there any dispute that service in accordance with a special arrangement (§ 1608(1)) takes precedence over service by mailing to the ministry of foreign affairs (§ 1608(a)(3)). The only dispute is whether the "NOTICES" provision of the Agreement—which requires notices of disputes be served on the Ecological Fund Office by registered post, qualifies as a special arrangement for service of process. *See* Agreement § 27; Opp. at 4. If so, Petitioners' chosen method of service—mail to the Minister of Foreign Affairs (§ 1608(a)(3))—fails to comply with the hierarchical terms of § 1608(a) of the FSIA and divests this Court of personal jurisdiction. *See* Mot. 6–7.

In their, Opposition, Petitioners contend that the "NOTICES" provision of the Agreement was "obviously" not a special arrangement for service of process. Opp. at 4. Petitioners are incorrect. As an initial matter, in every case cited in the Opposition (at 6–9), the court ruled in favor of the foreign state. *See Berkowitz v. Republic of Costa Rica*, 288 F. Supp. 3d 166 (D.D.C. 2018) (dismissing petition with prejudice); *Hardy Exploration & Prod. (India), Inc. v. Gov't of India*, 219 F. Supp. 3d 50 (D.D.C. 2016) (holding service of process on India was ineffective); *Orange Middle East & Africa v. Republic of Equatorial Guinea*, 2016 WL 2894857 (D.D.C. May 18, 2016) (dismissing petition); *Enron Nigeria Power Holding, Ltd. v. Federal Republic of Nigeria*, 225 F. Supp. 3d 18 (D.D.C. 2014) (holding service of process on Nigeria was ineffective). Despite the clear import of these cases—that service in strict compliance with the FSIA is mandatory and jurisdictional—the Opposition attempts to use these cases to establish that Petitioners were not required to adhere to the special arrangement contained in the Agreement. *See* Opp. at 6–9. Petitioners base this argument on their mistaken belief that the notice provision somehow excludes notices related to disputes arising from the Agreement by its use of the phrase "required or authorised by this Agreement." Opp. at 5. Thus, Petitioners contend the notice provision in the Agreement "merely provide[d] a method for serving notices under the contract," and did not extend to "***all notices whatsoever***." Opp. at 4 (emphasis added). But that is an irrelevant strawman divorced from the realities of this action.

The Agreement's notice provision is "all-encompassing" (Opp. at 4) for purposes of this action, which seeks to confirm an arbitral award obtained pursuant to the terms of the Agreement and for which this Court has subject matter jurisdiction (as to PICCOL) based on the Agreement. Specifically, the Agreement provided that the notice provision applied to all notices "authorised" by the Agreement. Agreement § 27. One such authorization is found in the agreement to arbitrate

3

in § 18 of the Agreement. *See* Award at 17–20 (analyzing whether the arbitration demand satisfied the Agreement's notice provision). Accordingly, service of the Petition to enforce the Award is precisely the type of notice anticipated and "***authorised by this Agreement***." Agreement § 27; Opp. at 5.

None of the cases cited in the Opposition lead to a different conclusion. The cited cases (Opp. at 6–9) do not address notice provisions analogous to the one at issue here. *See generally Berkowitz*, 288 F. Supp. 3d 166; *Hardy Exploration*, 219 F. Supp. 3d 50; *Orange*, 2016 WL 2894857; *Enron Nigeria*, 225 F. Supp. 3d 18. The notice provisions at issue in those cases are either facially narrower than the notice provision in the Agreement or are narrower as a result of other provisions of the agreements at issue. For example, in *Berkowitz*, the notices provision "expressly provide[d]" that it was limited to "communications made pursuant to" dispute resolution procedures falling under Chapter 10, Section B of the Dominican Republic-Central American Free Trade Agreement. 288 F. Supp. 3d at 173. Here, by contrast, the notice provision in the Agreement is not so limited, but rather applies to "*[a]ny* notice, authorisation, information, instruction and correspondence required or authorised." Agreement § 27.

Similarly, the notice provisions in *Hardy Exploration* and *Orange* applied only to communications "under" the agreements, a more restrictive term than "authorised." *See* 219 F. Supp. 3d at 61, 63 (stating "hereunder" restricted the application of the notice provision to "communications specifically contemplated"); 2016 WL 2894857, at *4 (stating notice provision phrase "made under" was "restrictive"). Moreover, the court's construction of the notice provision at issue in *Hardy Exploration* was based on Indian law, which has no application here. *See* 219 F. Supp. 3d at 58–63. Finally, in *Enron Nigeria*, the court found the general notice provision could not create a special arrangement for service of process because "other sections" of the agreement

4

"explicitly contemplate[d] legal service." *See* 225 F. Supp. 3d at 23. Here, by contrast, there are no such "other sections" that would render the notice provision inapplicable. *See generally* Agreement.

