# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

Argued November 10, 2021          Decided March 11, 2022

No. 21-7003

PROCESS AND INDUSTRIAL DEVELOPMENTS LIMITED,
APPELLEE

v.

FEDERAL REPUBLIC OF NIGERIA AND MINISTRY OF
PETROLEUM RESOURCES OF THE FEDERAL REPUBLIC OF
NIGERIA,
APPELLANTS

_____

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-00594)

_____

*Christopher J. Major* argued the cause for appellants. With him on the briefs were *David F. Geneson* and *Alexander Pencu*.

*Josef M. Klazen* argued the cause for appellee. With him on the brief were *Darryl G. Stein* and *Michael S. Kim*.

*Brian M. Boynton*, Acting Assistant Attorney General, U.S. Department of Justice, *Sharon Swingle* and *Sarah Clark*, Attorneys, were on the brief for *amicus curiae* the United States.

2

Before: HENDERSON, MILLETT and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Process and Industrial Developments Limited ("P&ID") petitioned for confirmation of an arbitral award against the Federal Republic of Nigeria and its Ministry of Petroleum Resources (collectively, "Nigeria") that today stands at roughly $10 billion. Nigeria moved to dismiss for lack of jurisdiction and asserted sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"). 28 U.S.C. § 1602 *et seq*. The district court denied the motion on the ground that Nigeria impliedly waived sovereign immunity by joining The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), June 10, 1958, 21 U.S.T. 2517— an international treaty obligating member states to recognize and enforce arbitral awards issued in other member states—and agreeing to arbitrate its dispute with P&ID in a Convention state. *See* 28 U.S.C. § 1605(a)(1). We affirm but rely instead on the arbitration exception to the FSIA. *See id.* § 1605(a)(6). We conclude that a foreign court's order ostensibly setting aside an arbitral award has no bearing on the district court's jurisdiction and is instead an affirmative defense properly suited for consideration at the merits stage.

## I.

P&ID is an engineering and project management company started by two Irish nationals in 2006 to implement an energy project in Nigeria. In January 2010, P&ID and Nigeria entered a 20-year natural gas supply and processing agreement. Nigeria supplied P&ID with agreed-upon quantities of natural gas, which P&ID refined for Nigeria's use to power its national

3

electric grid. In exchange, P&ID stripped away certain valuable by-products in the refining process for its own use. The agreement was "governed by, and construed in accordance with[,] the laws of the Federal Republic of Nigeria," disputes arising under the agreement were subject to arbitration under the rules of the Nigerian Arbitration and Conciliation Act and, unless the parties agreed otherwise, the arbitration venue was London, England.

In August 2012, P&ID initiated arbitration proceedings in London, alleging that Nigeria failed both to supply the agreed-upon quantity of natural gas to P&ID and to construct the necessary pipeline infrastructure. In July 2014, the arbitral tribunal first ruled that it had jurisdiction of the dispute and then, addressing the issue of liability in July 2015, determined that Nigeria had breached the agreement.

Nigeria first sought relief in England's courts, requesting that the arbitral tribunal's liability determination be set aside, but in February 2016 the High Court of Justice in London denied Nigeria's application on the ground that Nigeria had filed it more than four months past the deadline and an extension was not warranted. Soon thereafter, Nigeria sought a set-aside order in its own courts and the Federal High Court of Nigeria in May 2016 issued an order "setting aside and/or remitting for further consideration all or part of the arbitration Award." The Nigerian court's set-aside order offered no reasoning or explanation for its decision.

Meanwhile, the arbitration proceedings continued in London. After the tribunal concluded that the Nigerian court lacked jurisdiction to set aside the liability determination, it awarded P&ID nearly $6.6 billion plus interest in damages for lost profits. Including accrued interest, the arbitral award now amounts to more than $10 billion.

4

P&ID first sought to enforce the award in England and, in August 2019, the English High Court of Justice concluded that the award was enforceable. In the meantime, Nigeria had commenced a criminal investigation into P&ID's procurement of the natural gas agreement and subsequently applied in December 2019 to the High Court of Justice to extend the deadline to challenge the award based on what it characterized as new evidence of fraud in the arbitration and underlying contract negotiations. The English court granted the request on the ground that Nigeria had "established a strong prima facie case" of P&ID's fraud and bribery in procuring the agreement and during the arbitration proceedings. To date, the English court has not set aside the arbitral award and a trial on these issues is scheduled to begin in January 2023.

In 2018, P&ID petitioned the district court to confirm the arbitral award and reduce the award to a judgment pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 *et seq.* The FAA provides that the New York Convention is enforceable in the courts of the United States, to which courts a party may apply for an order confirming an arbitral award issued under the Convention. *Id.* §§ 201, 207. Nigeria moved to dismiss for lack of subject matter jurisdiction under the FSIA, to which P&ID responded with a motion of its own, seeking an order requiring Nigeria to present both its jurisdictional and merits defenses in a single response to P&ID's petition to confirm the award. The district court granted P&ID's motion and ordered Nigeria to file a response presenting its "merits arguments" as well as its immunity and other jurisdictional defenses. *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, No. 18-cv-594, 2018 WL 8997443, at *3 (D.D.C. Oct. 1, 2018).

