UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER A. CHIEJINA, et al.,                )
                                          )
    Petitioners,                          )
                                          )
v.                                        )   Civil Case No. 21-2241 (RJL)
                                          )
FEDERAL REPUBLIC OF NIGERIA,              )
                                          )
    Respondent.                           )

**MEMORANDUM OPINION**
(August 23, 2022) [Dkt. # 17]

Peter A. Chiejina and PICCOL Nigeria Ltd. ("PICCOL") together have petitioned the Court to confirm and enforce an arbitral award entered in their favor against the Federal Republic of Nigeria ("Nigeria"), stemming from a contract to construct a gully-erosion control system. Nigeria has moved to dismiss the petition on two grounds: first, that the Court lacks personal jurisdiction over it because it was not properly served with process; and second, that the Court lacks subject matter jurisdiction over the petition pursuant to the Foreign Sovereign Immunities Act ("FSIA"). However, because the Court finds no merit in either objection to its jurisdiction, Nigeria's motion to dismiss must be **DENIED**.

**BACKGROUND**[1]

The pending petition arises from a 2005 contract entered into by Nigeria and PICCOL, according to which PICCOL would construct a gully-erosion control system in

---

[1] The facts recounted here are drawn from the Petition, which for purposes of adjudicating this motion to dismiss are to be treated as true.

1

Imo State, Nigeria. *See* Pet. to Confirm Arbitration Award ¶ 8 [Dkt. # 1] ("Petition"); *see also* Contract Agreement Between the Federal Government of Nigeria and PICCOL Nigeria Ltd., Ex. 1 to Decl. of Theodore Folkman ("Contract") [Dkt. # 3-1]. The Contract provided that PICCOL would construct the gully erosion structures in exchange for an advance payment and scheduled interim payments. *See* Pets.' Mem. in Support of Petition at 2 [Dkt. # 2]. Nigeria was obligated to pay any sums due "with minimal delay." *Id.* (quoting Contract ¶ 19.0). Petitioners claim that Nigeria breached the contract by delaying payment on several of the interim payments "beyond what the contract permitted," Petition at 2, which Nigeria disputes, *see* Resp.'s Mot. to Dismiss at 5 [Dkt. # 17] ("MTD").

The Contract contains an arbitration agreement, which provides that:

> Any dispute, controversy or claim arising out of or relating to this contract or the breach, termination or invalidity thereof, shall be settled by arbitration at the Regional Centre for International Commercial Arbitration, Lagos, under the applicable Arbitration Rules in the schedule to the Arbitration and Conciliation Act Cap. 19 Laws of the Federation of Nigeria 1990.

Contract ¶ 18.0. Pursuant to that agreement, PICCOL filed an arbitration against Nigeria in March 2014; however, Nigeria successfully objected to the chosen venue's jurisdiction, leading to both PICCOL and Chiejina filing a second arbitration at the Regional Centre for International Commercial Arbitration in 2016. *See* Resp.'s Mot. to Dismiss at 5; Petition at 4–5. Following a full arbitral proceeding in which Chiejina participated and served as a witness on behalf of the claimants, the arbitrator issued an award in June 2019. Petition at 4–5; *see also* Final Award, *PICCOL Nigeria Ltd. & P.A. Chiejina v. Federal Republic of Nigeria*, Reg. Centre for International Commercial Arbitration (June 7, 2019), Ex. 2 to Decl. of Theodore Folkman [Dkt. # 3-2].

2

Because Nigeria has allegedly thus far not paid the award, Petition at 7, PICCOL and Chiejina filed their petition to confirm the arbitration award in August 2021 and then attempted to serve the petition on Nigeria's Minister of Foreign Affairs in Abuja, Nigeria. *See* Resp.'s Mot. to Dismiss at 7. The petition and accompanying documents were received on September 28, 2021. *See* Return of Serv. [Dkt. # 9]. Nigeria thereafter filed its now-pending motion to dismiss, in which it argues that the Court lacks both personal jurisdiction over Nigeria and subject matter jurisdiction over the petition pursuant to the FSIA. *See generally* Resp.'s Mot. to Dismiss.