Thus, contrary to Petitioners' assertions, the notice provision here creates a special arrangement for service of process under the FSIA. *See* Mot. at 7–8. To be sure, the notice provision reaches "[a]ny notice, authorisation, information, instruction, and correspondence" and is consistent with language that this Court has found creates a "special arrangement." Agreement § 27; *see G.E. Transp. S.p.A. v. Republic of Albania*, 693 F. Supp. 2d 132, 136–37 (D.D.C. 2010) (finding "a special arrangement for service on Albania" where notice provision provided "[a]ny notice to be given to [Albania] . . . shall be in writing" (alterations in original)); *Marlowe v. Argentine Naval Comm'n*, 604 F. Supp. 703, 704, 707–08 (D.D.C. 1985) (finding "special arrangement" where notice provision encompassed "[a]ll notices, requests, demands, or other communications to or upon the respective parties hereto"). Accordingly, Petitioners were required to serve the summons and petition by registered post to the Ecological Fund Office, to the attention of the Minister of Intergovernmental Affairs, Special Duties & Youth Development at the New Federal Secretariat Complex in Abuja. Agreement § 27. They did not. As a result, this Court lacks personal jurisdiction over Nigeria and the Petition should be dismissed.

To the extent Petitioners argue the Arbitration Rules change this conclusion, they cite no authority and, indeed, contradict themselves by arguing the Arbitration Rules do not apply to "post-arbitration enforcement proceedings." Opp. at 5–6. In any event, courts have held that such arbitration rules can, in fact, provide a special arrangement for service of a petition to confirm an award. *See Trans Chem. Ltd. v. China Nat'l Mach. Import & Export Corp.*, 978 F. Supp. 266, 298–99 (S.D. Tex. 1997) (finding notice rules found within arbitration rules that are incorporated

by reference into an arbitration agreement form a special arrangement). This Court, therefore, should give no credence to Petitioners' contention.

## II. THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER MR. CHIEJINA'S CLAIMS

Petitioners do not dispute that "an agreement to arbitrate" must exist for the arbitration exception to sovereign immunity to apply. Opp. at 10; *see also* Mot. at 10. Nor do they dispute that Mr. Chiejina is not a party to an arbitration agreement with Nigeria. *See generally* Opp. In fact, Petitioners freely concede this point in their Opposition, acknowledging (as they must) that the only arbitration agreement at issue here is "between Nigeria and PICCOL"—not between Mr. Chiejina and Nigeria. Pet. ¶ 5; *see* Opp. at 2 (alleging "PICCOL and Nigeria were parties to a contract"); Opp. at 10 (alleging the arbitration agreement was for PICCOL's benefit). These points alone establish this Court does not have subject-matter jurisdiction over claims brought by Mr. Chiejina against Nigeria, and warrant dismissal. *See First Inv. Corp. v Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 756 (5th Cir. 2012) (affirming dismissal for lack of subject-matter jurisdiction of petition to confirm arbitral award against nonparty to arbitration agreement); *see also* Mot. at 10–11.

In an attempt to avoid dismissal of Mr. Chiejina's claims, Petitioners argue that the absence of an agreement to arbitrate between Nigeria and Mr. Chiejina affects only the arbitrability of his claims—a merits question—but not whether Nigeria has waived its immunity as to Mr. Chiejina's claims. *See* Opp. at 12–15. This argument misses the mark. The question of ***arbitrability arises only after subject-matter jurisdiction*** has been established based on "a prima facie showing that there was an arbitration agreement." *Chevron Corp. v. Ecuador*, 795 F.3d 200, 205 (2015). Petitioners are therefore wrong when they argue that the existence of an arbitration agreement is a question of arbitrability that "should be decided on the merits under Article V of the Convention,

6

not as a jurisdictional question." Opp. at 13.

This Circuit is clear that, in the absence of an arbitration agreement, "the District Court lacks jurisdiction over the foreign state and the action must be dismissed." *Chevron*, 795 F.3d at 204. And "[t]he existence of an arbitration agreement is a purely factual predicate independent of the plaintiff's claim." *Id.* (quoting *Agudas Chasidei Chabad v. Russian Fed'n*, 528 F.3d 934, 940 (D.C. Cir. 2008)) (cleaned up). Petitioners bear the initial burden of establishing this "factual basis by a preponderance of the evidence." *Id.* Yet, Petitioners concede that Mr. Chiejina has no arbitration agreement with Nigeria and have failed to meet their "burden of production." *Id.* The arbitration exception thus cannot apply to Mr. Chiejina's claims.

None of the cases relied on by Petitioners (at 12–13) hold otherwise. In each case, the petitioner in fact had carried their initial burden of showing the existence of an arbitration agreement, and the respondent was challenging the arbitration agreement's validity or scope. *See BCB Holdings Ltd. v. Gov't of Belize*, 110 F. Supp. 3d 233, 243–44 (D.D.C. 2015) (challenge to former Prime Minister's authority to bind current government administration); *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 878 (D.C. Cir. 2021) (challenge to claimant being a "qualifying investor" under bilateral treaty allowing it to avail itself of arbitration provision). Here, Petitioners have not even alleged an arbitration agreement between Mr. Chiejina and Nigeria, much less carried their burden of production. Without this prima facie showing, the Court does not even have jurisdiction to reach the separate merits question under the New York Convention.