Nigeria pursued an interlocutory appeal, arguing that it was entitled to a ruling on its sovereign-immunity defense

5

before being required to present its merits defenses. This court agreed, reversing the order granting P&ID's motion and remanding to the district court because it "impermissibly ordered Nigeria to brief the merits while its colorable immunity assertion remains pending." *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 586–87 (D.C. Cir. 2020). We held that "[b]ecause the immunity protects foreign sovereigns from suit, it must be decided at the threshold of every action in which it is asserted." *Id.* at 584 (internal quotation marks and citation omitted). We declined to determine whether Nigeria would prevail on its immunity defense but we noted that Nigeria's arguments with respect to two exceptions to sovereign immunity—the waiver exception and the arbitration exception—were at least colorable. *Id.* at 583–84.

On remand, Nigeria again moved to dismiss for lack of subject matter jurisdiction under the FSIA and requested a stay pending the outcome of the litigation in England. P&ID argued that the district court had jurisdiction under the waiver exception, 28 U.S.C. § 1605(a)(1), and the arbitration exception, *id.* § 1605(a)(6), to FSIA immunity and that a stay would be inefficient and prejudicial to its interests. First, the district court "decline[d] to stay the case, without prejudice to any future request for a stay."[1] *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 506 F. Supp. 3d 1, 5–6 (D.D.C. 2020). It then concluded that it had subject matter jurisdiction because Nigeria's sovereign immunity had been abrogated by the FSIA's waiver exception. *Id.* at 6. The district court reasoned that Nigeria impliedly waived its sovereign immunity to the confirmation action by becoming a party to the New

---

[1] Nigeria does not challenge this portion of the district court's ruling. Its challenge is limited to the denial of its motion to dismiss for lack of subject matter jurisdiction based on sovereign immunity.

6

York Convention and agreeing to arbitrate its dispute with P&ID in a Convention state. *Id.* at 6–10. Finding our Circuit law on this application of the waiver exception unsettled, it followed the Second Circuit's leading case on the issue. *Id.* at 7–8 (citing *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572 (2d Cir. 1993)). Although we have favorably cited *Seetransport* and its reasoning in dicta and in an unpublished opinion, we have not formally adopted it. *See Tatneft v. Ukraine*, 771 F. App'x 9, 9–10 (D.C. Cir. 2019) (holding that the waiver exception applies if the foreign sovereign is a party to the New York Convention and has agreed to arbitrate in a Convention state), *cert. denied* 140 S. Ct. 901 (2020); *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 123 (D.C. Cir. 1999) (noting that the Second Circuit's reasoning in *Seetransport* is likely correct). The district court declined to address the arbitration exception and Nigeria's argument that it is inapplicable because the Nigerian High Court had set aside the liability award. *Id.* at 6 n.1. It noted that, notwithstanding the Nigerian court's likely supervisory power to set aside the award, the implications of the set-aside order were arguably irrelevant to the jurisdictional analysis and properly suited for consideration at the merits stage. *Id.* Nigeria again seeks an interlocutory appeal.

## II.

The district court's subject matter jurisdiction *vel non* is the crux of Nigeria's appeal. We have appellate jurisdiction pursuant to the collateral order doctrine. *El-Hadad v. United Arab Emirates*, 216 F.3d 29, 21 (D.C. Cir. 2000) ("The denial of a foreign state's motion to dismiss on the ground of sovereign immunity is subject to interlocutory appeal under the collateral order doctrine."). We review *de novo* a district court's denial of a motion to dismiss on the sovereign immunity

ground. *Kirkham v. Société Air France*, 429 F.3d 288, 291 (D.C. Cir. 2005).

## III.

The New York Convention applies "to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." New York Convention, art. I(1). It further provides that signatory states "shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the . . . articles [of the Convention]." *Id.* at art. III. There is no dispute that the Federal Republic of Nigeria, the United States and the United Kingdom—the location of the arbitration proceedings—are signatories to the New York Convention.[2] The Congress declared in the legislation implementing the Convention:

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or

---

[2]   Nigeria and the United States acceded to the New York Convention in 1970 and the United Kingdom became a party to the Convention in 1975. *See Contracting States*, New York Arbitration Convention, *available at* https://www.newyorkconvention.org/countries (last visited Feb. 8, 2022).

8

proceeding, regardless of the amount in
controversy.