## ANALYSIS

### I. Personal Jurisdiction

First, Nigeria contends that the Court lacks personal jurisdiction over it because petitioners failed to serve Nigeria in accordance with the requirements of the FSIA. The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in federal court." *Argentine Republic v. Amerada Hess Shipping*, 488 U.S. 428, 434 (1989). In keeping with the general principle that the FSIA provides for only narrow exceptions to a generalized grant of immunity to foreign sovereigns, service on foreign sovereigns must be completed in strict accordance with the methodology provided for in 28 U.S.C. § 1608. *See, e.g., Enron Nigeria Power Holding, Ltd. v. Federal Republic of Nigeria*, 225 F. Supp. 3d 18, 20 (D.D.C. 2014) (quoting Fed. R. Civ. P. 4(j)). "[T]he plaintiff wishing to effect service 'has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions

of [Federal Rule of Civil Procedure 4] and any other applicable provision of law.'" *Id.* at 20–21 (quoting *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987)).

Section 1608 provides four permissible methods of service for foreign sovereigns. These methods are hierarchical, meaning a plaintiff seeking to effect service must attempt service under the first method (or determine it is unavailable) before proceeding to the next method. *See Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1054 (2019). The first method calls for delivery of a copy of the summons and complaint "in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision." § 1608(a)(1). The second method, to be used "if no special arrangement exists," requires delivery of a copy of the summons and complaint "in accordance with an applicable international convention on service of judicial documents." § 1608(a)(2). Only if service is not possible under either of the first two methods can the third method, relied on by petitioners here, be used. The third method requires "sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." § 1608(a)(3).[2] Petitioners followed this third method because, they contend, neither the first nor second method was available to them.

---

[2] Though not at issue here, if service cannot be made within thirty days under § 1608(a)(3), service may be effected by sending the documents "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia," for transmittal "through diplomatic channels to the foreign state." § 1608(a)(4).

However, Nigeria argues that a "special arrangement" within the meaning of § 1608(a)(1) existed between it and the petitioners, and thus the petitioners' service via the third method was improper.[3] *See* Resp.'s Mot. to Dismiss at 6. More specifically, Nigeria contends that the contract's "notices" provision, combined with the arbitration clause quoted above, creates a special arrangement for service within the meaning of § 1608(a)(1). *Id.* With such a special arrangement purportedly in place, Nigeria continues, petitioners were required to effect service in the method prescribed by that provision, and petitioners' failure to do so renders their service ineffective and deprives the Court of personal jurisdiction over Nigeria. *Id.* Please!

To say the least, I find Nigeria's argument to be unpersuasive. The notices provision in the Contract does *not* create the kind of special arrangement for service contemplated by § 1608(a)(1), and thus petitioners properly served Nigeria via mail to the Minister of Foreign Affairs pursuant to § 1608(a)(3).[4] The Contract's notices provision provides only that "any notice, authorisation, information, instruction and correspondence *required or authorised by this Agreement* to be given by either party to the other shall be sent by registered post to the other party at" a specified address for each party. Contract ¶ 27.0 (emphasis added). In arguing that this provision creates an arrangement for service of process, Nigeria ignores that the provision is by its terms limited to notices (and other

---

[3] Nigeria does not argue that petitioners failed to comply with the procedures specified in § 1608(a)(3), only that service pursuant to that particular subsection was not proper in light of the purported special arrangement.

[4] Nigeria does not appear to dispute that the second method of service was unavailable to the petitioners. *See* Resp.'s Mot. to Dismiss at 7; Pets.' Opp. to Mot. to Dismiss at 4 n.4 [Dkt. # 19].

5

information) that are "required or authorized" by the Contract itself.[5] This kind of limitation is crucial in determining whether the provision creates a special arrangement, as courts have generally found such arrangements in contracts "only where the language is 'all encompassing' rather than 'confined to the contract or agreement at issue.'" *Berkowitz v. Republic of Costa Rica*, 288 F. Supp. 3d. 166, 173 (D.D.C. 2018) (quoting *Orange Middle East & Africa v. Republic of Equatorial Guinea*, No. 15-CV-849 (RMC), 2016 WL 2894857, at *4 (D.D.C. May 18, 2016)).[6] Provisions that are limited in this way do not, by their terms, tend to encompass service of process related to separate court proceedings.

Such is the case here, where the provision plainly governs only communications that are directly authorized, or required, by the terms of the Contract. The provision cannot be read to encompass all communications between Nigeria and the petitioners, nor is there any reason to find that the provision specifically covers the service of documents stemming from confirmation proceedings in the U.S. courts.[7] *Id.* Accordingly, the notices provision

---

[5] Indeed, Nigeria conspicuously omitted this language from its Motion to Dismiss. *See* Resp.'s Mot. to Dismiss at 4, 7.