Accordingly, this Court should dismiss the Petition as it relates to claims brought by Mr. Chiejina against Nigeria. *See First. Inv. Corp.*, 703 F.3d at 756; *see also* Opp. 15–16 (suggesting "The Court Should Drop Mr. Chiejina As A Party").

## III. NIGERIA DID NOT IMPLICITLY WAIVE ITS IMMUNITY TO SUIT

Petitioners are wrong that a contracting state to the New York Convention implicitly waives its immunity from actions based on arbitral awards. *See* Opp. 16–20. The D.C. Circuit has instructed courts to "constru[e] the implied waiver provision narrowly." *Creighton Ltd. v. Gov't of Qatar*, 181 F.3d 118, 122 (D.C. 1999). And the Supreme Court has rejected the contention that signing an international agreement that is silent on immunity—as the New York Convention is—implies a waiver of immunity. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 442–43 (1989) (rejecting the argument that "a foreign state can waive its immunity under § 1605(a)(1) by signing an international agreement that contains no mention of a waiver of immunity to suit in United States courts").

Petitioners' argument is further undercut by the authority they cite, *i.e.*, dicta in *Creighton*, the two-page unpublished opinion in *Tatneft v. Ukraine*, 771 F. App'x 9 (D.C. Cir. May 28, 2019) ("*Tatneft II*"), and out-of-circuit case law. *See* Opp. at 16–20. Likewise, Petitioners' insistence that the D.C. Circuit has "signaled its agreement" with the Opposition's implied waiver theory (Opp. at 16) is undermined by the fact that the D.C. Circuit recently felt compelled to invite the views of the United States on whether a party to the New York Convention "impliedly waives sovereign immunity from actions seeking the recognition and enforcement of foreign arbitral awards in the courts of other New York Convention states by becoming a party to the Convention and agreeing to arbitrate a dispute in a Convention state." Order, *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 21-7003, 2021 U.S. App. LEXIS 33838 (D.C. Cir. Nov. 15, 2021) . While the D.C. Circuit has yet to rule on the issue, Nigeria respectfully submits the answer is "no."

And contrary to Petitioners' assertion (Opp. at 17–18), Nigeria does not concede it waives sovereign immunity by agreeing to arbitration outside of its territory—a proposition with no

8

relevance to this action. Nor does Nigeria ask this Court to "reject[] the rule of *Creighton*" (Opp. at 20), which supports Nigeria's position and holds that an agreement to arbitrate, "without more," is ***not*** an implicit waiver of sovereign immunity as to actions to enforce an award. *Creighton*, 181 F.3d at 123. As to *Tatneft II*, Petitioners over-read that case, as the court was addressing a situation in which there was, in fact, "an agreement that provides for arbitration" between the parties in the form of a bilateral investment treaty. *Tatneft v. Ukraine*, 301 F. Supp. 3d 175, 186 (D.D.C. 2018). This Court should decline, therefore, to rely on *Tatneft II* to disregard the New York Convention's silence as to sovereign immunity, which, in the absence of an agreement to arbitrate, clearly does not provide the "strong evidence" sufficient to find implied waiver under the FSIA. *Creighton*, 181 F.3d at 122. Instead, this Court should hue to the Supreme Court's decision in *Amerada Hess* and this Court's decision in *Diag Human S.E. v. Czech Republic-Ministry of Health*, 64 F. Supp. 3d 22, 30–33 (D.D.C. 2014). Indeed, Petitioners' invitation to treat the New York Convention as a blanket waiver of sovereign immunity would render the arbitration exception superfluous and directly conflicts with the legislative history of the FSIA, which only recognized three situations where a foreign state implicitly waived immunity—being a signatory to the New York Convention was not one of them. *See Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990).

## CONCLUSION

For the foregoing reasons and those stated in the Statement of Points and Authorities in Support of the Motion, Nigeria respectfully requests that this Court dismiss the Petition.

| | |
|---|---|
| Dated: March 4, 2022<br>Washington, DC | Respectfully submitted,<br><br>**WHITE & CASE**<br><br>/s/ *Tara M. Lee*<br>Tara M. Lee (DC Bar No. 17902)<br>Scott Lerner (DC Bar No. 1024964)<br>T.J. McElhinney (DC Bar No. 1657817)<br>Benedict S. Bernstein (admitted *pro hac vice*)<br>WHITE & CASE LLP<br>701 Thirteenth Street, NW<br>Washington, DC 20005<br>Telephone:  + 1 202 626 3600<br>Facsimile:   + 1 202 639 9355<br>tara.lee@whitecase.com<br>scott.lerner@whitecase.com<br>tj.mcelhinney@whitecase.com<br>benedict.bernstein@whitecase.com<br><br>*Counsel for Respondent*<br>*Federal Republic of Nigeria* |

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Respondent's Reply in Support of its Motion to Dismiss was served on all counsel of record by Electronic Case Filing (ECF) on the 4th day of March 2022.

/s/ *Tara M. Lee*
Tara M. Lee (DC Bar No. 17902)