9 U.S.C. § 203.

It is settled law that "[t]he FSIA is 'the sole basis for
obtaining jurisdiction over a foreign state in our courts'" in
civil cases. *Creighton*, 181 F.3d at 121 (quoting *Argentine
Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434
(1989)). In civil cases, a foreign state is "presumptively
immune from the jurisdiction of United States courts," *Saudi
Arabia v. Nelson*, 507 U.S. 349, 355 (1993), and that immunity
is preserved unless one of the FSIA's exceptions to sovereign
immunity applies, *see* 28 U.S.C. § 1604 ("Subject to existing
international agreements to which the United States is a party
at the time of the enactment of this Act[,] a foreign state shall
be immune from the jurisdiction of the courts of the United
States and of the States except as provided in sections 1605 to
1607.").

Two FSIA exceptions are relevant here: the waiver
exception, *id.* § 1605(a)(1), and the arbitration exception, *id.*
§ 1605(a)(6). The district court grounded its ruling in the
waiver exception, *P&ID*, 506 F. Supp. 3d at 6–11, and declined
to resolve whether the arbitration exception applies, *id.* at 6 n.1.
Because "as an appellate court, we can 'affirm the District
Court on any valid ground, and need not follow the same mode
of analysis,'" we take a different approach. *Baird v. Gotbaum*,
792 F.3d 166, 171 (D.C. Cir. 2015) (quoting *Molerio v. FBI*,
749 F.2d 815, 820 (D.C. Cir. 1984)); *see also de Csepel v.
Republic of Hungary*, 714 F.3d 591, 598 (D.C. Cir. 2013) (an
appellate court may affirm the district court "on any basis
supported by the record" (quoting *Carney v. Am. Univ.*,
151 F.3d 1090, 1096 (D.C. Cir. 1998)). We decline to address
the district court's interpretation and application of the waiver

9

exception and instead find Nigeria's sovereign immunity abrogated by the arbitration exception.[3]

The FSIA's arbitration exception provides:

> A foreign state shall not be immune from the jurisdiction of the courts of the United States or of the States in any case . . . in which the action is brought . . . to confirm an award made pursuant to . . . an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force . . . calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605(a), (a)(6). We have recognized that "the New York Convention 'is exactly the sort of treaty Congress intended to include in the arbitration exception.'" *Creighton*,

---

[3] After oral argument, we requested additional briefing by the United States as amicus curiae, inviting it to provide its views on whether the United States, as a party to the New York Convention, impliedly waives sovereign immunity from actions seeking recognition and enforcement of foreign arbitral awards in the courts of other New York Convention states by becoming a party to the Convention and agreeing to arbitrate a dispute in a Convention state. As the United States explained, our application of the waiver exception to the FSIA "may have implications for the treatment of the United States in foreign courts and for our relations with foreign states." Br. for United States 1, 14–16. Given these significant policy concerns and the ready applicability of the arbitration exception, we find it unnecessary to wade into the murky waters of the waiver exception. We thank the United States for submitting its views.

10

181 F.3d at 123–24 (quoting *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1018 (2d Cir. 1993)).

The application of the arbitration exception here is straightforward, as all of the jurisdictional facts required by the statute exist. 28 U.S.C. § 1605(a)(6); *see LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021) ("[T]he existence of an arbitration agreement, an arbitration award and a treaty governing the award are all jurisdictional facts that must be established."). P&ID's contract with Nigeria included an agreement to arbitrate. The arbitral tribunal issued an award to P&ID. And the New York Convention governs the award, as Nigeria, the United States and the United Kingdom are all member states.

Nigeria contends that the arbitration exception does not apply because P&ID lacks a valid and enforceable arbitral award. Nigeria argues that the award is not valid and enforceable because, in its view, the Federal High Court of Nigeria set aside the arbitral tribunal's liability award. For support, it cites Article V of the New York Convention, which states that "enforcement of the award may be refused" if it "has been set aside or suspended by a competent authority of the country in which, or under the law of which that award was made."[4] New York Convention, art. V(1)(e). As we have made clear, the *validity or enforceability* of an arbitral award is a merits question. *See Diag Human, S.E. v. Czech Republic– Ministry of Health*, 824 F.3d 131, 137–38 (D.C. Cir. 2016) (legitimacy of award reversed by appellate arbitration panel did not affect district court's subject matter jurisdiction because "[w]hether the arbitration award is final will be a question going to the merits of the case"). Thus, Nigeria's argument is

---

[4] We need not decide at this stage whether the Nigerian court possessed authority to set aside the arbitral tribunal's liability award to P&ID.

11

foreclosed by our precedent on the arbitration exception and the district court need not determine the validity of the arbitral award as part of its jurisdictional inquiry.

Because the requirements of the arbitration exception under § 1605(a)(6) are satisfied, Nigeria's sovereign immunity has been abrogated. The district court possesses subject matter jurisdiction. Accordingly, we affirm.

*So ordered.*