[6] Two of the cases Nigeria relies on, *Marlowe v. Argentine Naval Commission*, 604 F. Supp. 703, 707 (D.D.C. 1985) and *Arbitration Between Space Systems/Loral, Inc. and Yuzhnoye Design Office*, 164 F. Supp. 2d. 397, 402 (S.D.N.Y. 2001), only underscore this point. In both of those cases, the relevant contractual language covered *all* communications between the two parties, and the courts accordingly concluded that the contracts created a special arrangement for purposes of service of process. The decision in *G.E. Transport S.P.A. v. Republic of Albania*, 693 F. Supp. 2d 132, 136–37 (D.D.C. 2010), would seem to lend more support to Nigeria's position, as the court there found a special arrangement based in a contract providing that "[a]ny notice to be given to [Albania] under these Conditions shall be in writing." *Id.* However, in its decision the court left out the limiting language ("under these Conditions"), suggesting they were not central to the court reaching that conclusion. *Id.* And to the extent they were considered, I would disagree with the court's conclusion that a special arrangement existed. *See Orange*, 2016 WL 2894857, at *4 (reaching same conclusion in not relying on *G.E. Transport*).

[7] Nigeria's alternative argument—that service of a petition to enforce an award arising from a dispute over the Contract is in fact within the scope of notices "authorized" by the Contract itself—is also unavailing. Even to the extent communications related to disputes arising from the Contract, including notices of arbitration, were to come within this definition, Nigeria stretches the provision too far in making its argument here. The Contract neither requires nor authorizes service of process for a wholly separate proceeding in a United States District Court. *See*

6

does not create any special arrangement for service within the meaning of § 1608(a)(1), and Nigeria has not identified any other such arrangement. Without any "special arrangement for service" in place, petitioners' service of Nigeria via § 1608(a)(3) was proper and effectual, and the Court accordingly has personal jurisdiction over Nigeria in this case.

## II.   Subject Matter Jurisdiction

Alternatively, Nigeria moves to dismiss on the basis that, as a foreign sovereign, Nigeria is immune from the petition, and thus the Court lacks subject matter jurisdiction. Petitioners, meanwhile, contend that the petition comes within the so-called "arbitration exception" to sovereign immunity contained in the FSIA. *See* 28 U.S.C. § 1605(a)(6) (providing for exception to foreign sovereign immunity for certain actions brought "to confirm an award made pursuant to . . . an agreement to arbitrate").[8]   To establish jurisdiction pursuant to the FSIA's arbitration exception, petitioners bear an initial burden

---

*Enron*, 225 F. Supp. 3d at 22–23 (finding that contract's provision governing "'communications required or permitted to be given hereunder'… would not include service of process").

[8] The full text of the exception provides as follows:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable.

28 U.S.C. § 1608(a)(6).

of producing (1) a valid arbitration agreement, (2) an award made pursuant to that agreement, and (3) a treaty in force calling for the recognition and enforcement of the award. *See Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015). However, "this is only a burden of production; the burden of persuasion rests with the foreign sovereign claiming immunity, which must establish the absence of the factual basis by a preponderance of the evidence." *Id.* (quoting *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d 934, 940 (D.C. Cir. 2008)). Nigeria here challenges petitioners' production as to the first requirement. It contends that the Contract's arbitration provision creates an agreement to arbitrate only as to the parties to the Contract, which are Nigeria and PICCOL—not Chiejina. According to Nigeria, Chiejina's presence in this lawsuit, combined with the apparent lack of an arbitration agreement between him and Nigeria, is sufficient to remove this petition from the scope of the FSIA's arbitration exception.[9]

Though I agree with Nigeria that, on its face, the Contract's arbitration agreement does not include Chiejina, I do not agree with Nigeria's conclusion that the Court accordingly lacks subject matter jurisdiction over this petition. Instead, I find that petitioners have met their burden to establish that the FSIA's arbitration exception applies by producing the arbitration agreement between Nigeria and PICCOL, an award made pursuant to that agreement (one that includes both PICCOL and Chiejina as claimants), and an applicable treaty governing enforcement of the award (in this case, the Convention

---

[9] Nigeria also disputes petitioners' alternative argument that it has impliedly waived its sovereign immunity for purposes of this petition, *see* 28 U.S.C. § 1608(a)(1), but I need not decide that question because, as explained below, I find that the Court has subject matter jurisdiction pursuant to the arbitration exception of the FSIA.

on the Recognition and Enforcement of Foreign Arbitral Awards, more commonly referred to as the New York Convention). To the extent Nigeria has raised doubts as to the validity of an award made to Chiejina because he is not a signatory to the Contract containing the arbitration provision, such doubts ultimately implicate the arbitrability of Chiejina's contract claims against Nigeria. And arbitrability, in turn, is a question that goes to the *merits* of whether the award should be confirmed pursuant to the New York Convention, rather than a basis on which to conclude that the Court lacks jurisdiction under the FSIA. *See, e.g., Chevron*, 795 F.3d at 205 (finding that a sovereign's challenge to arbitrability "conflates the jurisdictional standard of the FSIA with the standard for review under the New York Convention").[10]

Though neither party, nor the Court, has identified a case applying the arbitration exception in these specific circumstances, a number of cases considering analogous circumstances have reached decisions consistent with my conclusion here. For example, in *Chevron Corp. v. Ecuador*, Ecuador argued that it had not agreed to arbitrate Chevron's claims pursuant to a bilateral investment treaty because Chevron's claims did not involve an "investment" within the meaning of the treaty. *Id.* at 202–05. But our Court of Appeals held that such an argument did not bear on the district court's jurisdiction; it was instead a challenge to the petition on the merits. *Id.* at 205. This holding was reaffirmed just last

---

[10] Article V of the New York Convention provides the sole grounds on which a reviewing court may decline to confirm an award. *See, e.g., TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007); *see also* 9 U.S.C. § 207. These grounds include, in relevant part, when the "award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration." New York Convention, Art. V(1), *opened for signature* June 10, 1958, 21 U.S.T. 2517.

9

year, when our Court of Appeals reached an identical conclusion in *LLC SPC Stileks v. Republic of Moldova*. 985 F.3d 871, 877 (D.C. Cir. 2021). There, the foreign sovereign objected that the petitioner was not a "qualifying investor" within the meaning of the relevant treaty (the Energy Charter Treaty), and thus had no agreement to arbitrate with the state. *See id.* (citing *Chevron*, 795 F.3d at 205). Again, the Circuit Court held this challenge went to the merits of the petition, not the court's jurisdiction. And lastly, in *Balkan Energy Ltd. v. Republic of Ghana*, one of my colleagues declined to treat as jurisdictional an argument by Ghana that, for purposes of the arbitration exception, it had not agreed to arbitrate with the petitioner because the petitioner was not a valid assignee of the underlying arbitral award. *See* 302 F. Supp. 3d 144, 154–55 (D.D.C. 2018) (Mehta, J.) (quoting *Blue Ridge Invs., LLC v. Rep. of Argentina*, 902 F. Supp. 2d 367, 375 n.7 (S.D.N.Y. 2012) ("Nothing in the plain language of [the arbitration exception] suggests that an action 'to confirm an award made pursuant to . . . an agreement to arbitrate' must be brought by the party that entered into the arbitration agreement with the foreign state.")).

In sum, each of these cases rejected challenges to the court's jurisdiction under the arbitration exception that rested, essentially, on the premise that a given petitioner or claim was not encompassed by the underlying agreement to arbitrate with the foreign sovereign. In every case, those challenges were held to implicate only the merits of the petition, rather than the court's jurisdiction under the FSIA. And those challenges are identical in all material respects to the one made by Nigeria here. Indeed, nothing in the FSIA or the cases interpreting it suggests that the question of whether Chiejina was a proper claimant under

the Contract is distinguishable from the arbitrability challenges posed in *Stileks*, *Chevron*, and *Balkan Energy*. I see no reason, then, to conclude that Nigeria has shown that the Court lacks jurisdiction to adjudicate the petition on this basis. Instead, Nigeria will have the opportunity, pursuant to the New York Convention, to argue on the merits that the award should not be confirmed as to Chiejina. For now, though, Nigeria's motion to dismiss for lack of subject matter jurisdiction under the FSIA must be denied.[11]

## CONCLUSION

For the foregoing reasons, the Court has both personal jurisdiction over Nigeria and subject matter jurisdiction to adjudicate the pending petition pursuant to the FSIA. Accordingly, Nigeria's motion to dismiss the petition on those bases is **DENIED**. A separate order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge

---

[11] It bears noting that, even if I had agreed with Nigeria as to Chiejina, it is not at all clear that the Court would lack subject matter jurisdiction over the entire petition so as to require its dismissal. *See, e.g.*, Pets.' Opp. to Mot. to Dismiss at 15–16. Indeed, Nigeria has made no argument that a petition brought solely by PICCOL would not come within the arbitration exception. Because I agree with petitioners here, however, I need not further address this question.